UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PANTELIS CHRYSAFIS, BETTY COHEN,
BRANDIE LACASSE, MUDAN SHI, FENG ZHOU,
and RENT STABILIZATION ASSOCIATION OF
NYC, INC.,

2:21-cv-02516
(GRB/AYS)

*Plaintiffs*

-against-

LAWRENCE K. MARKS, in his official capacity as
Chief Administrative Judge of the Courts of New York
State, ADRIAN H. ANDERSON, in his official capacity
as Sheriff of Dutchess County, New York, JAMES
DZURENDA, in his official capacity as Sheriff of
Nassau County, New York, JOSEPH FUCITO, in his
official capacity as Sheriff of New York City, New York,
MARGARET GARNETT, in her official capacity as
Commissioner of the New York City Department of
Investigation, and CAROLINE TANG-ALEJANDRO,
in her official capacity as Director, Bureau of Marshals,
New York City Department of Investigation,

*Defendants.*

# DEFENDANT LAWRENCE K. MARKS'S MEMORANDUM
## OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION
### FOR A PRELIMINARY INJUNCTION

LETITIA JAMES
Attorney General of the State of New York
*Attorney for Defendant Marks*
300 Motor Parkway, Suite 230
Hauppauge, New York 11788

Lori L. Pack
Assistant Attorney General, *of Counsel*
(631) 231-2177 | Lori.Pack@ag.ny.gov

# TABLE OF CONTENTS

PRELIMINARY STATEMENT………………………………………………………………...1

STANDARDS FOR PRELIMINARY INJUNCTION ...................................................................2

ARGUMENT....................................................................................................................................2

POINT I:
PLAINTIFFS' CLAIMS ARE MERITLESS …………………………………………….......2

A. This Matter Should be Dismissed Based on Abstention Principles …………………….......2

B. Plaintiffs Fail to a Show Likelihood of Success on Their Claims of Violations of the
First or Fourteenth Amendment, or any Provision of the New York
Constitution……………………………………………………………………….…….6

    i. CEEFPA is Not Unconstitutionally Vague ……………………………….…..7

    ii. CEEFPA Does Not Violate Procedural Due Process Principles …………….……9

    iii. CEEFPA Does Not Unconstitutionally Deny Plaintiffs Access to the Courts …….11

    iv. CEEFPA Part A Does Not Unconstitutionally Compel Speech …………………..13

POINT II:     PLAINTIFFS FAIL TO SHOW IRREPARABLE HARM OR THAT THE
EQUITIES AND PUBLIC INTEREST WEIGH IN THEIR FAVOR …………………………18

A. Plaintiffs Fail to Show Irreparable Harm …………………………………………..18

B. The Equities and Public Interest Strongly Favor Continued Enforcement of CEEFPA ……19

CONCLUSION................................................................................................................................20

# TABLE OF AUTHORITIES

**Case**                                          **Page**

*177 Richard St., LLC v. Weeks,*
178 A.D.3d 644 (2d Dep't 2019) ................................................................. 10

*Agudath Israel of Am. v. Cuomo,*
983 F3d 620 (2d Cir. 2020) ....................................................................... 17

*Alliance for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.,*
651 F.3d 218 (2d Cir. 2011) ..................................................................... 16

*Ass'n of Jewish Camp Operators v. Cuomo,*
470 F. Supp. 3d 197 (N.D.N.Y. 2020) ...................................................... 19

*Borough of Duryea, Pa. v. Guarnieri,*
564 U.S. 379 (2011) ................................................................................. 11

*Brache v. Westchester County,*
658 F.2d 47 (2d Cir. 1981). ........................................................................ 9

*Catholic Charities of Diocese of Albany v. Serio,*
7 N.Y.3d 510 (2006) ................................................................................... 6

*City of New York v. Beretta U.S.A. Corp.,*
524 F.3d 384 (2d Cir. 2008) ..................................................................... 12

*Colondres v. Scoppetta,*
290 F. Supp. 2d 376 (E.D.N.Y. 2003) ...................................................... 12

*Davis v. Goord,*
320 F.3d 346 (2d Cir. 2003) ..................................................................... 12

*DeMartino v. New York State Dep't of Labor,*
167 F. Supp. 3d 342 (E.D.N.Y. 2016) ........................................................ 7

*Disability Rights, New York v. New York,*
916 F.3d 129 (2d Cir. 2019 .............................................................. 2, 3, 4, 5

*Donohue v. Mangano,*
886 F. Supp. 2d 126 (E.D.N.Y. 2012) ...................................................... 18

*Elmsford Apartment Assocs., LLC v. Cuomo,*
469 F. Supp. 3d 148 (S.D.N.Y. 2020) ................................................*passim*

*Falco v. Justices of the Matrimonial Parts of Supreme Court of Suffolk County,*
805 F.3d 425 (2d Cir. 2015) ....................................................................... 3

*Fed. Deposit Ins. Corp. v. Mallen,*
    486 U.S. 230 (1988) ................................................................................................11

*Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton,*
    841 F.3d 133 (2d Cir. 2016) ..................................................................................2

*Gibson v. Berryhill,*
    411 U.S. 564 (1973) ................................................................................................3

*Hopkins Hawley LLC v. Cuomo,*
    No. 20-cv-10932, 2021 WL 465437 (S.D.N.Y. Feb. 9, 2021) ........................13

*Hurley v. Irish-American Gay, Lesbian & Bisexual Grp. of Boston,*
    515 U.S. 557 (1995) ..............................................................................................16

*Jacobson v. Commonwealth of Massachusetts,*
    197 U.S. 11 (1905) ...........................................................................12, 13, 14, 17

*JSG Trading Corp. v. Tray–Wrap, Inc.,*
    917 F.2d 75 (2d Cir. 1990) ..................................................................................18

*Kachalsky v County of Westchester,*
    701 F.3d 81 (2d Cir 2012) ..................................................................................20

*Kaufman v. Kaye,*
    466 F.3d 83 (2d Cir. 2006) ...............................................................................3, 5

*Kramer v. Union Free Sch. Dist. No. 15,*
    395 U.S. 621 (1969) ................................................................................................6

*LaValle v. Hayden,*
    98 N.Y.2d 155 (2002) .............................................................................................6

*League of Women Voters v. Nassau Cty Bd. of Supervisors,*
    737 F.2d 155 (2d Cir. 1984) ..................................................................................1

*Lebanon Valley Auto Racing Corp. v. Cuomo,*
    478 F. Supp. 3d 389 (N.D.N.Y. 2020) ..............................................................13
.

