UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

PANTELIS CHRYSAFIS, BETTY COHEN,
BRANDIE LACASSE, MUDAN SHI, FENG
ZHOU, and RENT STABILIZATION
ASSOCIATION OF NYC, INC.,

                              Plaintiffs,        21-cv- 02516 (GRB) (AYS)

                      -against-

LAWRENCE K. MARKS, in his official
capacity as Chief Administrative Judge of the
Court of New York State, ADRIAN H.
ANDERSON, in his official capacity as Sheriff
of Dutchess County, New York, JAMES
DZURENDA, in his official capacity as
Sheriff of Nassau County, New York, JOSEPH
FUCITO, in his official capacity as Sheriff of
New York City, New York, MARGARET
GARNETT, in her official capacity as
Commissioner of the New York City
Department of Investigation, and CAROLINE
TANG-ALEGJANDRO, in her official capacity as Director,
Bureau of Marshals, New York
City Department of Investigation,

                            Defendants.

------------------------------------------------------------------------ x

# CITY DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

JAMES E. JOHNSON
Corporation Counsel of the
City of New York
Attorney for City Defendants
100 Church Street, Room 5-153
New York, New York 10007

Service Date:  May 21, 2021

SHERYL NEUFELD,
MICHELLE GOLDBERG-CAHN,
RACHEL K. MOSTON,
YUNGBI JANG, OF COUNSEL.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. iii

PRELIMINARY STATEMENT .......................................................................................... 1

RELEVANT FACTS .......................................................................................................... 2

       A.  Overview of the CEEFPA ........................................................................ 2

       B.  The Instant Action and Motion for a Preliminary
           Injunction ................................................................................................ 5

STANDARD OF REVIEW ................................................................................................. 5

ARGUMENT

    POINT I

          PLAINTIFFS ARE NOT LIKELY TO SUCCEED
          ON THE MERITS OF THEIR CLAIMS ..................................................... 6

          A.  Plaintiffs Are Not Likely to State a Claim For
              Relief Against City Defendants ........................................................... 6

          B.  Plaintiffs Are Not Likely To Succeed on Their
              Constitutional Claims ........................................................................ 8

              i.  CEEFPA Does Not Violate the First
                 Amendment's Petition Clause ........................................................ 8

              ii.  CEEFPA is Not Unconstitutionally Vague .................................. 10

              iii. CEEFPA Part A Does Not Violate Plaintiffs'
                 Procedural Due Process Rights ..................................................... 12

              iv. Plaintiffs Are Not Likely to Succeed on
                 Their Claim of Compelled Speech ................................................ 14

    POINT II

          PLAINTIFFS HAVE FAILED TO ESTABLISH
          IRREPARABLE HARM .......................................................................... 19

POINT III

        THE BALANCE OF THE HARDSHIPS TIPS
        DECIDEDLY IN THE STATE'S FAVOR ...............................................20

CONCLUSION........................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                                                                                  **Pages**

A.F. v. Kings Park Cent. Sch. Dist.,
    341 F. Supp. 3d 188 (E.D.N.Y. 2018) ................................................................................10

Able v. United States,
    44 F.3d 128 (2d Cir. 1995)......................................................................................6

Axginc Corp. v. Plaza Automall, Ltd.,
    759 Fed. Appx. 26 (2d Cir. 2018) ..........................................................................19

Beatie v. City of N.Y.,
    123 F.3d 707 (2d Cir. 1997)....................................................................................8

Christopher v. Harbury,
    536 U.S. 403 (2002)................................................................................................9

Chrysafis v. James,
    2021 U.S. Dist. LEXIS 72602 (E.D.N.Y. April 14, 2021) ............................3, 5, 10

Church of Lukumi Babalu Aye, Inc. v. Hialeah,
    508 U.S. 520 (1993)..............................................................................................18

Davis v. Goord,
    320 F.3d 346 (2d Cir. 2003)....................................................................................9

Elmsford Apt. Assocs., LLC v. Cuomo,
    469 F. Supp. 3d 148 (S.D.N.Y 2020)................................................................9, 12

Gagliardi v. Village of Pawling,
    18 F.3d 188 (2d Cir. 1994)......................................................................................9

Grayned v. City of Rockford,
    408 U.S. 104 (1972)..............................................................................................11

Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc.,
    665 F. Supp. 2d 239 (S.D.N.Y. 2009)....................................................................8

Jacobson v. Commonwealth of Massachusetts,
    197 U.S. 11 (1905)..........................................................................................17, 18

Jermosen v. Coughlin,
    877 F.Supp. 864 (S.D.N.Y. 1995) ........................................................................13

JSG Trading Corp. v. Tray-Wrap, Inc.,
    917 F.2d 75 (2d Cir. 1990)......................................................................................5

**Cases**                                                                                          **Pages**

Murray v. Cuomo,
    460 F. Supp. 3d 430 (S.D.N.Y. 2020)........................................................................18

Nat'l Elec. Mfrs. Ass'n v. Sorrell,
    272 F.3d 104 (2d Cir. 2001)..................................................................................16

New York v. United States Dep't of Homeland Sec.,
    969 F. 3d 42 (2d Cir. 2020)...................................................................................19

Olivia v. Town of Greece,
    630 Fed. Appx. 43 (2d Cir. 2015) ...........................................................................9

Oneida Nation of New York v. Cuomo,
    645 F.3d 154 (2d Cir. 2011)....................................................................................6

Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.,
    769 F.3d 105 (2d Cir. 2014)....................................................................................5

People v. Nelson,
    69 N.Y.2d 302 (1987) ..........................................................................................10

Pico v. Bd. of Educ., Island Trees Sch. Dist.,
    638 F.2d 404 (2d. Cir. 1980).................................................................................14

Roman Catholic Diocese of Brooklyn v. Cuomo,
    2020 U.S. LEXIS 5708 (2020) .......................................................................18, 20

Rumsfeld v. Forum for Academic & Institutional Rights, Inc.,
    547 U.S. 47 (2006)................................................................................................15

Safepath Sys., LLC v. New York City Dep't of Educ.,
    563 Fed. Appx. 851 (2d Cir. 2014) .......................................................................13