*Lore v. City of Syracuse,*
    No. 00-cv-1833, 2001 WL 263051 (N.D.N.Y. Mar. 9, 2001) ......................18

*Luke's Catering Serv., LLC v. Cuomo,*
    No. 20-cv-1086S, 2020 WL 5425008 (W.D.N.Y. Sept. 10, 2020)................19

*Mathews v. Eldredge,*
    424 U.S. 319 (1976) ..............................................................................................10

*McCarthy v. Cuomo*,
No. 20-cv-2124, 2020 WL 3286530 (E.D.N.Y. June 18, 2020).................................................7

*Milavetz, Gallop & Milavetz, P.A. v. United States*,
559 U.S. 229 (2010) .........................................................................................................14

*Monsky v. Moraghan*,
127 F.3d 243 (2d Cir. 1997) ...........................................................................................12

*Moore v. Consol. Edison Co.*,
409 F.3d 506 (2d Cir. 2005) .............................................................................................2

*Moore v. Sims*,
442 U.S. 415 (1979) ...........................................................................................................5

*Murray v. Cuomo*,
460 F. Supp. 3d 430 (S.D.N.Y. 2020)...........................................................................17

*Nat'l Inst. of Family & Life Advocates v Becerra*,
____US____, 138 S. Ct. 2361 (2018) ...........................................................................16

*Nebe v. Daus*,
665 F. Supp. 2d 311 (S.D.N.Y. 2009)..............................................................................1

*New All. Party v. Dinkins*,
743 F. Supp. 1055 (S.D.N.Y. 1990) ..............................................................................18

*New York City Coal. to End Lead Poisoning, Inc. v. Vallone*,
293 A.D.2d 85 (1st Dep't 2002) ....................................................................................15

*O'Shea v. Littlejohn*,
414 U.S. 488 (1974) ...................................................................................................3, 4, 5

*Page v. Cuomo*,
478 F. Supp. 3d 355 (N.D.N.Y. 2020) .........................................................................19

*Pennzoil v. Texaco*,
481 U.S. 1 (1987) ...............................................................................................................3

*Pharm. Care Mgmt. Ass'n v. Rowe*,
429 F.3d 294 (1st Cir. 2005) ..........................................................................................15

*Pico v. Bd. of Educ., Island Trees Union Free Sch. Dist. No 26*,
638 F.2d 404 (2d Cir. 1980) .............................................................................................7

*Progressive Credit Union v. City of New York*,
889 F.3d 40 (2d Cir. 2018) ...............................................................................................9

*PSEG Long Island LLC v. Town of North Hempstead,*
    158 F. Supp. 3d 149 (E.D.N.Y. 2016) ..................................................... 16

*Qing You Li v. City of New York,*
    No. 16-cv-174, 2018 WL 6251339 (E.D.N.Y. Nov. 28, 2018) ................ 7

*R.C. Diocese of Brooklyn v Cuomo,*
    141 S. Ct. 63 (2020) ............................................................................... 17

*Richmond Boro Gun Club, Inc. v. City of New York,*
    97 F.3d 681 (2d Cir. 1996) ...................................................................... 8

*Rodriguez v. DeBuono,*
    175 F.3d 227 (2d Cir. 1998) .................................................................. 18

*Rossito-Canty v. Cuomo,*
    86 F. Supp. 3d 175 (E.D.N.Y. 2015) ..................................................... 18

*Sosna v. Iowa,*
    419 U.S. 393 (1975) .............................................................................. 10

*Spargo v. New York State Comm'n on Judicial Conduct,*
    351 F.3d 65 (2d Cir. 2003). ..................................................................... 6

*Sprint Commc'ns, Inc. v. Jacobs,*
    571 U.S. 69 (2013) ................................................................................... 2

*Thomas v. New York City Bd. Of Elections,*
    898 F. Supp. 2d 594 (S.D.N.Y. 2012) ..................................................... 2

*Triebwasser & Katz v. Am. Tel. & Tel. Co.,*
    535 F.2d 1356 (2d Cir. 1976) ................................................................ 19

*United States v. Farhane,*
    634 F.3d 127 (2d Cir. 2011) .................................................................... 7

*United States v. Rosen,*
    716 F.3d 691 (2d Cir. 2013) ................................................................. 7, 9

*United States v. Smith,*
    945 F.3d 729 (2d Cir. 2019) .................................................................. 13

*United States v. Williams,*
    553 U.S. 285 (2008) ............................................................................. 7, 8

*Vermont Right to Life Committee, Inc. v. Sorrell,*
    758 F.3d 118 (2014) ................................................................................ 8

*VIP of Berlin, LLC v. Town of Berlin,*
    593 F.3d 179 (2d Cir. 2010) ...................................................................8

*Whalen v. County of Fulton,*
    126 F.3d 400 (2d Cir. 1997) ................................................................12

*Wilton v. Seven Falls Co.,*
    515 U.S. 277 (1995) ...............................................................................6

*Younger v. Harris,*
    401 U.S. 37 (1971) ..............................................................................3, 5

*Zauderer v. Office of Disciplinary Counsel,*
    471 U.S. 626 (1985) .......................................................................14, 17

**United States Constitution**

First Amendment ...........................................................................*passim*

Fourteenth Amendment ........................................................................6

Eleventh Amendment ...........................................................................7

**New York Constitution**

Article I, § 8 .........................................................................................13

Article I, § 9 .........................................................................................11

**Statutes**

Laws of 2020

    Chapter 127 ......................................................................................8

Labor Law

    § 198-d ...........................................................................................15

Real Property Law

    § 231-a(1) .......................................................................................15
    § 231-a(3) .......................................................................................15
    § 462 ..............................................................................................15

Real Property Actions and Proceedings Law

    § 711(2) ..........................................................................................17

§ 732 ................................................................................................................................ 14

New York Codes, Rules and Regulations

§ 142-2.8 ......................................................................................................................... 15
§ 208.42 ........................................................................................................................... 16
§ 466.1(a) ........................................................................................................................ 15

## PRELIMINARY STATEMENT

The COVID-19 pandemic has triggered the most devastating public health crisis in a century, leading to the deaths of 42,000 New Yorkers. The New York State Legislature concluded that this public health crisis and the resulting economic hardships threatened to destabilize housing for tenants and homeowners and trigger a homelessness crisis that would exacerbate the spread of COVID-19. In response, the Legislature enacted the COVID-19 Emergency Eviction and Foreclosure Prevention Act ("CEEFPA"), which became effective on December 28, 2020. Months later, Plaintiffs—five owners of residential properties rented to tenants, together with a trade association representing the residential housing industry in New York City—ask this Court to enjoin selected provisions of CEEFPA that afford certain tenants a temporary stay of eviction proceedings.[1] Plaintiffs previously challenged CEEFPA in this District on similar grounds, and Defendant assumes the Court's familiarity with that proceeding.[2]

On May 3, 2021, the Legislature extended the protections of CEEFPA to August 31, 2021. Its reasons were twofold: first, the pandemic is not over. As of the passage of the amendment, all counties in New York still had high or substantial rates of transmission, and no New York county had a low or moderate rate. Second, the extension provides an opportunity for federal rent relief funds to be distributed, mitigating COVID-19's impact on landlords and tenants.