Schaer (Ginty) v. City of New York,
    2011 U.S. Dist. LEXIS 36380 (S.D.N.Y. 2011).....................................................6

New York ex rel. Schneiderman v. Actavis PLC,
    787 F.3d 638 (2d Cir. 2015)..................................................................................19

Sosna v. Iowa,
    419 U.S. 393 (1975)........................................................................................13, 14

Spinelli v. City of New York,
    579 F.3d 160 (2d Cir. 2009)..................................................................................13

Strickland v. City of Seattle,
    2009 U.S. Dist. LEXIS 81787 (W.D. Wa. Sep. 9, 2009)......................................15

**Cases**                                                                    **Pages**

Tucker Anthony Realty Corp. v. Schlesinger,
    888 F.2d 969 (2d Cir. 1989)........................................................19

United States v. Powell,
    423 U.S. 87 (1975).....................................................................10

United States v. Salerno,
    481 U.S. 739 (1987).....................................................................8

United States v. Williams,
    553 U.S. 285 (2008)...................................................................11

VIP of Berlin, LLC v. Town of Berlin,
    593 F.3d 179 (2d Cir. 2010).......................................................11

Virginia v. Hicks,
    539 U.S. 113 (2003)...................................................................15

West Virginia Bd. of Educ. V. Barnette,
    319 U.S. 624 (1943)...................................................................14

Wooley v. Maynard,
    430 U.S. 705 (1977)...................................................................14

Zauderer v. Office of Disciplinary Counsel,
    471 U.S. 626 (1985)...................................................................16

**Statutes**

CEEFPA Part A § 1(4).................................................................3, 5

CEEFPA Part A § 2 ..................................................................9, 12

CEEFPA Part A § 3 ......................................................................11

CEEFPA Part A § 3(2)...................................................................3

CEEFPA Part A § 4 ...................................................................3, 11

CEEFPA Part A § 5 .......................................................................4

CEEFPA Part A § 5 (a)........................................................9, 12, 20

CEEFPA Part A § 5 (b)..................................................................20

CEEFPA Part A § 6 ...................................................................4, 11

**Statutes**                                                                                    **Pages**

CEEFPA Part A § 8 ...................................................................................................11

CEEFPA Part A § 8 (a)(i) .............................................................................................4

CEEFPA Part A § 8 (a)(ii) ............................................................................................4

CEEFPA Part A § 8 (b).................................................................................................4

CEEFPA Part A §8 (c) ..................................................................................................4

CEEFPA Part A §§ 8 (c)-(e) .........................................................................................7

CEEFPA Part A § 8 (d).................................................................................................1

CEEFPA Part A §8 (d)..............................................................................................4, 6

CEEFPA Part A § 8 (e).........................................................................................1, 4, 6

CEEFPA Part A § 9 .....................................................................................................20

CEEFPA Part A § 11 ...............................................................................................3, 14

N.Y. City Civ. Ct. Act § 1604......................................................................................6

N.Y. CLS County Law § 650 (1)..................................................................................6

RPAPL § 711 (2) .........................................................................................................17

RPAPL § 732 (1) .........................................................................................................17

RPL § 235-e (d) ...........................................................................................................17

**Other Authorities**

New York Constitution Article 1 § 8..........................................................................14

New York State Constitution Article 1 § 9 ...................................................................8

Defendants, Joseph Fucito, Sheriff of New York City ("Sheriff Fucito"), Margaret Garnett, Commissioner of the New York City Department of Investigation ("DOI"), and Caroline Tang-Alejandro, Director of the Bureau of Marshals at DOI all named in their official capacities (hereinafter, "City Defendants"), submit this memorandum of law in opposition to plaintiffs' motion for a preliminary injunction ("Pl. Mem.").

## PRELIMINARY STATEMENT

Plaintiffs – several individual landlords and the Rent Stabilization Association ("RSA") – seek to enjoin enforcement of the COVID-19 Emergency Eviction and Foreclosure Protection Act of 2020 ("CEEFPA"), which temporarily stays until August 31, 2021 the initiation and continuation of eviction proceedings against tenants who have provided a completed hardship declaration form, claiming financial hardship as a result of the pandemic. Plaintiffs appear to name Sheriff Fucito and DOI Commissioner Garnett and Director Tang-Alejandro because sheriffs and marshals are local enforcement officers of eviction warrants. None of the City Defendants have any role in reviewing or determining applications for evictions. Sheriff Fucito is empowered to conduct evictions, but only in accordance with the law – including CEEFPA – and on the direction of a Court via a warrant of eviction. See CEEFPA §§ 8(d) & (e). DOI Commissioner Garnett and Director Tang-Alejandro have no authority to receive or enforce warrants of eviction, a role that was unaffected by CEEFPA. Furthermore, the Complaint does not even allege any factual allegations concerning actions taken by City Defendants pursuant to CEEFPA. Indeed, the gravamen of plaintiffs' Complaint ("Compl.") attacks the State's enactment of CEEFPA and the constitutionality of Part A of CEEFPA.

As detailed below, plaintiffs are not entitled to a preliminary injunction. First, plaintiffs have failed to establish a likelihood of success on the merits of their constitutional claims against City Defendants. In addition, plaintiffs have not – and cannot – establish

irreparable harm and that the balance of equities tips in their favor.  At bottom, New York has

been engaged in an unprecedented battle to curb the spread of a deadly virus.  The State must be

afforded wide latitude to implement the emergency measures it deems necessary and appropriate

to protect the public health, safety, and welfare during this global pandemic, and to ensure that

the COVID-19 pandemic does not result in mass evictions and foreclosures that could lead to a

homelessness crisis and thus exacerbate the spread of COVID-19.  Plaintiffs' motion for a

preliminary injunction should be denied.