---

[1] Also, the trade association lacks standing to bring suit on behalf of its members under 42 U.S.C. § 1983. *League of Women Voters v. Nassau Cty Bd. of Supervisors*, 737 F.2d 155, 160 (2d Cir. 1984); *Nebe v. Daus*, 665 F. Supp. 2d 311, 320 (S.D.N.Y. 2009).

[2] The Court may take judicial notice of the briefing submitted on the prior docket, including relevant background concerning CEEFPA, as if more fully set forth herein, *see Chrysafis et. al. v. James*, 21-cv-998, ECF No. 16; ECF No. 17; & ECF. No. 34. For the Court's convenience, these documents are submitted as Exhibits A, B, and C to the accompanying Declaration of Lori L. Pack.

## STANDARDS FOR A PRELIMINARY INJUNCTION

A preliminary injunction is an "extraordinary and drastic remedy" that is "unavailable except in extraordinary circumstances." *Moore v. Consol. Edison Co.*, 409 F.3d 506, 511 (2d Cir. 2005). Where injunctive relief would "affect government action taken in the public interest pursuant to a statute or regulatory scheme, the moving party must demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest weighing in favor of granting the injunction." *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 143 (2d Cir. 2016). Where movants seek to change the status quo, and strike down a duly enacted statute, they must show "a clear or substantial likelihood of success on the merits." *Thomas v. New York City Bd. Of Elections*, 898 F. Supp. 2d 594, 597 (S.D.N.Y. 2012).

## ARGUMENT

## POINT I:    PLAINTIFFS' CLAIMS ARE MERITLESS

### A. This Matter Should be Dismissed Based on Abstention Principles

Plaintiffs are unlikely to succeed on the merits because the Court should abstain from issuing the injunctive or declaratory relief Plaintiffs seek, which would direct state courts' administration of eviction proceedings—a matter of traditional state concern in which the state and its housing courts have a paramount interest. Federal courts consistently abstain from ruling on such claims because they ask federal courts to impede "the state courts' ability to perform their judicial functions." *Disability Rights, New York v. New York*, 916 F.3d 129, 137 (2d Cir. 2019).[3]

While federal courts generally resolve matters within their jurisdiction, the Supreme Court has recognized "certain instances in which the prospect of undue interference with state proceedings counsels against federal relief." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). Under the

---

[3] Unless otherwise specified, internal quotation marks and alterations are omitted from all citations herein.

principles in *Younger v. Harris,* 401 U.S. 37 (1971), and *O'Shea v. Littleton,* 414 U.S. 488 (1974), federal courts must abstain from issuing injunctive or declaratory relief that would interfere in "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions," *Disability Rights,* 916 F.3d at 133, including relief that would dictate how state courts manage their own proceedings. This mandatory abstention doctrine is rooted in "principles of equity, comity, and federalism," *Gibson v. Berryhill,* 411 U.S. 564, 575 (1973), and respects the States' "important interests in administering certain aspects of their judicial systems," *Pennzoil v. Texaco,* 481 U.S. 1, 12-13 (1987).

Based on these principles, federal courts within the Second Circuit have repeatedly abstained from ruling on claims for relief that requested federal intervention in the "internal workings of state courts." *See Kaufman v. Kaye,* 466 F.3d 83, 86 (2d Cir. 2006). In *Kaufman,* the Second Circuit affirmed the district court's decision to abstain from a challenge seeking to declare the judicial assignment system in the Appellate Division, Second Department unconstitutional, explaining that such relief would be "intrusive in the administration of the New York court system," interfere in "both pending and future [state] proceedings," and thus "violate principles of comity." *Id.* Similarly, in *Disability Rights,* the Second Circuit affirmed the district court's decision to abstain from a challenge to the constitutionality of Article 17A of the Surrogate's Court Procedure Act, finding that the relief sought would impermissibly "legislate and engraft new procedures upon existing state . . . practices," and constitute impermissible "monitoring of the operation of state court functions." And in *Falco v. Justices of the Matrimonial Parts of Sup. Ct. of Suffolk County,* 805 F.3d 425 (2d Cir. 2015), the district court abstained from considering a challenge to state court procedures under which the court ordered plaintiff to pay for an attorney appointed to represent his child in his divorce proceedings. The Second Circuit affirmed, reasoning that the suit implicated state courts' management of their own divorce and custody proceedings, an area in which states have an especially strong interest. *See* 805 F.3d 425, 427.

Here, Plaintiffs likewise impermissibly seek federal injunctive and declaratory relief that would embroil the federal courts in the state courts' day-to-day management of non-payment eviction proceedings and dictate the state-law procedures that state courts must follow. For example, Plaintiffs' requested relief would require state courts to accept for filing non-payment eviction petitions that omit an attestation that the landlord did not receive a Hardship Declaration after providing one to the tenant under CEEFPA. *See* CEEFPA Part A, § 5(a).[4] State courts would be required by federal-court order to open and adjudicate many new eviction cases that would otherwise not be opened, *see id.* § 4, and to proceed to adjudicate many pending eviction cases that would otherwise remain stayed, *see id.* § 6. Plaintiffs' requested relief would also interfere in state-court procedures for: staying eviction warrants, *see id.* § 8(a)(ii); issuing or enforcing default judgments in eviction proceedings, *see id.* § 7; and applying evidentiary burdens and presumptions when proceedings with a submitted Hardship Declaration go forward, *see id.* § 11. Such federal court intrusion into the operations of state courts adjudicating state-law eviction proceedings is "antipathetic to established principles of comity." *Disability Rights*, 916 F.3d at 136.