## **RELEVANT FACTS**

### A.     **Overview of the CEEFPA**

Beginning on March 7, 2020, Governor Cuomo declared a State disaster

emergency and, thereafter, issued numerous Executive Orders to combat the pandemic.  On

March 20, 2020, Governor Cuomo issued EO 202.8, the first of several orders designed to

prohibit the eviction or foreclosure of either residential or commercial tenants for a period of 90

days.  See EO 202.8.  On December, 28, 2020, the Governor signed into law the COVID-19

Emergency Eviction and Foreclosure Protection Act of 2020 ("CEEFPA"), which creates

protections for both tenants and mortgagors to prevent the threat of increased spread of COVID-

19 resulting from both mass evictions and foreclosures.[1]  CEEFPA § 3 (see Compl., Exhibit A).

**Hardship Declaration.**  CEEFPA requires landlords to provide tenants with

certain documentation before commencing a proceeding in Housing Court.  Landlords are

required to provide tenants with a blank copy of a hardship declaration form for applicable

tenants to complete in the tenant's primary language, published by the NYS Office of Court

Administration, in either physical or electronic written form.  CEEFPA Part A § 1(4).  In

---

[1] The State extended CEEFPA from May 1, 2021 to August 31, 2021.  See Compl., Exhibit B.

addition, the landlord must provide the tenant with a list of all not-for-profit legal services providers currently handling Housing Court matters in the county of the tenant's residence. CEEFPA Part A § 3(2).

The contents of the hardship declaration are set forth in CEEFPA Part A § 1(4), and make clear that tenants "will still owe any unpaid rent to [their] landlord," "financial obligations required by [their] tenancy…may still be charged or collected and may result in a monetary judgment against [them]," and that they are signing and submitting the form under penalty of law, i.e., "it is against the law to make a statement on this form that you know is false." Compl., Exhibit C.

CEEFPA Part A § 11 provides that a hardship declaration where the tenant has selected financial hardship shall create a rebuttable presumption that the tenant is experiencing financial hardship in any judicial or administrative proceeding that may be brought, for purposes of establishing an affirmative defense under the Tenant Safe Harbor Act (TSHA),[2] state executive orders or any other state law restricting eviction of a tenant with financial hardship during COVID-19. This defense will no longer be available once the COVID-19-related economic restrictions are lifted in the county of the tenant's residence. Chrysafis v. James, 2021 U.S. Dist. LEXIS 72602, * 20-21 (E.D.N.Y. April 14, 2021) (citing TSHA, Ch. 127, L. 2020).

**Initiation of Eviction Proceedings.** Initiation of new eviction proceedings are prohibited until August 31, 2021 against tenants who submit a completed hardship declaration. CEEFPA Part A § 4. However, a landlord *may* commence an eviction proceeding at any time if

---

[2] On June 30, 2020, the New York State Legislature enacted TSHA to, inter alia, issue protections for residential tenants. The TSHA allows landlords to commence and prosecute eviction proceedings, but tenants may assert a defense of financial hardship as of March 7, 2020 due to the COVID-19 pandemic. See TSHA, Ch. 127 L. 2020. The law sets forth factors for a court to examine when a tenant raises such a defense, see infra footnote 6, and if the defense is proven, the court may not issue a judgment of possession based on arrears from March 7, 2020 until the expiration of TSHA. Id.

he or she files with the court, together with a petition to commence proceedings, an affidavit stating either: (1) that he/she provided a hardship declaration form to a tenant and had not received the completed form back; or (ii) that the tenant is engaging in ongoing nuisance activity, regardless of whether the tenant has provided a hardship declaration form. CEEFPA Part A § 5. If neither affidavit is annexed to the petition, the court may not accept the petition for filing or, if the petition has already ben accepted, must stay the proceeding. CEEFPA Part A § 5.

 **Pending Eviction Proceedings.** If a tenant submits a completed hardship declaration to the landlord, court, or an agent of the landlord or court, pending eviction proceedings in which eviction warrants have not been issued will be stayed until August 31, 2021. CEEFPA Part A § 6. In eviction proceedings where a warrant has been issued but not yet executed, submission of the completed hardship declaration form will require the court to stay execution of the warrant until at least August 31, 2021. CEEFPA Part A § 8(a)(ii). Where an eviction warrant has been issued prior to the effective date of CEEFPA, but has not yet been executed as of the effective date the courts must stay the execution of the warrant at least until it holds a status conference with the parties. CEEFPA Part A § 8 (a)(i).

 **Eviction Warrants.** Eviction warrants are not effective unless they meet the requirements of CEEFPA set forth in Section 8(b). In fact, CEEFPA proscribes courts from issuing eviction warrants to officers (sheriffs and marshals of the city in which the property is situated) that do not meet those requirements and also prohibits officers from executing such eviction warrants. CEEFPA Part A §§8(c) & (d). If an officer receives a hardship declaration from a tenant, who is not found by the court to be a case of nuisance or safety hazard, the officer cannot execute the eviction warrant. Id. at § 8 (e).

Notably, CEEFPA Part B, subparts A and B, which are not challenged in this lawsuit, contain similar provisions with respect to mortgages foreclosure and tax foreclosure actions, respectively. <u>Chrysafis</u>, 2021 U.S. Dist. LEXIS 72602, * 21-22. The statute, as well as the hardship declaration itself, also makes clear that it does *not* provide for rent forgiveness, and a tenant must still abide by the terms of the governing lease agreement. CEEFPA Part A § 1 (4).

**B.      <u>The Instant Action and Motion for a Preliminary Injunction</u>**

Plaintiffs filed the instant Complaint on May 6, 2021 (<u>see</u> ECF Dkt No. 1), asserting both *facial* and *as-applied* constitutional challenges to CEEFPA, as extended on May 4. Compl. ¶ 1. Plaintiffs seek declaratory and injunctive relief, as well as "fees, costs, expenses, and disbursements, including attorneys' fees and costs." Compl., Wherefore Clause. On or around May 7, 2021, plaintiffs moved for a preliminary injunction, seeking an Order enjoining CEEFPA, as extended on May 4, 2021. <u>See</u> Plaintiffs' Memorandum of Law in Support of Plaintiffs' Application for a Preliminary Injunction, dated May 7, 2021 ("Pl. Mem.").