Especially given that Plaintiffs' challenges focus primarily on certain aspects of CEEFPA Part A's Hardship Declaration provisions while leaving CEEFPA Part B's parallel protections for landlords intact, their requested relief would result in the federal courts engrafting procedures onto the state system, and engaging in "piecemeal interruptions of state proceedings" and "monitoring of the operation of state court functions that is antipathetic to established principles of comity." *O'Shea*, 414 U.S. at 501. The need for abstention is not altered by Plaintiffs' request to return to pre-CEEFPA procedures for evictions (but not for foreclosures)—the core point of *O'Shea* and its progeny is that

---

[4] The Hardship Declaration, referenced herein and throughout Plaintiffs' papers, has been recently amended to reflect the extension of the moratorium and can be found at http://www.nycourts.gov/eefpa/PDF/Eviction_Hardship_Declaration-English.pdf .

the state, rather than the federal courts, should determine state-court procedures. Moreover, enjoining or declaring invalid all or parts of CEEFPA Part A would leave the Legislature to consider again crafting procedures to rebalance state-law protections for landlords and tenants, stabilize the overall housing market, and prevent a homelessness crisis on the eve of more state and federal assistance funds being distributed to landlords and tenants. But Plaintiffs or other litigants could then challenge the state's chosen remedy as violating "the Constitution or the terms of the injunction"—setting up further improper federal supervision of state-court eviction proceedings. *See Kaufman*, 466 F.3d at 87; *Disability Rights*, 916 F.3d at 137.

Abstention is thus required to avoid sweeping federal interference in currently pending state-court proceedings involving at least some of Plaintiffs here, *see* Shi Decl. (ECF No. 11) ¶¶ 6-10; Cohen Decl. (ECF No. 9) ¶¶ 6-7; Vekiarellis Decl. (ECF No. 13) ¶¶ 8-9, 13, and countless other pending proceedings. Moreover, the considerations underlying *Younger* and *O'Shea* "are still very much at play even when a suit is filed prior to the onset of state proceedings." *Disability Rights*, 916 F.3d at 134. When, as here, a plaintiff seeks sweeping injunctive and declaratory relief designed to alter the course of pending and future state-court proceedings, abstention is warranted. *See id.; see also O'Shea*, 414 U.S. at 496, 500. Indeed, Plaintiffs' facial challenge to CEEFPA Part A strongly warrants abstention because the "breadth of a challenge to a complex state statutory scheme has traditionally militated *in favor* of abstention, not *against* it." *Moore v. Sims*, 442 U.S. 415, 427 (1979). Thus, the requested relief will—and is intended to—accomplish precisely what both the Supreme Court and the Second Circuit have warned is impermissible: wholesale interference with an entire class of state judicial proceedings.

Abstention here would not prejudice Plaintiffs' ability to raise their constitutional claims because those claims may be raised to and addressed by state judges in state court. "[A]bstention is appropriate where the plaintiff has an opportunity to raise and have timely decided by a competent state tribunal the constitutional claims at issue in the federal suit." *Kaufman*, 466 F.3d at 86. Indeed, a

group of plaintiffs raised several claims identical to those herein before Supreme Court, Albany County, which ruled on a motion for preliminary injunction. *See* Decision and Order, *Lakeragh, et al. v. State of New York, et al.*, Index No. 902292-21 (Albany County) (Mar. 30, 2021) (Ex. D).

Abstention is particularly warranted here because this matter involves a state statute governing state-court eviction procedures, an area traditionally regulated by states to further state interests, and several of Plaintiffs' claims raise unresolved questions about interpretations of CEEFPA. "[C]omity favors permitting the [state] court system to decide issues of state statutory law," *Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65, 80 (2d Cir. 2003). Moreover, the federal courts are not under an "unflagging" obligation to exercise jurisdiction over declaratory judgment actions. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 284, 286 (1995). The Declaratory Judgment Act affords them "unique and substantial discretion in deciding whether to declare the rights of litigants." *Id.* The court should thus abstain from hearing this matter, which properly belongs before the state courts.

**B. Plaintiffs Fail to a Show Likelihood of Success on Their Claims of Violations of the First or Fourteenth Amendment, or any Provision of the New York Constitution**

Statutes enacted by the State Legislature "enjoy a strong presumption of constitutionality," and "parties challenging a duly enacted statute face the initial burden of demonstrating the statute's invalidity beyond a reasonable doubt." *LaValle v. Hayden*, 98 N.Y.2d 155, 161 (2002); *see Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621, 627 (1969) (noting "general presumption of constitutionality afforded state statutes"). In addition, "substantial deference is due the Legislature." *Catholic Charities of Diocese of Albany v. Serio*, 7 N.Y.3d 510, 525 (2006). Moreover, Plaintiffs assert a facial challenge, which is "the most difficult challenge to mount successfully, since the challenger must establish no set of circumstances under which the Act would be valid." *Elmsford Apartment Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148, 161 (S.D.N.Y. 2020).

For the reasons explained below, Plaintiffs cannot demonstrate the facial invalidity of CEEFPA Part A under any of their federal constitutional theories. The Court lacks jurisdiction over

each of Plaintiffs' claims under the New York Constitution based on "the doctrine of state sovereign immunity and principles of federalism embodied in the Eleventh Amendment." *Elmsford*, 469 F. Supp. 3d at 161-162; *McCarthy v. Cuomo*, No. 20-cv-2124, 2020 WL 3286530, at *6 (E.D.N.Y. June 18, 2020). In any event, Plaintiffs show no likelihood of success on their state constitutional claims for the same reasons their federal claims fail.[5]

### i. CEEFPA is Not Unconstitutionally Vague

Plaintiffs cannot succeed on their void-for-vagueness claims because the phrases in the Hardship Declaration they challenge are commonly used and capable of reasoned interpretation by a court. A statute is impermissibly vague as a matter of due process only if it either fails to provide a person of ordinary intelligence fair notice as to the prohibited conduct, or is so standardless that it authorizes or encourages discriminatory enforcement. *United States v. Williams*, 553 U.S. 285, 304 (2008). Due process requires only that a statute provide "minimal guidelines" as to the conduct it proscribes when understood through common sense and ordinary practice; the Constitution does not demand "meticulous specificity . . . at the cost of flexibility and reasonable breadth." *United States v. Rosen*, 716 F.3d 691, 699 (2d Cir. 2013). In reviewing vagueness claims, courts look at the statutory language in the context of the statute's purpose and legislative history. *United States v. Farhane*, 634 F.3d 127, 139 (2d Cir. 2011).