<b><u>STANDARD OF REVIEW</u></b>

A preliminary injunction "is an extraordinary remedy that should not be granted as a routine matter." <u>JSG Trading Corp. v. Tray-Wrap, Inc.</u>, 917 F.2d 75, 80 (2d Cir. 1990). A plaintiff must demonstrate irreparable harm and establish either "(a) likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party." <u>Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.</u>, 769 F.3d 105, 110 (2d Cir. 2014). However, to obtain a preliminary injunction against a duly enacted government action, a plaintiff cannot rely on a "fair ground for litigation" and must prove a likelihood of success on the merits. <u>Id.</u> "This exception reflects the idea that governmental policies implemented through legislation or regulations developed through presumptively

reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly." Able v. United States, 44 F.3d 128, 131 (2d Cir. 1995). The moving party must also show that the balance of the equities tips in its favor and that an injunction would be in the public interest. Oneida Nation of New York v. Cuomo, 645 F.3d 154, 164 (2d Cir. 2011).

**ARGUMENT**

**POINT I**

**PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS**

**A.** **Plaintiffs Are Not Likely to State a Claim For Relief Against City Defendants**

Plaintiffs are unable to succeed on the merits of their claims as they relate to City Defendants. Preliminarily, it is important to note that CEEFPA, and the recent extension thereof until August 31, 2021 ("CEEFPA Extension"), were issued by New York State. While plaintiffs appear to name the City Defendants for their role in enforcing CEEFPA within the City of New York, none of the City Defendants have any role in reviewing or deciding applications for eviction. Compl., ¶¶ 24-26. Indeed, the role of the City Defendants under CEEFPA is discrete and narrow. Specifically, Sherriff Fucito is an officer to whom a court may direct a warrant of eviction; he has no authority to conduct an eviction absent a valid warrant of eviction. N.Y. CLS County Law § 650(1) (a sheriff is required to "perform the duties prescribed by law as an officer of the court"). CEEFPA requires that when enforcing a court warrant of eviction, Sherriff Fucito enforce the warrant only in accordance with CEEFPA's terms. See CEEFPA § 8(d) and (e). DOI Commissioner Garnett and Director Tang-Alejandro have no authority to enforce warrants of eviction. DOI is tasked with regulating and supervising the New York City marshals *on behalf of* the New York City courts. See N.Y. City Civ. Ct. Act § 1604; Schaer (Ginty) v. City

of New York, 2011 U.S. Dist. LEXIS 36380, *2 (S.D.N.Y. 2011).[3]  In that role, DOI notified New York City Marshals of the existence of CEEFPA and their obligation to comply with all relevant provisions.  Compl. ¶ 26.  DOI Commissioner and Director of the Bureau of Marshals have no authority to extend the authority of City Marshals to conduct evictions absent a valid warrant of eviction.  The gravamen of plaintiffs' Complaint attacks the State's enactment of CEEFPA and the constitutionality of this State legislation – not any specific action (or lack of action) taken by City Defendants.

Plaintiffs do not allege that City Defendants enforced, or even threatened to enforce, CEEFPA in an unconstitutional manner or at all.  In fact, plaintiffs fail to allege that they have obtained valid warrants of eviction from the Courts.  Sheriff Fucito and the City's marshals solely enforce court orders; if there are no eviction orders issued by the court (as is the case with the plaintiffs herein), then the sheriff and marshals do not take any action.  Indeed, the alleged eviction proceedings of the three plaintiffs with properties located in New York City – plaintiff Cohen, plaintiffs Shi and Zhou, and the RSA – do not even appear to involve eviction warrants that have been issued and are ripe for execution.  See CEEFPA Part A §§ 8(c)-(e).  Nor do plaintiffs allege that any of their tenants gave the City Defendants completed hardship declaration forms, which the City Defendants then returned to the court.  See id.  Rather, plaintiff Cohen states that her tenant filed a hardship declaration with the local Housing Court and landlord.  See Cohen Dec., ¶ 7 and Exhibit A appended thereto.  Plaintiff Shi does not state that she even gave her tenants a hardship declaration form.  See generally, Shi Dec.  Instead, plaintiff Shi sets forth what may happen if she gives her tenants a hardship declaration form.  See id., ¶¶ 10, 12.  Plaintiff RSA states that tenants "signed" hardship declarations, see RSA Dec., ¶ 19, and

---

[3] New York City marshals are independent contractors (not employees of either the City or the State) who serve as the enforcement officers of the Civil Court of New York City.  Id.

fail to allege whether hardship declarations have been submitted to the landlord, Court, or local enforcement.  See id., generally.  Accordingly, as the Complaint fails to allege *any* factual allegations concerning actions taken (or actions that should have been taken) by City Defendants pursuant to CEEFPA, plaintiffs are not likely to succeed on the merits of their claims against them.  See Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc., 665 F. Supp. 2d 239, 251 (S.D.N.Y. 2009) ("When a complaint names defendants in the caption but makes no substantive allegations against them in the body of the pleading, the complaint does not state a claim against these defendants.").

**B.**     **Plaintiffs Are Not Likely To Succeed on Their Constitutional Claims**

Plaintiffs are not likely to succeed on their constitutional claims against City Defendants.  As an initial matter, plaintiffs must overcome the strong presumption of constitutionality that attaches to the challenged legislation.  Legislative acts, such as CEEFPA, that do not "interfere with fundamental rights or single out suspect classifications carry with them a strong presumption of constitutionality and must be upheld if rationally related to a legitimate state interest."  Beatie v. City of N.Y., 123 F.3d 707, 711 (2d Cir. 1997) (internal citations omitted).  Further, plaintiffs' burden is especially steep where, as here, they mount *facial* challenges to a statute.  Plaintiffs must demonstrate that "no set of circumstances exists under which the Act would be valid."  United States v. Salerno, 481 U.S. 739, 745 (1987). Plaintiffs cannot meet this burden.