At the outset, Plaintiffs' vagueness claim should be dismissed because a State court has already ruled that "the terminology used in CEEFPA consists of plain language that persons of ordinary intelligence can understand and not be forced to guess at its meaning." *See Lakeragh* (Ex. D) at 10. The Court should defer to this state court interpretation of a state statute.

---

[5] *See Pico v. Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26*, 638 F.2d 404 (2d Cir. 1980), *aff'd*, 457 U.S. 853 (1982); *Qing You Li v. City of New York*, No. 16-cv-174, 2018 WL 6251339, at *4 (E.D.N.Y. Nov. 28, 2018); *DeMartino v. New York State Dep't of Labor*, 167 F. Supp. 3d 342, 373-74 (E.D.N.Y. 2016).

Further, because Plaintiffs bring a facial challenge, they must show that CEEFPA is so vague that it "can never be validly applied," *Vermont Right to Life Committee, Inc. v. Sorrell*, 758 F.3d 118, 128 (2014)—*i.e.*, that it "is impermissibly vague in all of its applications," *Richmond Boro Gun Club, Inc. v. City of New York*, 97 F.3d 681, 684 (2d Cir. 1996). Plaintiffs do not come close to satisfying this high bar.

Plaintiffs limit their vagueness claim to paragraph A(5) of the Hardship Declaration. But the Hardship Declaration is filled out by tenants, not by property owners like Plaintiffs, and CEEFPA is sufficiently clear about property owners' obligations once such a Declaration is filed. Indeed, Plaintiffs admit as much by relying on the clear and undisputed consequences of the filing of a Hardship Declaration. Plaintiffs also assert that CEEFPA provides no guidelines for how property owners can rebut the presumption of financial hardship created by the filing of a Hardship Declaration. But effective June 30, 2020, the Legislature enacted the Tenant Safe Harbor Act ("TSHA"), *see* Ch. 127 L. 2020 (Ex. E), under which landlords may prosecute eviction proceedings, but tenants may assert a defense of financial hardship as of March 7, 2020 due to COVID-19. In enacting TSHA, the Legislature identified factors that courts must consider in determining whether a financial hardship exists, *see* TSHA § 2(b), and those factors provide constitutionally adequate guidance to landlords that Plaintiffs do not challenge here.

In any event, none of the challenged terms in the Hardship Declaration is impermissibly vague. Instead, as a New York court has already determined, they are common in life and law, and can be understood and applied by a person of ordinary intelligence. *Lakeragh* (Ex. D) at 10; *see Williams*, 553 U.S. at 304; *VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 187 (2d Cir. 2010) (rejecting void-for-vagueness claim to term "substantial or significant portion," and relying on dictionary definition for "significant"). Moreover, the overall purpose of the statute is clear: "to avoid as many evictions and foreclosures as possible for people experiencing a financial hardship during the COVID-19 pandemic

or who cannot move due to an increased risk of severe illness or death from COVID-19." CEEFPA § 3. The Hardship Declaration, consistent with this purpose, thus makes clear that it *only* encompasses circumstances attributable to COVID-19.

Thus, § A(5) of the Hardship Declaration plainly has "a core meaning that can reasonably be understood" and applied; and is thus not vague. *See Brache v. Westchester County*, 658 F.2d 47, 51 (2d Cir. 1981). For example, it is reasonably ascertainable that "negatively affected by ability to obtain meaningful employment" will apply when, because of COVID-19, the declarant was unable to find a job earning enough money to pay rent. It is reasonably ascertainable that "significantly reduced my household income" means that declarant's income was reduced such that they are unable to pay rent. And, providing an exhaustive list of "[o]ther circumstances related to the COVID-19 pandemic" is not necessary or even reasonable. *Rosen*, 716 F3d at 699. An exhaustive list would also risk narrowing eligibility in ways inconsistent with CEEFPA's purpose.

### ii.     CEEFPA Does Not Violate Procedural Due Process Principles

Initially, Plaintiffs' procedural due process claims cannot be the basis for a facial challenge to CEEFPA Part A, because Part A permits the commencement and continuation of eviction proceedings against nuisance tenants and tenants who have not suffered hardship as a result of COVID-19. *Id.* §§ 2, 4, 5. In any event, these claims are likely to fail. "To succeed on a procedural due-process claim, a plaintiff must first identify a property right, second show that the state has deprived him [or her] of that right, and third show that the deprivation was effected without due process.'" *Progressive Credit Union v. City of New York*, 889 F.3d 40, 51 (2d Cir. 2018).

Plaintiffs have not shown any deprivation of a property interest. *See Elmsford*, 469 F. Supp. 3d at 173. Plaintiffs have not been deprived of their property interest in rent because they have not lost any legal claim to rent for any period of occupancy. *See id.* Nothing in CEEFPA Part A provides for rent forgiveness. To the contrary, those who sign a Hardship Declaration must declare that they

"understand that lawful fees, penalties or interest for not having paid rent in full or met other financial obligations as required by my tenancy, lease agreement or similar contract may still be charged or collected and may result in a monetary judgment against me." CEEFPA Part A § 1(4), Hardship Declaration ¶ 5(B).

Plaintiffs also have not been deprived of any property interest in rent or the ability to obtain possession of their property because "the gravamen of [their] claim is not total deprivation, . . . but only delay" in being able to use certain legal remedies. *Sosna v. Iowa,* 419 U.S. 393, 410 (1975). The delay of some evictions does not create any "viable procedural due process claim." *Id.* Moreover, the temporary delay "in pursuing remedies otherwise available to them," *Elmsford*, 469 F. Supp. 3d at 159, does not deny plaintiffs due process, *i.e.*, "the opportunity to be heard at a meaningful time and in a meaningful manner," *Mathews v. Eldredge*, 424 U.S. 319, 334 (1976). Plaintiffs will receive a meaningful opportunity to be heard in any proceeding, including those in which a Hardship Declaration was submitted, as of August 31, 2021. CEEFPA Part A §§ 2, 5.

Any delay is also only partial: Plaintiffs currently may initiate or proceed with pending eviction proceedings against certain tenants. *Id.* §§ 2, 5. In addition, nothing prohibits Plaintiffs from pursuing other legal avenues, such as common-law breach of contract claims, for a money judgment to collect arrears. *See 177 Richard St., LLC v Weeks*, 178 AD3d 644, 646 (2d Dept 2019); *Elmsford*, 469 F. Supp. 3d at 159. Plaintiffs thus have recourse against non-paying tenants, and the temporary inability to file an eviction proceeding against certain tenants does not run afoul of due process. Plaintiffs do not have a constitutional due process right to pursue eviction proceedings on their preferred timetable.