**i.**     **CEEFPA Does Not Violate the First Amendment's Petition Clause**

Plaintiffs erroneously claim that CEEFPA violates the First Amendment's Petition Clause and Article 1 § 9 of the New York State Constitution because it bars a class of property owners, including plaintiffs, from exercising their right to file eviction petitions until at least August 21, 2021, as well as to prosecute existing cases.  Pl. Mem., 24.  The right to petition

for a redress of grievances in the form of judicial relief is protected by the First Amendment. Gagliardi v. Village of Pawling, 18 F.3d 188, 194 (2d Cir. 1994) (internal citations omitted). The right of access to courts is burdened when state officials take systemic action to frustrate a plaintiff or class of plaintiffs from preparing and filing lawsuits. Christopher v. Harbury, 536 U.S. 403, 413 (2002). To prevail on a denial of access claim, the plaintiff must show that "the defendant took or was responsible for actions that hindered [a plaintiff's] efforts to pursue a legal claim." Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (internal quotations omitted). As explained by the Supreme Court, "the requirement of actual injury 'drives ultimately from the doctrine of standing.'" Elmsford Apt. Assocs., LLC v. Cuomo, 469 F. Supp. 3d 148, 174 (S.D.N.Y 2020) (internal quotations omitted).

As an initial matter, plaintiffs cannot show that City Defendants caused actual injury to plaintiffs in violation of the Petition Clause under either the federal or state Constitutions. As detailed above, City Defendants did not enact CEEFPA; nor do City Defendants have authority to disregard State law. And plaintiffs have not alleged that City Defendants enforced CEEFPA in an unconstitutional manner. See generally, Compl. In any event, plaintiffs cannot demonstrate that CEEFPA had the effect of "frustrating [their] effort[s] to pursue a legal claim." Olivia v. Town of Greece, 630 Fed. Appx. 43, 45 (2d Cir. 2015). Although certain summary proceedings have been temporarily suspended, plaintiffs (and property owners in general) can still sue their tenants for arrears through a breach of contract action in New York Supreme Court. Elmsford, 469 F. Supp. 3d at 174. Property owners can also commence or continue with eviction proceedings against nuisance and safety hazard tenants and those who do not submit a hardship declaration form. CEEFPA Part A §§ 2 and 5(a). Property owners also have the opportunity to bring eviction proceedings for nonpayment once

CEEFPA expires. Id. "Since 'mere delay' to filing a lawsuit cannot form the basis of a Petition Clause violation when the plaintiff will, at some point, regain access to legal process[,] the [plaintiffs'] right to collect both the monetary remedies and injunctive relief they would seek through an eviction proceeding has not been 'completely foreclosed[.]'" Id.

### ii.    CEEFPA is Not Unconstitutionally Vague

Plaintiffs challenge only the constitutionality of CEEFPA Part A, asserting certain phrases in paragraphs A and B of the required hardship declaration form are vague and undefined, "providing landlords with no notice about what circumstances prohibit them from evicting tenants," and "so standardless" that they "deprive them of any procedural opportunity to discern the reasoning for Declaration Forms."[4] Compl., ¶¶ 106, 108. However, plaintiffs' real gripe behind their claim is that the phrases do not require the level of specificity they would like. Compl., ¶ 106. That the hardship declaration does not provide plaintiffs' ideal level of specificity does not render it unconstitutionally vague.[5] The void-for-vagueness doctrine does not demand "mathematical certainty" from statutory language. See id. at 110; A.F. v. Kings Park Cent. Sch. Dist., 341 F. Supp. 3d 188, 198 (E.D.N.Y. 2018) ("a law need not achieve meticulous specificity, which would come at the cost of flexibility and reasonable breadth"). Rather, a statute is fatally vague only when it "proscribe[s] no comprehensible course of conduct at all." United States v. Powell, 423 U.S. 87, 92 (1975). Indeed, "[w]hat renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it

---

[4] Plaintiffs also allege a violation of the NYS Constitution's Due Process Clause. Compl., ¶¶ 103, 112. Because the legal standards applicable to state vagueness challenges are identical to their federal counterparts, see People v. Nelson, 69 N.Y.2d 302, 307 (1987), plaintiffs' State Due Process claim fails for the same reasons, infra.

[5] Notably the hardship declarations for owners/mortgagors who face financial hardship due to COVID-19 list the same phrases. See CEEFPA Part B, subpart A, Section 2; CEEFPA Part B, subpart B, Section 2; CEEFPA Part B, subpart C, Section 1; Chrysafis, 2021 U.S. Dist. LEXIS 72602, * 21-22. Yet, plaintiffs only challenge as unconstitutional the same phrases in the hardship declaration in Part A of the CEEFPA.

establishes has been proved; but rather the indeterminacy of precisely what that fact is." United States v. Williams, 553 U.S. 285, 306, (2008).

Here, the phrases in the hardship declaration are plain-language terms -- "significant loss of income" "increase in necessary out-of-pocket expenses" "meaningful employment" -- and they clearly state that they are limited to instances "during the COVID-19 pandemic" or "related to the COVID-19 pandemic." Compl., Exhibit C. Furthermore, the actions proscribed once a hardship declaration is submitted to the landlord, court, or agent of the landlord or the court, is clear as set forth in CEEFPA Part A §§ 4, 6, and 8. If an enactment fails to (i) "give[] the person of ordinary intelligence a reasonable opportunity to know what is prohibited" and (ii) "provide[] explicit standards for those who apply [it]," it is void for vagueness, but that is not the case here. Grayned v. City of Rockford, 408 U.S. 104, 108-109 (1972).

The hardship declaration is also aligned with CEEFPA's intended purpose "to avoid as many evictions and foreclosures as possible for people experiencing a financial hardship during the COVID-19 pandemic or who cannot move due to an increased risk of severe illness or death from COVID-19." CEEFPA § 3; VIP of Berlin , LLC v. Town of Berlin, 593 F.3d 179, 186 (2d Cir. 2010) ("In reviewing a statute's language for vagueness, we are relegated . . . to the words of the ordinance itself, … to the interpretation of the statute given by those charged with enforcing it.") (internal quotations omitted).