Plaintiffs' assertion that they are deprived of due process because they purportedly can never challenge a tenant's assertion of financial hardship due to COVID-19 is entirely without merit. Although a submitted Hardship Declaration automatically triggers a stay of proceedings, Plaintiffs can still challenge a tenant's claims of COVID-19-related financial hardship if the tenant relies on the

Declaration to assert an affirmative defense to eviction under the TSHA. CEEFPA Part A § 11. At that point, the Declaration merely creates a routine evidentiary burden framework: establishing a rebuttable presumption that the tenant is suffering financial hardship as of March 7, 2020 because of COVID-19, rebuttable using the same types of evidence and factors that are already used under the TSHA—a separate statute that Plaintiffs do not challenge here.

Nothing about the short delay imposed by CEEFPA Part A is uniquely burdensome in light of the fact that delays of greater magnitude routinely occur in eviction proceedings. *Cf. Elmsford,* 469 F. Supp. 3d at 161 (noting that stays of evictions of up to a year are "far from uncommon"). Where a delay in obtaining a judicial determination is alleged to infringe on due process, "the significance of such a delay cannot be evaluated in a vacuum." *Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 242 (1988). Instead, such factors as "the justification offered by the Government for delay and its relation to the underlying governmental interest" must be considered. *Id.* Here, the State has an *extraordinary* interest in preventing a homelessness crisis which would compound both the health and economic crises. The delay is limited, and Plaintiffs retain their right to recover all unpaid rent. In light of these factors, merely requiring Plaintiffs to wait to initiate certain specific eviction proceedings is not a violation of procedural due process.

### iii.    CEEFPA Does Not Unconstitutionally Deny Plaintiffs Access to the Courts

Next, Plaintiffs unconvincingly assert that the temporary stay of eviction proceedings against certain tenants violates their right of access to the courts in violation of the First Amendment and Article I, § 9 of the New York Constitution. As relevant here, the First Amendment provides  that "Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. Amend. I. The Petition Clause "protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011). The Petition Clause is violated

"where government officials obstruct legitimate efforts to seek judicial redress." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 406–07 (2d Cir. 1997). But, like all First Amendment rights, the right to petition is not absolute. *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 25, 27 (1905).

As an initial matter, the Petition Cause cannot support a facial challenge because CEEFPA does not bar or stay summary proceedings against nuisance tenants or tenants who do not claim financial hardship. CEEFPA Part A § 2, 5(a). Moreover, CEEFPA "does not impede, let alone entirely foreclose, general use of the courts by would-be plaintiffs" such as Plaintiffs herein. *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 397-98 (2d Cir. 2008); *see also Lakeragh* (Ex. D) at 11-12 (rejecting right-to-petition claim against CEEFPA). And no precedent can be found suggesting that a delay in the ability to commence a proceeding—resulting from the pursuit of a compelling government interest—violates the Petition Clause.

This is unsurprising. Legally mandated delays in prosecution of legal proceedings are unremarkable even without the exigent circumstances of a public health and economic crisis, and no court has held that a temporary delay that does not substantively harm the prospective party's legal positions constitutes a "hindrance" that violates the First Amendment. Instead, *"[d]e minimus interference with access to the courts is not constitutionally significant."* *Colondres v. Scoppetta*, 290 F. Supp. 2d 376, 382 (E.D.N.Y. 2003); *see, e.g., Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (mere delay in the ability to vindicate one's rights does not violate the Petition Clause). Here, Plaintiffs will indisputably be able to seek judicial relief on all of the same grounds they could assert if they were to file a proceeding immediately. *Cf.* CEEFPA Part A § 4 (extending statutes of limitation until September 1, 2021). Plaintiffs therefore fail to show that CEEFPA will cause them any "actual injury" by ultimately "hinder[ing] [their] efforts to pursue a legal claim" as required under the Petition Clause. *See Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997).

Even if CEEFPA Part A's minimal delay burdened First Amendment rights, it would withstand strict scrutiny. Preventing the current economic and public health crisis from metastasizing into a homelessness crisis and forestalling a COVID-19 resurgence are compelling government interests of the highest order. Temporarily delaying certain eviction proceedings—while preserving Plaintiffs' legal rights, including to rent and pursuing rent arrears in a plenary action, and while providing other economic protections to landlords under CEEFPA Part B—constitutes a necessary and narrowly tailored means to pursue this compelling interest.

### iv. CEEFPA Part A Does Not Unconstitutionally Compel Speech

CEEFPA Part A's notice requirement, consisting of a blank form and accompanied by a list of providers of legal services, comports with the First Amendment and Article I, § 8 of the New York Constitution and does not require strict scrutiny.[6] In the context of a public health emergency—such as that here—deferential standards apply. The Supreme Court held more than a century ago in *Jacobson* that "a community has the right to protect itself against an epidemic of disease which threatens the safety of its members," including by enacting "quarantine laws and health laws of every description." 197 U.S. at 25, 27. *Jacobson* is "the controlling Supreme Court precedent that squarely governs judicial review of rights-challenges to emergency public health measures." *Lebanon Valley Auto Racing Corp. v. Cuomo*, 478 F. Supp. 3d 389, 396 (N.D.N.Y. 2020). As one court concluded in February 2021, "*Jacobson*'s deferential standard of judicial review is still applicable." *Hopkins Hawley LLC v. Cuomo*, 2021 WL 465437, at *5 (S.D.N.Y. Feb. 9, 2021).

---

[6] Plaintiffs argue that the disclosure requirements cannot be severed from the statute. But this is erroneous given CEEFPA's express severance clause. CEEFPA Part A § 12. Indeed, Plaintiffs contradict themselves given that they seek to sever Part A of the statute from the remainder, which would derail the statute's express core purpose of providing protections to both landlords and tenants. *See United States v. Smith*, 945 F.3d 729, 738 (2d Cir. 2019).

*Jacobson* "requires courts to afford politically accountable officials significant discretion in striking the appropriate balance during pandemics." *Id.* CEEFPA Part A easily passes scrutiny under *Jacobson*. The Senate sponsor explained the purpose of CEEFPA: "Stabilizing the housing situation for tenants, landlords, and homeowners is to the mutual benefit of all New Yorkers and will help the state address the pandemic, protect public health, and set the stage for recovery." *See* Ex. B (Ex. 4 to Lynch Decl.). The challenged notice requirements ensure that tenants are provided information to help them temporarily postpone eviction and avoid a potential descent into homelessness.