Insofar as plaintiffs are concerned by the possibility of abuse by tenants, the hardship declaration makes clear that tenants' unpaid rent is not being forgiven, financial obligations required by their tenancy … may still be charged or collected and may result in a monetary judgment, and that "it is against the law to make a statement on this form that you

know is false." Compl., Exhibit C. Furthermore, the TSHA takes into consideration that merely claiming financial hardship is not enough and outlines four factors the court must consider in determining whether a tenant's claim of financial hardship is meritorious,[6] which would provide landlords guidance in rebutting the financial hardship presumption when they can continue eviction proceedings. Indeed, plaintiffs admit that TSHA gives "landlords a recourse in court to challenge a tenant's claim of financial hardship" "rather than relying on the tenant's word alone." Compl., ¶ 30. Thus, plaintiffs are not likely to succeed on their vagueness challenge.

### iii. CEEFPA Part A Does Not Violate Plaintiffs' Procedural Due Process Rights

Plaintiffs argue that their procedural due process rights are violated because they cannot "be heard at a meaningful time and in a meaningful manner," having to wait until the CEEFPA extension period is over to continue pursing the eviction remedy proscribed by CEEFPA. Compl., ¶¶ 116, 120. This is not a denial of due process.

There is no dispute that CEEFPA is temporary and plaintiffs will be able to proceed with eviction proceedings and obtain warrants of eviction after that period runs. Currently, they can also continue to proceed with eviction proceedings against tenants who have not submitted the hardship declarations or who have submitted hardship declarations but are considered nuisance or safety hazard tenants. CEEFPA Part A §§ 2, 5 (a). As clearly set forth by the court in Elmsford,[7] "[n]o case says that a meaningful time means as soon as a cause of

---

[6] Under TSHA, the courts are directed to consider the following, allowing landlords to seek discovery into the finances of tenants: (i) the tenant's or lawful occupant's income prior to the COVID-19 covered period; (ii) the tenant's or lawful occupant's income during the COVID-19 covered period; (iii) the tenant's or lawful occupant's liquid assets; and (iv) the tenant's or lawful occupant's eligibility for and receipt of cash assistance, supplemental nutrition assistance program, supplemental security income, the New York State disability program, the home energy assistance program, or unemployment insurance or benefits under state or federal law. Furthermore, TSHA permits courts to award successful landlords money judgments for rent due during the COVID-19 covered period even though a court cannot evict.

[7] Similar to the case at hand, residential landlords sought to enjoin the New York State Governor's EO 202.28, which temporarily permitted tenants to apply their security deposit funds to rents due and temporarily prohibited landlords from initiating eviction proceedings against tenants who are facing financial hardship due to the pandemic.

action accrues – especially where, as in New York, the filing of a summary proceeding is but the first step in what often takes years to accomplish, which is the ultimate eviction of a tenant." 469 F. Supp. 3d at 173 (internal quotations omitted). Consequently, the court held that the "delay embodied mandated by the [New York State Executive Order challenged therein] does not deny the Plaintiffs a meaning opportunity to be heard." Id. This is precisely the case here.

Furthermore, there is no property interest that plaintiffs have been deprived of. To set forth a cognizable due process claim, either substantive or procedural, plaintiff must identify a property right of which it has been deprived as the result of government action without due process of law. See Safepath Sys., LLC v. New York City Dep't of Educ., 563 Fed. Appx. 851, 854-6 (2d Cir. 2014). CEEFPA does not take away plaintiffs' residential property, their claim to rent, or right to retake possession of their residential property pursuant to the eviction process. Undisputedly, certain eviction proceedings and warrants of eviction were temporarily stayed by CEEFPA, not dismissed. See Compl., ¶ 116. Plaintiffs can proceed with eviction proceedings and obtain warrants of eviction after the CEEFPA period expires. See Jermosen v. Coughlin, 877 F.Supp. 864, 871 (S.D.N.Y. 1995) ("A delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation"); see also Sosna v. Iowa, 419 U.S. 393, 410 (1975) (rejecting argument that state's one year residency requirement for divorce petitions denied petitioner access to the courts because "the gravamen of [] Sosna's claim is not total deprivation ... but only delay"). Plaintiffs' reliance on Spinelli v. City of New York, 579 F.3d 160, 174 (2d Cir. 2009) is misplaced because in Spinelli the court found that defendant had actually deprived plaintiff of property interest in her gun dealer license, even though the deprivation was reduced to fifty-eight days. See Compl. ¶ 117. Here, there is no deprivation of property interest but rather a brief delay in certain evictions.

Similarly, plaintiffs' argument that they are deprived of due process because they are allegedly unable to contest or obtain any review of tenants' hardship declaration forms fails. See Compl., ¶ 116. After the CEEFPA extension period runs, the "rebuttable presumption" created by a tenant's submission of a hardship declaration can be reviewed by the courts while landlords utilize the factors set forth in TSHA. See CEEFPA Part A § 11. In addition, due process is not violated because the landlord will be able to dispute the information contained in the hardship form after the stay under CEEFPA is lifted. This delay in contesting the hardship declaration forms does not create a due process violation. See Sosna, 419 U.S. 393 at 410. Therefore, plaintiffs' due process claim fails as a matter of law.

### iv. Plaintiffs Are Not Likely to Succeed on Their Claim of Compelled Speech

Plaintiffs claim that CEEFPA, Part A impermissibly compels speech in violation of the First Amendment and Article 1 § 8 of the New York Constitution. Plaintiffs are not likely to succeed on this claim. [8] *First*, the challenged provision of CEEFPA does not require property owners to personally adopt a philosophy or foster an ideological point of view. The First Amendment "includes both the right to speak freely and the right to refrain from speaking at all." Wooley v. Maynard, 430 U.S. 705, 714 (1977) (finding that the First Amendment protected plaintiff's right to refuse to participate in the participation of the State's ideological message displayed upon a vehicle license plate); West Virginia Bd. of Educ. V. Barnette, 319 U.S. 624 (1943) (holding that a compulsory flag salute and pledge of allegiance violated the First Amendment by forcing students to utter and affirm acceptance of political ideas represented by the flag). Here, the hardship disclosure form does not require a private speaker to personally adopt an ideology or a political idea, much less *any* government message at all. Indeed, the

---

[8] Plaintiffs' compelled speech claim raised under Article 1 § 8 of the NYS Constitution fails for the same reasons as their First Amendment Claim. Pico v. Bd. of Educ., Island Trees Sch. Dist., 638 F.2d 404 (2d. Cir. 1980).

hardship declaration form is a *blank* legal document (bearing the seal of the Unified Court System) to be completed by the tenant with purely factual information regarding the tenant's alleged claim of financial hardship. The landlord is not required to adopt the government's policy in support of the eviction moratorium. A landlord is free to disavow this policy at the time that he/she tenders the form to the tenant. The hardship declaration form contains no legal arguments, viewpoints, or policy statements whatsoever. <u>See</u> Compl., Exhibit C. Rather, it is a non-expressive, factual disclosure form that simply does not trigger a compelled speech analysis.