Strict scrutiny is also not applicable here because the Legislature reasonably responded to the COVID-19 crisis with a routine disclosure requirement of the sort that has *never* been understood to violate the First Amendment. A disclosure requirement comports with the First Amendment when it requires the provision of "purely factual and uncontroversial information" that is "reasonably related" to a state interest and that is not "unduly burdensome." *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 651 (1985); *see Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 249 (2010). This analytical framework exists because of the importance of ensuring that individuals are informed; and a more deferential approach is appropriate because factual disclosures are not viewpoints. The blank Hardship Declaration form and list of legal service providers fall squarely within of the type of mandatory disclosures of purely factual and uncontroversial information that comport with the First Amendment.

Critically, the CEEFPA disclosures at issue are also similar to many other long-standing notice and predicate notice requirements applicable to landlords in housing court proceedings. Most notably, before the pandemic or CEEFPA, New York law already required landlords who wanted to commence a summary eviction proceeding to advise the tenant of legal rights and responsibilities, including the right to trial and the legal consequences of failing to respond to the petition. RPAPL § 732. The form notice also sets forth a list of available resources for tenants, including contact

information for legal services providers, and these routine procedural notice requirements have never been understood to violate the First Amendment. Landlords may not want to comply with these routine procedural notice requirements, but they are required to do so if they wish to commence an eviction proceeding.

Numerous other disclosure requirements apply to landlords. For example, leases must state, in "conspicuous notice in bold face type," whether there is a sprinkler system on the premises. RPL § 231-a(1). Where a sprinkler system is present, the lease must provide "further notice as to the last date of maintenance and inspection." *Id.* § 231-a(3). New York City landlords are required to provide "specific notices to tenants about lead paint risks when a lease is signed and annually thereafter." *New York City Coal. to End Lead Poisoning, Inc. v. Vallone*, 293 A.D.2d 85, 89 (1st Dep't 2002), *rev'd on other grounds*, 100 N.Y.2d 337 (2003). Again, these notices may contain information that disclosers consider adverse to their interests, but are nevertheless required.

Numerous other notice and disclosure requirements for factual information exist in New York law in various commercial settings. *See, e.g.,* RPL § 462 (sellers' disclosure regarding pipes, asbestos, and toxic substances); N.Y. Lab. Law § 198-d (employee rights regarding illegal wage deductions); 9 NYCRR § 466.1(a) (employee anti-discrimination rights); 12 NYCRR § 142-2.8 (employee information on minimum wage rights). By posting these notices, the disclosing party is not required to endorse any views. Instead, these disclosures exist for the important policy goal of ensuring that individuals are informed, even though many of these required disclosures may be adverse to the disclosing party's interests. In a case upholding required disclosures by pharmacy benefit managers to medical benefit providers, the First Circuit observed: "There are literally thousands of similar regulations on the books, such as product labeling laws, environmental spill reporting, accident reports by common carriers, [and] SEC reporting as to corporate losses." *Pharm. Care Mgmt. Ass'n v. Rowe*, 429 F.3d 294, 316 (1st Cir. 2005) (concurring opinion).

These types of statutes and regulations are consistent with the First Amendment, and the required disclosures here should be treated no differently. These disclosures are purely factual, and they are needed to ensure that eligible tenants are informed and can temporarily forestall eviction, a core purpose of CEEFPA. And requiring these disclosures of landlords as part of the process of seeking eviction and payment of rent presents no burden to them. The forms are available on the office of court administration website, *see* CEEFPA Part A § 3, just as are all other forms required for housing court, *see* 22 NYCRR 208.42.

The cases cited by Plaintiffs are thus inapposite because they did not involve procedural notices or factual disclosures; but rather expressions of policy views. *Alliance for Open Soc'y Int'l, Inc. v United States Agency for Int'l Dev.*, 651 F.3d 218 (2d Cir. 2011), *aff'd sub nom.* 570 U.S. 205 (2013), involved a regulation that "mandate[d] that [funding] recipients affirmatively say something—that they are 'opposed to the practice[ ] of prostitution.'" 651 F.3d at 234. Here, nothing requires Plaintiffs to "affirmatively say something." The plaintiffs in *PSEG Long Island LLC v. Town of North Hempstead,* 158 F. Supp. 3d 149 (E.D.N.Y. 2016), were effectively required to express a view that a chemical was dangerous. *See* 158 F. Supp. 3d at 156-57. *Nat'l Inst. of Family & Life Advocates v Becerra*, ___US___, 138 S. Ct. 2361 (2018), is distinct because the required notice at issue was more than just "purely factual and uncontroversial information."[7] 138 S. Ct. at 2374. That case did "not question the legality" of myriad health and safety warning requirements or mandatory disclosures of factual and uncontroversial information. *Id.* at 2376.

Here, by contrast, the notice requirements merely involve a blank form and a correct statement of the existence of certain legal providers for the indigent. Contrary to Plaintiffs' baseless assertion,

---

[7] The plaintiffs in *Hurley v. Irish-American Gay, Lesbian & Bisexual Grp. of Boston,* were prevented from expressing views, of "pride in their Irish heritage as openly gay, lesbian, and bisexual individuals." 515 U.S. 557, 561 (1995). Unlike in *Hurley*, nothing here prevents Plaintiffs from expressing a view, and they make no claim of being prevented from doing so.

nothing in CEEFPA suggests that Plaintiffs are endorsing whatever a tenant might put on the Declaration form. It is entirely up to the tenant to complete the Declaration, and it is solely the tenant who is subject to the consequences for making a false statement. *See* CEEFPA Part A § 1.

Nor do *R.C. Diocese of Brooklyn v Cuomo,* 141 S. Ct. 63, 67 (2020), and *Agudath Israel of Am. v Cuomo,* 983 F3d 620, 628 (2d Cir 2020), require strict scrutiny, because those cases involved the inapposite circumstances where a statute infringes on religious exercise in a manner ruled to be more than incidental. *See R.C. Diocese*, 141 S. Ct. at 67; *Agudath*, 983 F.3d at 631. Plaintiffs here make no claim that CEEFPA burdens their right to free exercise, and thus, these cases have no impact on this Court's analysis of their claims.