     *Second*, the challenged disclosure requirement regulates conduct, not speech, and thus, the First Amendment is not implicated here. Contrary to plaintiffs' contentions, CEEFPA neither limits what the landlord may say nor requires the landlord to say anything at all. Landlords are free to say whatever they want about CEEFPA and the eviction moratorium. CEEFPA in no way requires a landlord to complete the blank hardship declaration form or engage in any conversation about the contents of the form. CEEFPA merely requires landlords to provide the factual disclosure form that is of legal significance to their tenants. In this regard, CEEFPA regulates the landlord's conduct because it affects what the landlord must do – physically provide the form by written or electronic means along with a list of not-for-profit services – and not what the landlord must say. <u>Rumsfeld v. Forum for Academic & Institutional Rights, Inc.</u>, 547 U.S. 47, 60 (2006) (holding that a law requiring law schools to accommodate military recruiters on campus did not impermissibly compel speech because the law affected what the law schools "must do – afford equal access to limitary recruiters – not what they may or may not say."). The non-expressive act of distributing a purely factual (and blank) financial hardship form and a list of service providers to a tenant does not suggest that the landlord agrees with any message conveyed by the State. <u>Strickland v. City of Seattle</u>, 2009 U.S. Dist. LEXIS

81787, *14 (W.D. Wa. Sep. 9, 2009) ("simply delivering a government regulated document …

does not imply association with its contents"); see also Virginia v. Hicks, 539 U.S. 113, 123

(2003) (laws regulating "nonexpressive conduct" do not have "anything to do with the First

Amendment").  Thus, CEEFPA regulates conduct and does not implicate the First Amendment.

  *Third,* strict scrutiny is not applicable here because CEEFPA is a routine

disclosure requirement that does not violate the First Amendment.  The Supreme Court has

"applied a lower level of scrutiny to laws that compel disclosures in certain contexts."  Zauderer

v. Office of Disciplinary Counsel, 471 U.S. 626, 651 (1985); Nat'l Elec. Mfrs. Ass'n v. Sorrell,

272 F.3d 104, 114 (2d Cir. 2001).  The lesser standard articulated in Zauderer applies to

commercial speech concerning state-mandated "disclosure of 'purely factual and uncontroversial

information about the terms which … services will be available."  Zauderer, 471 U.S. at 651.

Such disclosures "should be upheld unless they are 'unjustified or unduly burdensome.'"  Id.

The blank hardship declaration form, and the list of service providers, falls within this category

of mandatory disclosure of purely factual and uncontroversial information.

  The disclosure requirements are justified and not unduly burdensome.  The State

Legislature enacted CEEFPA, and extended its terms, to protect "hundreds of thousands of

residents [] facing eviction or foreclosure due to necessary disease control measures that closed

businesses and schools, and triggered mass-unemployment across the state."  CEEFPA § 3.  The

Legislature determined that "[s]tabilizing the housing situation for tenants, landlords, and

homeowners is to the mutual benefit of all New Yorkers and will help the state address the

pandemic, protect the public health, and set the stage for recovery."  Id.  The CEEFPA notice

requirements serve this purpose because the statute stays eviction proceedings for tenants who

submit a hardship declaration, claiming financial hardship due to the COVID-19 pandemic.  The

disclosure requirements are not unduly burdensome because they merely require a landlord to provide a tenant with a standardized form in the tenant's language, as well as a list of not-for-profit services in the tenant's county. The hardship declaration form is widely and easily available to the public in approximately 20 languages on the Office of Court Administration Website.[9] There is a rational relationship between the disclosure requirements and the goals of containing COVID-19 and preventing homelessness, mass evictions, and foreclosures.

In addition, the CEEFPA disclosures are similar to other long-standing notice requirements applicable to all landlords in other Housing Court proceedings. For instance, to secure an eviction warrant from housing courts, a landlord must: serve a notice of non-receipt of payment (see RPL § 235-e(d)); serve a demand of payment (RPAPL § 711(2)); and file a notice of petition and petition in the civil court (RPAPL §732(1)), advising a tenant of legal rights and responsibilities. The CEEFPA disclosures are also akin to other routine disclosure requirements applicable to landlords, including disclosures regarding lead paint risks to tenants.[10] These types of disclosure requirements further the government's interest of ensuring that tenants are informed and protected before invoking the state coercive power to evict a tenant.

*Fourth*, assuming, arguendo, CEEFPA compels speech, strict scrutiny is not the applicable standard of review. The proper standard is the highly deferential standard of review articulated in Jacobson v. Commonwealth of Massachusetts, 197 U.S. 11, 25 (1905). Jacobson "requires courts to afford politically accountable officials significant discretion in striking the

---

[9] Although plaintiffs allege that it is burdensome to translate the hardship form to a tenant's language that is not available on the public website, plaintiffs have failed to plead or allege that they were required to translate the hardship form for any of their tenants or pay for such translation. See generally, Compl.

[10] New York City, Local Law 1 of 2004 ("Local Law 1"), and its amendments, require landlords to identify and remediate lead-based paint hazards in apartments, where there is a young child residing in the unit. Landlords must provide tenants with an annual notice, which the tenant must complete to notify the landlord that a young child lives or spends a certain amount of time in the unit. The lease must contain a notice setting forth the owner's responsibilities, and owners must provide the tenant with a pamphlet informing occupants about lead paint hazards.

appropriate balance during pandemics." Id. CEEFPA's disclosure requirements easily pass constitutional muster under Jacobson. As noted above, the notice requirements ensure that tenants are provided information to temporarily suspend eviction proceedings in the event a tenant claims financial hardship, which rationally relates to the Legislature's stated purpose of stabilizing the housing situation for tenants, landlords, and homeowners.