Finally, even if the Court were to apply strict scrutiny, the notice requirements would survive. Containment of COVID-19 "is a powerful compelling government interest." *See, e.g., Murray v. Cuomo*, 460 F. Supp. 3d 430, 446 (S.D.N.Y. 2020). The notice requirements are necessary and narrowly tailored: Landlords must provide the disclosures only to avail themselves of housing court. CEEFPA Part A § 3. If the State were the exclusive distributor of these disclosures, as Plaintiffs urge, no matter how widespread its efforts, the State would not be able to ensure that tenants get the information when needed—*i.e.*, when a landlord serves a rent demand under RPL § 711(2) or a notice of petition. The timing is crucial. If the tenant does not return a completed Hardship Declaration to the landlord, the landlord may commence a proceeding. *Id.* § 5(a). Although the tenant may later file a Hardship Declaration and have the proceeding stayed, *id.* § 6, the tenant will have forfeited the statutory right not to be named in a proceeding in housing court during that time period. *Id.* § 4. Accordingly, the notice requirements are consistent with the First Amendment under the deferential standard of *Jacobson, Zauderer*, or under strict scrutiny.

**POINT II:  PLAINTIFFS FAIL TO SHOW IRREPARABLE HARM OR THAT THE EQUITIES AND PUBLIC INTEREST WEIGH IN THEIR FAVOR**

### A.  Plaintiffs Fail to Show Irreparable Harm

Plaintiffs fail to make the required convincing showing of harm based on purported constitutional injuries. While an actual constitutional injury may cause irreparable harm, "the mere allegation of a constitutional infringement itself does not constitute irreparable harm." *Lore v. City of Syracuse*, 2001 WL 263051, at *6 (N.D.N.Y. Mar. 9, 2001); *see also Donohue v. Mangano*, 886 F. Supp. 2d 126, 150 (E.D.N.Y. 2012). Rather, only where a constitutional injury is "convincingly shown" may a finding of irreparable harm be warranted. *Id.* Where a First Amendment violation is alleged, "a court must find direct and purposeful government interference with speech, not solely incidental interference." *New All. Party v. Dinkins*, 743 F. Supp. 1055, 1063 (S.D.N.Y. 1990). Here, Plaintiffs fall far short of the required convincing showing.

In addition, "[t]he movant must demonstrate an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1998). Here, the additional harms alleged by Plaintiffs are either monetary or speculative.[8] Neither is sufficient to show irreparable harm. *Rossito-Canty v. Cuomo*, 86 F. Supp. 3d 175, 199 (E.D.N.Y. 2015) ("Irreparable harm may not be premised only on a possibility."). Rather, irreparable harm is a harm that is "imminent." *Id.*

The monetary harms alleged do not establish irreparable harm. *See JSG Trading Corp. v. Tray–Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir.1990). In addition, the pre-CEEFPA remedies will be available to Plaintiffs as of September 1, 2021, and Plaintiffs have other avenues to immediately pursue rent

---

[8] In fact, Plaintiffs Chrysafis, Shi, and Zhou assert that they have not even given their tenants the Hardship Declaration, *see* ECF Nos. 11, 13, belying their claim that they cannot proceed with the eviction process.

arrears. Therefore, the monetary harms alleged by Plaintiffs are temporary, not irreparable, and insufficient to justify the extraordinary remedy of a preliminary injunction.

**B. The Equities and Public Interest Strongly Favor Continued Enforcement of CEEFPA**

The equities and public interest *overwhelmingly* favor maintaining the status quo and continued enforcement of CEEFPA Part A for the protection and health of the general public. The foundational purpose of a "preliminary injunction is to maintain the status quo pending a full hearing on the merits." *Triebwasser & Katz v. Am. Tel. & Tel. Co.*, 535 F.2d 1356, 1360 (2d Cir. 1976). Plaintiffs' requested injunction would upend the status quo that the Legislature has instituted during an unprecedented public-health crisis—to the severe detriment of not just the tenants who will be forced from their homes but also the general public. Preventing a homelessness crisis that would exacerbate the public health crisis is unquestionably in the public interest.

This public interest is not abstract, as moratoriums on evictions have proven to be effective in containing COVID-19. As of Fall 2020, moratoriums on evictions prevented 135,000 COVID-19 cases and more than 10,000 deaths in New York. *See,* Leifheit KM, *et al. Expiring Eviction Moratoriums and COVID-19 Incidence and Mortality* (2020) (Ex. F) (preprint of accompanying article) Premature lifting of moratoriums has been shown to led to increases in cases and deaths. *See also, Jowers* Kay *et al., Housing Precarity and the COVID-19 Pandemic* (2021) (Ex. G)

Finally, courts examining motions for injunctive relief in the COVID-19 era have agreed that the equities and public interest favor continued enforcement of containment measures. "Weakening the State's response to a public-health crisis by enjoining it from enforcing measures employed specifically to stop the spread of COVID-19 is not in the public interest." *Luke's Catering Serv., LLC v. Cuomo*, No. 20-cv-1086S, 2020 WL 5425008, at *13 (W.D.N.Y. Sept. 10, 2020); *Page v. Cuomo*, 478 F. Supp. 3d 355, 369 (N.D.N.Y. 2020) ("[T]he injunctive relief sought by plaintiff would also upset a major component of the State's current public health response to COVID-19"); *Ass'n of Jewish Camp*

*Operators v. Cuomo*, 470 F. Supp. 3d 197, 228 (N.D.N.Y. 2020) ("a careful balancing of the equities nevertheless favors Defendant").

In addition, the injunction Plaintiffs seek would illogically sabotage the distribution of federal rent relief funds and cause needless evictions of tenants who would otherwise be eligible for rent relief to enable them to pay their landlords their rent arrears. *See infra*, p. 2. Finally, in examining the equities, the Court should consider that Plaintiffs wish to remove protections against homelessness for tenants while keeping the nearly identical protections for property owners like themselves. The COVID-19 crisis is not over. The equities and public interest weigh overwhelmingly in favor of continued enforcement of CEEFPA Part A until August 31, 2021. The Court should grant "substantial deference to the predictive judgments of [the legislature], *Kachalsky v County of Westchester*, 701 F.3d 81, 97 (2d Cir 2012) (quoting *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 195 (1997)), as the Legislature has been responsible for addressing important matters of public policy in facing fast-changing circumstances of a historic nature. Should Plaintiffs disagree with the Legislature's decisionmaking, their answer is the democratic process rather than a resort to litigation.

## CONCLUSION

For all of the forgoing reasons, Defendant Marks respectfully requests that the Court deny Plaintiffs' motion for a preliminary injunction.

Dated: Hauppauge, New York
      May 21, 2021

LETITIA JAMES
Attorney General, State of New York

By:     s/Lori L. Pack
        LORI L. PACK
        Assistant Attorney General, *of Counsel*