Plaintiffs erroneously rely on Roman Catholic Diocese of Brooklyn v. Cuomo, 2020 U.S. LEXIS 5708 (2020), for the notion that the Jacobson standard is inapplicable to plaintiffs' claims and that this Court should instead apply strict scrutiny. However, plaintiffs are wrong. In Roman Catholic Diocese of Brooklyn, in which the Court granted injunctive relief pending appeal[11], the Court held that strict scrutiny – not the Jacobson standard – applied to the plaintiff religious institution's First Amendment Free Exercise challenge to EO 202.68. Id., 2020 U.S. LEXIS 5708, at *3. The Court first found that plaintiffs had demonstrated a likelihood of success on the merits of their claim that EO 202.68 violated "the minimum requirement of neutrality" to religion. Id. (citing Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 533 (1993)). Accordingly, the Court's holding in Roman Catholic Diocese applies *narrowly* to claims raised under the Free Exercise Clause of the First Amendment. Nothing in the Roman Catholic Diocese decision mandates that the Jacobson standard is now inapplicable to plaintiffs' claims herein, which were not raised under the Free Exercise Clause. Thus, plaintiffs' claims are subject to – and satisfy – Jacobson review.[12]

---

[11] Specifically, the Court enjoined enforcement of EO 202.68's 10 and 25-person occupancy limits on certain plaintiffs' houses of worship pending disposition of their appeal. Id.

[12] Even assuming, arguendo, that strict scrutiny applies, the disclosure provisions under CEEFPA pass constitutional muster. It is axiomatic that preventing homelessness to contain the COVID-19 pandemic is a compelling government interest. Murray v. Cuomo, 460 F. Supp. 3d 430 (S.D.N.Y. 2020). The notice requirements are narrowly tailored to achieve this goal. The landlord is uniquely positioned to distribute the hardship declaration form at the correct time – i.e., *prior* to the landlord commencing an eviction proceeding in Housing Court. Thus, plaintiffs are not likely to succeed on the merits of their compelled speech claim.

**POINT II**

**PLAINTIFFS HAVE FAILED TO ESTABLISH**
**IRREPARABLE HARM**

Plaintiffs argue that the constitutional violations demonstrate irreparable harm. Pl. Mem., 17. However, as plaintiffs' constitutional claims lack merit, plaintiffs fail to establish irreparable harm.

Plaintiffs also argue that CEEFPA Part A will cause "other irreparable harms arising out of the dire circumstances in which Plaintiffs now find themselves." Pl. Mem., 18. Plaintiffs describe the fear of losing ones property altogether, the tremendous amount of strife because one may have to borrow money, and that they are unable to move into the properties they own because of their tenants' refusal to leave. See id. These arguments also fail. First, the harm that plaintiffs claim is at most speculative and purely economic, and as such, insufficient to establish irreparable harm. "Irreparable harm is injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." New York v. United States Dep't of Homeland Sec., 969 F. 3d 42, 86 (2d Cir. 2020), quoting New York ex rel. Schneiderman v. Actavis PLC, 787 F.3d 638, 660 (2d Cir. 2015); see also M. Rae, Inc., 2020 U.S. Dist. LEXIS 241961 *25. Second, plaintiffs have also failed to submit evidence or explain why a monetary award would not compensate them. Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989) ("A monetary loss will not suffice unless the movant provides evidence of damage that cannot be rectified by financial compensation"). Finally, as noted above, CEEFPA does not prevent or prohibit plaintiffs from recovering unpaid rent in the form of a monetary judgment in an action. Plaintiffs tenants are still bound to their leases and plaintiffs can pursue a cause of action for breach of contract. See e.g., Axginc Corp. v. Plaza Automall, Ltd., 759 Fed. Appx. 26 (2d Cir. 2018) (affirming the judgment of Axginc

Corp. v. Plaza Automall, Ltd., 2017 U.S. Dist. LEXIS 178718 (E.D.N.Y., Oct. 24, 2017)). CEEFPA also does not bar or stay summary proceedings against nuisance tenants, those creating a safety hazard, and those who do not claim financial hardship by submission of a hardship declaration. CEEFPA Part A §§ 5 (a) & (b), 9. As these arguments are insufficient to demonstrate irreparable harm, plaintiffs' motion must be denied.

**POINT III**

**THE BALANCE OF THE HARDSHIPS TIPS
DECIDEDLY IN THE STATE'S FAVOR**

Any purported injury to plaintiffs is *substantially* outweighed by State's significant interest in protecting the public during this unprecedented public health emergency. CEEFPA protects the public health by preventing mass evictions and foreclosures that could lead to homelessness, and thus exacerbate the spread of COVID-19. The State undoubtedly has an interest in combatting any resurgence in the positive COVID-19 rate. See, e.g., Columbus Ale House, 2020 U.S. Dist. LEXIS 191828, at * 13-14 (denying motion for preliminary injunction because "it is up to the Governor, not the courts, to balance the competing public health and business interests"); Roman Catholic Diocese of Brooklyn, 2020 U.S. Dist. LEXIS 192292, at *30-31 Ass'n of Jewish Camp Operators, 2020 U.S. Dist. LEXIS 117765, at *46. Accordingly, given the State's compelling interests in protecting the public health and preventing mass evictions, the balance of the hardships tips decidedly in Defendants' favor.

**CONCLUSION**

For the foregoing reasons, City Defendants respectfully request that this Court deny plaintiffs' motion for a preliminary injunction, together with such other and further relief as this Court deems just and proper.

Dated:      New York, New York
            May 21, 2021

                              Respectfully submitted,


                              JAMES E. JOHNSON
                              Corporation Counsel of the City of New York
                              Counsel for City Defendants
                              100 Church Street
                              New York, New York 10007
                              (212) 356-2190


                              By:    _____/s/_____
                                     Rachel K. Moston
                                     Yungbi Jang
                                     Assistant Corporation Counsels