UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

PANTELIS CHRYSAFIS, BETTY S. :
COHEN, BRANDIE LACASSE, MUDAN :
SHI, FENG ZHOU, and RENT :
STABILIZATION ASSOCIATION OF NYC, :
INC., :
 :
  *Plaintiffs*, :
 :
  -against- :
 :
 :
LAWRENCE K. MARKS, in his official :
capacity as Chief Administrative Judge of the :
Courts of New York State, ADRIAN H. :
ANDERSON, in his official capacity as Sheriff : No. 2:21-cv-02516
of Dutchess County, New York, JAMES :
DZURENDA, in his official capacity as :
Sheriff of Nassau County, New York, JOSEPH :
FUCITO, in his official capacity as Sheriff of :
New York City, New York, MARGARET :
GARNETT, in her official capacity as :
Commissioner of the New York City :
Department of Investigation, and CAROLINE :
TANG-ALEJANDRO, in her official capacity :
as Director, Bureau of Marshals, New York :
City Department of Investigation, :
 :
  *Defendants*. :

-----------------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

GIBSON, DUNN & CRUTCHER LLP

200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 2

    I.    Plaintiffs Will Be Irreparably Harmed Absent Preliminary Injunctive Relief. .............. 2

    II.    Plaintiffs Are Likely To Succeed On The Merits. .......................................................... 3

      A. Defendants' Efforts to Preclude Merits Review Should Be Rejected. ........................... 3

        1. *Younger/O'Shea* Abstention Does Not Apply. .......................................................... 3

        2. Law Enforcement Officers Directed By State Law To Implement An
        Unconstitutional Statute Are Properly The Subjects Of An Injunction. ........................ 6

      B. Plaintiffs' Constitutional Claims Are Likely To Succeed. ............................................ 7

        1. CEEFPA Violates Plaintiffs' Freedom Of Speech Rights. ......................................... 8

        2. CEEFPA Violates Plaintiffs' Due Process Rights. ................................................... 11

        3. CEEFPA Violates Plaintiffs' Right To Petition Under The First Amendment. ....... 13

    III.    The Balance Of Hardships And Public Interest Favor Injunctive Relief. .................... 15

CONCLUSION ..................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agudath Israel of Am. v. Cuomo*,
983 F.3d 620 (2d Cir. 2020)............................................................................2, 9, 15

*All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*,
651 F.3d 218 (2d Cir. 2011)........................................................................................8

*Arias v. Decker*,
459 F. Supp. 3d 561 (S.D.N.Y. 2020)........................................................................6

*Bernstein v. New York*,
591 F. Supp. 2d 448 (S.D.N.Y. 2008)........................................................................7

*Blackwelder v. Safnauer*,
689 F. Supp. 106 (N.D.N.Y. 1988)............................................................................4

*Brooklyn Inst. of Arts & Scis. v. City of New York*,
64 F. Supp. 2d 184 (E.D.N.Y. 1999)........................................................................4

*Christopher v. Harbury*,
536 U.S. 403 (2002)..................................................................................................14

*Colo. River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976)....................................................................................................3

*Cunney v. Bd. of Trustees of Vill. of Grand View*,
660 F.3d 612 (2d Cir. 2011)......................................................................................12

*Disability Rights N.Y. v. New York*,
916 F.3d 129 (2d Cir. 2019)....................................................................................4, 5

*Elmsford Apartment Assocs., LLC v. Cuomo*,
469 F. Supp. 3d 148 (S.D.N.Y. 2020)......................................................................14

*F.C.C. v. Fox Television Stations, Inc.*,
567 U.S. 239 (2012)..................................................................................................12

*Falco v. Justices of the Matrimonial Parts of Sup. Ct. of Suffolk Cty.*,
805 F.3d 425 (2d Cir. 2015)........................................................................................5

*Fed. Deposit Ins. Corp. v. Mallen*,
486 U.S. 230 (1988)..................................................................................................13

*Fuentes v. Shevin*,
407 U.S. 67 (1972)..................................................................................12

*Gay Men's Health Crisis v. Sullivan*,
792 F. Supp. 278 (S.D.N.Y. 1992) .........................................................12

*Hagans v. Lavine*,
415 U.S. 528 (1974)................................................................................14

*Hopkins Hawley LLC v. Cuomo*,
2021 WL 465437 (S.D.N.Y. Feb. 9, 2021)..............................................9

*Horne v. Dep't of Agriculture*,
576 U.S. 350 (2015)................................................................................13

*Huminski v. Corsones*,
396 F.3d 53 (2d Cir. 2005)........................................................................6

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
515 U.S. 557 (1995)................................................................................11

*Jacob Cram Cooperative, Inc. v. Ziolkowski*,
2021 WL 225304 (N.Y. Sup. Ct. Jan. 22, 2021).......................................3

*Jones v. Hamilton Cty. Sheriff*,
838 F.3d 782 (6th Cir. 2016) ....................................................................7

*Kaufman v. Kaye*,
466 F.3d 83 (2d Cir. 2006)........................................................................5

*Kraebel v. N.Y.C. Dep't of Hous. Pres. & Dev.*,
959 F.2d 395 (2d Cir. 1992)....................................................................13

*Lakeragh v. State of New York*,
No. 902292-21 (Sup. Ct. 2021)...............................................................11

*Mathews v. Eldridge*,
424 U.S. 319 (1976)................................................................................12

*Milavetz, Gallop & Milavetz, P.A. v. U.S.*,
559 U.S. 229 (2010)................................................................................10

*Milhaven v. Country Vill. Apartment*,
2020 WL 5663380 (S.D.N.Y. Sept. 23, 2020)...........................................4

*Monell v. Dep't of Soc. Servs. of City of N.Y.*,
436 U.S. 658 (1978)..................................................................................6

*National Institute of Family and Life Advocates v. Becerra*,
    138 S. Ct. 2361 (2018) ................................................................................10

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*,
    673 F.3d 84 (2d Cir. 2012) ..............................................................................3

*Northland Baptist Church of St. Paul v. Walz*,
    2021 WL 1195821 (D. Minn. Mar. 30, 2021) ...............................................9

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) .........................................................................................5

*PSEG Long Island LLC v. Town of North Hempstead*,
    158 F. Supp. 3d 149 (E.D.N.Y. 2016) ..........................................................8, 9

*Qing You Li v. City of New York*,
    2018 WL 6251339 (E.D.N.Y. Nov. 28, 2018) ...............................................15

*Quern v. Jordan*,
    440 U.S. 332 (1979) .........................................................................................7

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
    141 S. Ct. 63 (2020) ...............................................................................1, 2, 15

*Sousa v. Marquez*,
    702 F.3d 124 (2d Cir. 2012) ..........................................................................14

*Spinelli v. City of New York*,
    579 F.3d 160 (2d Cir. 2009) ..........................................................................12

*Sprint Commc'ns, Inc. v. Jacobs*,
    571 U.S. 69 (2013) ...........................................................................................4

*Trowbridge v. Cuomo*,
    2016 WL 7489098 (S.D.N.Y. Dec. 21, 2016) ..............................................3, 5

*Valley Auto Racing Corp. v. Cuomo*,
    478 F. Supp. 3d 389 (N.D.N.Y. 2020) ...........................................................9

*Ex Parte Young*,
    209 U.S. 123 (1908) .........................................................................................6

*Zauderer v. Off. Of Disciplinary Counsel of Sup. Ct. of Ohio*,
    471 U.S. 626 (1985) .....................................................................................9, 10

**Statutes**

N.Y. Real Prop. Acts § 732 ....................................................................................10

**Rules**

C.P.L.R. 2219(a) ............................................................................................................3

C.P.L.R. 5015(a) ............................................................................................................3

## PRELIMINARY STATEMENT

Defendants' opposition reduces to this: they desperately seek to avoid the merits of Plaintiffs' constitutional claims by invoking a host of baseless procedural objections that simply do not apply here. But try as they might, they cannot avoid the merits. And on the merits, Defendants are reduced to arguing that the waning pandemic justifies blind deference to the State Legislature's decision to extend CEEFPA and an eviction moratorium that has now lasted more than a year with no end in sight. That is not the law. As the Supreme Court recently made clear, "even in a pandemic, the Constitution cannot be put away and forgotten." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020) (per curiam) (enjoining Governor Cuomo's pandemic-related capacity restrictions on houses of worship). Yet Defendants ask this Court to do exactly that in the face of ongoing violations of Plaintiffs' constitutional rights.

In addition to twisting the law, Defendants ignore the facts on the ground. Conditions in New York have, thankfully, improved substantially since the depths of the pandemic, so much so that the State has lifted restrictions on multiple fronts and is on the verge of a complete reopening. Indeed, since this suit was filed, New York has followed the lead of the Centers for Disease Control and eliminated mask requirements for vaccinated individuals. *See* Supplemental Declaration of Akiva Shapiro ("Supp. Shapiro Decl."), Ex. 1. Stadiums have even re-opened, and the courts are fully staffed for in-person operations as of May 24. Yet CEEFPA's Hardship Declaration provisions—passed earlier in the pandemic, and now extended to continue the law's unconstitutional mandates, including compelled speech requiring landlords to inform their tenants how they can continue to avoid paying rent—force property owners to disseminate the government's messages, and put them at the mercy of vague and unchallengeable assertions of hardship from tenants who refuse to pay rent or move out after the expiration of their leases,

pushing these Property-Owner Plaintiffs and many other small property owners across this State to the brink of financial ruin.

Constitutional injury is *per se* irreparable harm, strict scrutiny applies to Plaintiffs' free speech and petition claims, Plaintiffs' claims are likely to succeed because CEEFPA is not narrowly tailored to achieve the State's interest,[1] and there is no public interest in a law that violates citizens' constitutional rights, whatever the State's motivations or goals may be. This Court should therefore preliminarily enjoin any further enforcement of Part A of CEEFPA.

## ARGUMENT

### I.      Plaintiffs Will Be Irreparably Harmed Absent Preliminary Injunctive Relief.

Plaintiffs will be irreparably harmed if Part A of CEEFPA is not enjoined because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Roman Catholic Diocese*, 141 S. Ct. at 67, and "a presumption of irreparable injury . . . flows from a violation of constitutional rights," *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 636 (2d Cir. 2020). Defendant Marks and Sheriff Anderson fail to address these precedents, Marks Opp. 18–19; Anderson Opp. 6–7, and the other Defendants do not substantively address Plaintiffs' First Amendment harms at all, City Opp. 19–20; Dzurenda Opp. 11–16. In any event, Plaintiffs have demonstrated concrete constitutional injuries on the face of the law and by sworn declaration, some of which Defendants brush off as "monetary" and "speculative." Marks Opp. 18; *see also* City Opp. 19–20; Dzurenda Opp. 11–16; Anderson Opp. 6. The facts remain unchallenged: Plaintiff LaCasse in immediate need of a place to live, is immunocompromised, and

---

[1]   As the late Judge Feuerstein observed during the hearing in *Chrysafis I*, "the government should be the one to approach [tenants] and give them an opportunity to explain why they should not be penalized for not paying their rent or some other reason." *Chrysafis I*, Dkt. 29-1 at 10:10–14. Further highlighting CEEFPA's tailoring failures, the State's pandemic rental assistance program—which, unlike CEEFPA, prioritizes tenants in actual need—will begin distributing aid and staying recipients' evictions on June 1. *See* Supp. Shapiro Decl. Ex. 2.

working out of the house after losing rent income at great risk to her health, Dkt. 10 ¶¶ 10, 14;[2] Plaintiff Cohen is at risk of losing her property, Dkt. 9 ¶ 11; Plaintiffs Zhou and Shi cannot pay their own rent or reclaim their property to live in it, Dkt. 11 ¶ 12; and Plaintiff Chrysafis, who secured a pre-COVID warrant of eviction against his tenant, is suffering emotionally and has wanted to sell his property for well over a year, Dkt. 13 ¶¶ 12, 13, 15.

## II. Plaintiffs Are Likely To Succeed On The Merits.

### A. Defendants' Efforts to Preclude Merits Review Should Be Rejected.

#### 1. *Younger/O'Shea* Abstention Does Not Apply.

In an effort to evade merits review, Defendant Marks asserts that under *Younger* and *O'Shea*, the Court should abstain from deciding the constitutional issues raised in Plaintiffs' application. Marks Opp. 2–6. But abstention is plainly inappropriate and inapplicable here.

Though Defendant Marks does not acknowledge it, the Second Circuit has made clear that "abstention is generally disfavored, and federal courts have a 'virtually unflagging obligation to exercise their jurisdiction.'" *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). Abstention is particularly improper when federal courts are called upon to decide whether there has a been a deprivation of federal constitutional rights—to make such determinations is "the very reason they exist." *Trowbridge v. Cuomo*, 2016 WL 7489098, at *10 (S.D.N.Y. Dec. 21, 2016) (citation and internal quotation marks omitted).

---

[2] Sheriff Anderson's claim that LaCasse's property will be "immediately returned to her" through her pending ejectment action in Dutchess Supreme Court, Anderson Opp. 3, is erroneous. A state court recently ruled that CEEFPA Part A prohibits ejectments just as it does evictions. *Jacob Cram Cooperative, Inc. v. Ziolkowski*, 2021 WL 225304 (N.Y. Sup. Ct. Jan. 22, 2021). In any case, the court will not even hear her motion until July 28, Dkt. 35-1, at 1, and will have 60 days to decide it, C.P.L.R. 2219(a). Even if her tenants remain in default and the court grants LaCasse's request for ejectment, the tenants will have a year to move to vacate a judgment. C.P.L.R. 5015(a). Finally, Sheriff Anderson's claim that enjoining CEEFPA would "stay all evictions," Anderson Opp. 5, makes no sense—without CEEFPA, eviction actions would proceed in the normal course.

As Defendant Marks' own cited authority makes clear, "*Younger* mandates abstention only when the plaintiff seeks to enjoin ongoing state proceedings. . . ." *Disability Rights N.Y. v. New York*, 916 F.3d 129, 133 (2d Cir. 2019). Plaintiffs are not asking this Court to enjoin any ongoing state proceedings. Rather, they ask the Court to enjoin CEEFPA Part A, which will permit the resumption of housing court proceedings. *See, e.g.*, Compl. p. 48 ¶ 8. Moreover, Plaintiff RSA has never filed an eviction proceeding, and Plaintiff LaCasse's was dismissed under CEEFPA. Dkt. 10 ¶ 5. Plaintiffs Chrysafis, Zhou, and Shi received final judgments in their eviction proceedings before CEEFPA went into effect. Dkt. 11 ¶ 6; Dkt. 13 ¶ 8. And Plaintiff Cohen's currently stayed eviction action, filed in September 2020, would not be enjoined but rather potentially permitted to proceed if the requested relief is granted to Plaintiffs. Dkt. 9 ¶¶ 6, 11.[3]

Even if ongoing state proceedings *were* to be blocked, abstention would be improper because *Younger* applies only where the state proceedings fall into one of three specific "exceptional" categories not present here. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013). Contrary to Judge Marks' argument, the State's general interest in regulating landlord-tenant proceedings does not constitute such an "exceptional" circumstance. *See, e.g.*, *Brooklyn Inst. of Arts & Scis. v. City of New York*, 64 F. Supp. 2d 184, 194 (E.D.N.Y. 1999) (Gershon, J.) (concluding that a "landlord-tenant action that is routinely available in disputes between private parties" did not justify abstention under *Younger*); *Milhaven v. Country Vill. Apartment*, 2020 WL 5663380, at *8 (S.D.N.Y. Sept. 23, 2020). And again, Plaintiffs do not seek to enjoin state court proceedings.

---

[3] Nor should the Court abstain because "countless other pending proceedings" supposedly will be affected. Marks Opp. 5. First, no state court action anywhere will be enjoined by the relief sought here. Second, *Younger* does not require abstention simply because some New Yorker may be party to a state-court action that might be affected by this Court's decision. *See, e.g.*, *Blackwelder v. Safnauer*, 689 F. Supp. 106, 119 (N.D.N.Y. 1988) (noting that, "[a]s a general proposition, abstention is mandated under *Younger* only when the federal plaintiff is actually a party to the state proceeding"), *aff'd on other grounds*, 866 F.2d 548 (2d Cir. 1989).

Abstention under *O'Shea* is likewise unwarranted. A court should abstain under *O'Shea* only where failing to do so would result in "an ongoing federal audit" of state-court proceedings. *O'Shea v. Littleton*, 414 U.S. 488, 500 (1974). Here, in contrast, enjoining CEEFPA Part A's implementation will simply permit state courts to adjudicate eviction proceedings in the normal course, as they see fit pursuant to existing state court rules and procedures. Granting Plaintiffs relief would not mean, for instance, that state courts must issue or enforce an eviction warrant in any particular case. The very authority that Defendant Marks cites highlights the distinction. In *Disability Rights*, a plaintiff sought an injunction requiring the state courts to take steps such as "providing notice, applying a certain burden of proof, and providing substantive and procedural rights" equal to those provided under a different state statute. 916 F.3d at 132, 136–37. The Court concluded that such an injunction would "engraft new procedures" on state practices, and that, "[a]s in *O'Shea*, [the] requested relief would effect a continuing, impermissible 'audit' of New York Surrogate's Court proceedings" and "[o]ngoing, case-by-case oversight of state courts." *Id.* at 136–37. By contrast, if CEEFPA Part A is enjoined, no new procedures will be superimposed onto state proceedings. Nor will there be any need for this Court to "audit" or supervise the state courts generally, or individual eviction actions, on a continuing basis; those suits will simply proceed under New York law as they did prior to CEEFPA.[4]

Finally, whether or not Plaintiffs could raise their constitutional claims in State court is neither dispositive nor persuasive. *See, e.g.*, *Trowbridge*, 2016 WL 7489098, at *11. That is especially so "at this early stage of litigation, where there has been little fact development." *Id.* The argument for abstention is all the weaker in light of the serious, multiple

---

[4]  Among other differences, the remaining cases Defendant Marks cites granted abstention in the context of rejecting clear attempts to forum-shop when a litigant was dissatisfied with a state court ruling or procedure. *See* Marks Opp. 3–4 (citing *Kaufman v. Kaye*, 466 F.3d 83 (2d Cir. 2006) and *Falco v. Justices of the Matrimonial Parts of Sup. Ct. of Suffolk Cty.*, 805 F.3d 425 (2d Cir. 2015)). There is no such backdrop here.

federal constitutional issues Plaintiffs raise. Indeed, the very notion of being able to sue state actors for federal constitutional violations in a neutral federal forum instead of the State's home courts would be wholly undermined by the overbroad abstention rule Defendant Marks proposes. This Court should therefore decline his invitation to abstain from reaching the merits here under *Younger* or *O'Shea,* as the narrow doctrine articulated there is inapplicable to this case.

### 2. Law Enforcement Officers Directed By State Law To Implement An Unconstitutional Statute Are Properly The Subjects Of An Injunction.

Instead of offering merits arguments, the Sheriffs assert that they cannot be proper subjects of an injunction against CEEFPA. They argue that no county policies or practices caused the violation of Plaintiffs' rights, and that they have only a ministerial role in enforcing the law. Dzurenda Opp. 8–11; Anderson Opp. 7–11. Similarly, the City Defendants assert that they have a minimal or no role in enforcing CEEFPA and that that they have not enforced or threatened to enforce it against Plaintiffs. City Opp. 6–8. Of course, even if the Sheriffs and the City Defendants could not be subject to an injunction here—and they can—that would not impact Plaintiffs' request for a preliminary injunction as against Defendant Marks, who does not (and cannot) contest that he is a proper party here, and who unquestioningly plays a central role in implementing the challenged provisions. *See, e.g.*, *Arias v. Decker*, 459 F. Supp. 3d 561, 568, 580 (S.D.N.Y. 2020).

In any event, the Sheriffs are incorrect that Plaintiffs must identify a county policy or practice in order to enjoin them from enforcing CEEFPA. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978), has no application where a plaintiff sues local officials in their official capacity under *Ex Parte Young*, 209 U.S. 123 (1908), to enjoin enforcement of a *State* statute, because in that situation they are acting on behalf of the State. *See Huminski v. Corsones*, 396 F.3d 53, 73 (2d Cir. 2005) (sheriff "was likely a state official when he was performing his general duties for the sheriff's department, particularly when he was acting pursuant to state law"); *see*

*also, e.g.*, *Jones v. Hamilton Cty. Sheriff*, 838 F.3d 782, 784–86 (6th Cir. 2016).  Here, Plaintiffs filed suit against the Sheriffs and the City Defendants under *Ex Parte Young* to enjoin them from enforcing a State law for which they have express and specific enforcement authority.  Plaintiffs, moreover, do not seek to hold any county or municipal entity liable.  *Monell* does not apply.  *See Quern v. Jordan,* 440 U.S. 332, 337–38 (1979) (stating that *Monell* is "limited to local government units," and does not affect *Ex Parte Young* (citation and internal quotation marks omitted)).

Finally, CEEFPA expressly prohibits "sheriffs" and "marshals" (who are overseen by the DOI Commissioner and Director of the Bureau of Marshals) from executing eviction warrants that do not comply with CEEFPA's Hardship Declaration requirements.  Dkt. 14-1, CEEFPA Part A § 8(d).  And, where an eviction warrant does not contain the required language and a tenant delivers a completed Declaration Form to a sheriff or marshal, she or he is required to affirmatively "return the hardship form to the court indicating the appropriate index/case number the form is associated with."  CEEFPA Part A § 8(e).[5]  An injunction would serve to bar the Sheriffs and the City Defendants from effectuating these provisions, which they may otherwise do with respect to Plaintiffs.  *See, e.g.*, Dkt. 13 ¶¶ 8–10 (detailing Plaintiff Chrysafis's outstanding eviction warrant).

## B.      Plaintiffs' Constitutional Claims Are Likely To Succeed.

Only Defendant Marks and the City Defendants provide any substantive analysis of the merits of Plaintiffs' constitutional claims.  *See* Marks Opp. 6–17; City Opp. 8–18.  Contrary to their arguments, Plaintiffs are likely to demonstrate violations of their constitutional rights.

---

[5]  Sheriff Anderson suggests he would be entitled to quasi-judicial immunity if sued for executing an eviction warrant, *see* Anderson Opp. 8–9, but quasi-judicial immunity does not bar suits for prospective injunctive relief, *see, e.g.*, *Bernstein v. New York*, 591 F. Supp. 2d 448, 463 (S.D.N.Y. 2008).

### 1. CEEFPA Violates Plaintiffs' Freedom Of Speech Rights.

CEEFPA unconstitutionally compels Plaintiffs to distribute Hardship Declaration forms drafted by the government to tenants and to include a government-curated list of legal service providers. CEFFPS thus forces landlords to speak in support of a State eviction moratorium program with which they disagree and to recommend specific legal organizations whose aim and advice are adverse to their interests. *See, e.g.*, *All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*, 651 F.3d 218, 234 (2d Cir. 2011) (challenged policy compelled plaintiffs to "espouse the government's position"), *aff'd sub nom. Agency for Int'l Dev. v. All. For Open Soc'y Int'l, Inc.*, 570 U.S. 205 (2013); *PSEG Long Island LLC v. Town of North Hempstead*, 158 F. Supp. 3d 149, 166 (E.D.N.Y. 2016) (Spatt, J.). These provisions are evaluated, and fail, under strict scrutiny.[6]

Both Defendant Marks and the City Defendants point to the century-old *Jacobson* decision to argue that the mere fact that the law was enacted in connection with a pandemic frees it from meaningful constitutional review. Marks Opp. 13–14; City Opp. 17–18. They also argue that CEEFPA is a mere "notice" or "routine disclosure requirement" that doesn't raise constitutional issues. Marks Opp. 14–16; City Opp. 16–17. Finally, the City Defendants argue that CEEFPA regulates conduct instead of speech and does not force landlords to voice opinions with which they disagree. City Opp. 14–16. Defendants are wrong on all counts.

First, *Roman Catholic Diocese* and *Agudath Israel* impose strict scrutiny when First Amendment rights are at play, even in a pandemic. Defendant Marks and the City Defendants attempt to wave away these precedents, arguing that they only apply to free-exercise claims. Marks Opp. 17; City Opp. 18. But there is no valid basis on which to treat First Amendment speech challenges differently than free-exercise challenges. Indeed, Judge Park of the Second

---

[6] Defendants do not substantively contest that the Hardship Declaration is interwoven inextricably throughout Part A of CEEFPA. The entirety of Part A is thus unconstitutional. *See* Op. Br. 18 n.5.

Circuit could not have been clearer in instructing that any "reliance on *Jacobson*" as support for a deferential review standard "in the face of the COVID-19 pandemic" "was misplaced." *Agudath Israel*, 983 F.3d at 635. *Jacobson* itself did not involve the First Amendment at all, further undermining any argument for its application instead of these recent precedents. *See id.* (noting that *Jacobson* involved only a substantive due process challenge and "predated the modern constitutional jurisprudence of tiers of scrutiny"); *see also Northland Baptist Church of St. Paul v. Walz*, 2021 WL 1195821, at *11 (D. Minn. Mar. 30, 2021) (similar).[7]

Strict scrutiny applies. The Hardship Declaration requirement fails that standard because it is not narrowly tailored to the State's purported interests. There are multiple less restrictive, nonspeech-compelling alternatives: The State could provide the forms to tenants directly; conduct a public awareness campaign; or direct tenants to the Hardship Declaration already posted on the government's website. There is no reason that property owners should bear the burdens of securing the forms, and translating, printing, and mailing them. If timing was so "crucial," the State should have relied on its own resources. Indeed, the Office of Court Administration has mailed thousands of declarations to tenants. Op. Br. 21. But the State "chose to forgo [] alternatives in favor of a law that not only compels the Plaintiffs to carry [its] specific message as if it were their own, but also to bear the associated costs of doing so." *PSEG Long Island*, 158 F. Supp. 3d at 168.

Second, Defendants appear to argue that rational basis applies under *Zauderer v. Off. Of Disciplinary Counsel of Sup. Ct. of Ohio*, 471 U.S. 626 (1985), because the "blank" Hardship Declaration is a "routine disclosure" form with "purely factual and uncontroversial information." Marks Opp. 14–16; City Opp. 16–17. This is false. The Hardship Declaration includes a

---

[7] The cases Defendant Marks cites in support of *Jacobson*'s application are not to the contrary. *Valley Auto Racing Corp. v. Cuomo*, 478 F. Supp. 3d 389, 396 (N.D.N.Y. 2020) predates *Roman Catholic Diocese*, and *Hopkins Hawley LLC v. Cuomo*, 2021 WL 465437, at *4, *8 (S.D.N.Y. Feb. 9, 2021) did not involve rights that "come within the ambit of First Amendment protection."

government-created list of possible "financial obligations" that tenants are invited to select to block eviction, without any mechanism to provide proof or describe tenants' particular circumstances. *See* Dkt. 14-7 (Hardship Declaration). There is nothing "purely factual and uncontroversial," Marks Opp. 14; City Opp. 16, about tenants' checking a box from a set of state-written, subjective and personal "financial obligations" with which landlords will likely disagree, or providing a list of government-dictated, recommended legal services groups. *See* Dkt. 14-7.[8]

Next, Defendant Marks and the City Defendants urge the Court to uphold CEEFPA because there are "other long-standing notice [] requirements applicable to landlords in housing court proceedings." Marks Opp. 14–15; City Opp. 17. But in compelling speech adverse to landlords' interests, CEEFPA goes far beyond every law Defendants cite. For example, RPAPL § 732 merely informs tenants of their legal rights and responsibilities, and the other notices Defendants cite, including for sprinklers and lead paint, provide factual disclosures meant to protect tenants' health and safety. Marks Opp. 14–15; City Opp. 17. CEEFPA goes multiple steps further by requiring Plaintiffs to effectively tell tenants that they need not pay their rent and provide information that tenants can use to further delay eviction proceedings.

The City Defendants' argument that CEEFPA regulates conduct rather than speech, City Opp. 15–16, is also meritless. In *National Institute of Family and Life Advocates v. Becerra*—which the City Defendants do not address—the Supreme Court concluded that a law requiring crisis pregnancy centers discouraging abortion to distribute government-written notices of the availability of state-sponsored abortion regulated not conduct, but "speech as speech." 138 S. Ct.

---

[8] The compelled speech here is not akin to the disclosure requirements in *Zauderer* and *Milavetz*. Marks Opp. 14. In both cases, attorneys were required to disclose specific information in advertisements to combat pervasive and inherently misleading commercial advertisements. *Zauderer*, 471 U.S. at 626; *Milavetz, Gallop & Milavetz, P.A. v. U.S.*, 559 U.S. 229, 249–50 (2010). Here, there is no allegation that landlords are engaged in deceptive advertising practices nor disseminating advertisements with misleading or omitted information to tenants.

2361, 2373–74 (2018). So too here. CEEFPA requires property owners to include (and in some cases translate) a government-scripted message with any demand for rent and before commencing an eviction proceeding. Op. Br. 20–21. And, contrary to the City Defendants' claim, City Opp. 14–16, delivering this message to tenants compels landlords to engage in speech with which they disagree and robs them of their right to decide "what not to say." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 573 (1995) (citation and internal quotation marks omitted).

### 2. CEEFPA Violates Plaintiffs' Due Process Rights.

Plaintiffs are likely to succeed on their substantive due process claim because CEEFPA's hardship categories—which tenants need not even choose from—are hopelessly vague and provide no standards for enforcement, and on their procedural due process claim because CEEFPA prevents landlords from contesting hardship declarations until at least August 31, 2021.

In response, Defendant Marks argues that the terms used in CEEFPA's hardship categories, as well as the term "financial hardship" itself, "are common in life and law" and can be readily understood. Marks Opp. 8; *see also* City Opp. 11 (arguing that CEEFPA uses "plain-language terms").[9] But take, for example, a claim of hardship based on an "increase in necessary out-of-pocket expenses related to performing essential work or related to health impacts during the COVID-19 pandemic." CEEFPA Part A § 1(4). What is a "necessary" expense? How must it "relate" to essential work or health impacts? CEEFPA provides no answers to these questions, and all of CEEFPA's other hardship categories contain numerous similarly undefined terms. *See* Op. Br. 11, 23. Particularly egregious—but not, contrary to Defendant Marks' erroneous assertion,

---

[9] Defendant Marks argues that the Court should defer to a state trial court decision concluding that CEEFPA is not unconstitutionally vague. Marks Opp. 6 (citing *Lakeragh v. State of New York*, No. 902292-21 (Sup. Ct. 2021)). But as Property-Owner Plaintiffs have explained, *see Chrysafis I*, Dkt. 32, that decision should not be followed. In addition to not being binding on this Court, the *Lakeragh* decision included only a superficial analysis of the vagueness issue and did not address any of the federal void-for-vagueness precedent Plaintiffs have cited here. *See id.* at 1–2. Nor does any Defendant here address this precedent in their briefing.

*see* Marks Opp. 8, the only vagueness claimed—is the "other circumstances" category. CEEFPA Part A § 1(5). While Defendant Marks argues that the State need not provide an "exhaustive list" of "other circumstances," Marks Opp. 9, that is not the point. The "other circumstances" category fails to provide *any example* of what might qualify, which could at least "add definiteness" to an otherwise formless standard. *Gay Men's Health Crisis v. Sullivan*, 792 F. Supp. 278, 294 (S.D.N.Y. 1992). And because tenants need not specify which financial hardship category applies to them, property owners are left to "speculate as to" vague hardship category tenants are claiming. *Cunney v. Bd. of Trustees of Vill. of Grand View*, 660 F.3d 612, 620 (2d Cir. 2011) (citation omitted); *see also Fuentes v. Shevin*, 407 U.S. 67, 80 (1972). Because the law provides landlords no notice about what circumstances prohibit eviction, it essentially delegates the authority to determine the scope of CEEFPA to tenants themselves. That flies in the face of due process principles, which require "that regulated parties . . . know what is required of them so they may act accordingly." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). And neither Defendant Marks nor the City Defendants address the as-applied impacts on Plaintiffs.

There is also no doubt that CEEFPA deprives Plaintiffs of their due process right to challenge tenants' Hardship Declarations "'at a meaningful time and in a meaningful manner,'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976), since they cannot challenge Hardship Declarations *at all* while CEEFPA's eviction prohibition is in effect. Defendant Marks and the City Defendants claim in response that CEEFPA does not infringe Plaintiffs' due process rights because it only delays their ability to exercise their eviction rights until after August 31, preserving the ability to file breach-of-contract claims. Marks Opp. 10–11; City Opp. 12–13. But "[e]ven a brief and provisional deprivation of property pending judgment is of constitutional importance." *Spinelli v. City of New York*, 579 F.3d 160, 174 (2d Cir. 2009) (citation omitted) (58-day delay in restoring

gun license and returning firearms violated due process). Even assuming CEEFPA's eviction moratorium will not be extended once again, the eviction moratoria have cumulatively already impeded property owners from evicting nonpaying tenants for a year or more. Op. Br. 7–8. CEEFPA will be the last straw for landlords who are facing financial ruin and may lose their properties. *See, e.g.*, Dkt. 9 ¶ 11; Dkt. 11 ¶ 12; Dk. 12 ¶ 10; Dkt. 13 ¶ 11; Compl. ¶ 64. As Defendant Marks acknowledges, "a delay [in access to the courts] cannot be evaluated in a vacuum." Marks Opp. 11 (citing *Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 242 (1988)).

As a fallback, Defendant Marks and the City Defendants contend that CEEFPA does not deprive Plaintiffs of any property interest because they may still seek back rent. Marks Opp. 9–10; City Opp. 13. But—in addition to disregarding the practical need to remove a tenant unlikely to ever pay the full amount owed in back rent—that argument ignores that CEEFPA's eviction bar wholly deprives property owners of their right to "possess, use, and dispose of" their properties as they wish. *Horne v. Dep't of Agriculture*, 576 U.S. 350, 361–62 (2015). Finally, the rebuttable presumption in favor of assertions of financial hardship blocks evictions and has no expiration. CEEFPA Part A § 11. This rule is in and of itself "so unreasonable as to deny due process." *Kraebel v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 959 F.2d 395, 405 (2d Cir. 1992).

### 3. CEEFPA Violates Plaintiffs' Right To Petition Under The First Amendment.

CEEFPA forecloses Plaintiffs' access to the courts in violation of their First Amendment rights. Inexplicably, both Defendant Marks and the City Defendants ignore *Roman Catholic Diocese*, and Defendant Marks explicitly relies instead on *Jacobson*. Marks Opp. 11–13; City Opp. 8–10. But strict scrutiny is the applicable standard, and CEEFPA fails to satisfy it.

Defendant Marks, the City Defendants, and Sheriff Anderson frame CEEFPA as providing two exceptions to the bar on summary proceedings in claiming that Plaintiffs cannot bring a facial

challenge to the law.  Marks Opp. 12; City Opp. 9; Anderson Opp. 2.  But mere submission of a declaration, which is neither verified nor requires supporting documentation, categorically bars landlords from accessing the courts to seek eviction of nonpaying tenants.  The injunctive relief landlords seek via eviction proceedings is thus "completely foreclosed" in violation of their federal and state petition clause rights.  *Cf. Sousa v. Marquez*, 702 F.3d 124, 128 (2d Cir. 2012).[10]

Equally meritless is the notion that a Petition Clause claim is not cognizable unless it permanently forecloses use of the courts for a category of plaintiffs.  Marks Opp. 12–13; City Opp. 9–10.  Defendants fail to address the Supreme Court's instruction in *Christopher v. Harbury*, 536 U.S. 403, 413 (2002), that the opportunity to access the courts need not have "been lost for all time" to violate the right to petition.  Defendants' cited cases are in different contexts (e.g., prisoner access) with different standards.  And Plaintiffs cannot be made whole by future nonpayment proceedings because they seek to regain *possession* of their properties where their tenants have refused to leave the properties upon the expiration of the lease for reasons unrelated to the pandemic.  Dkt. 9 ¶¶ 2, 11; Dkt. 10 ¶¶ 2, 7, 14; Dkt. 11 ¶¶ 1, 4, 12; Dkt. 12 ¶¶ 9–10; Dkt. 13 ¶ 19.[11] Last, CEEFPA's stays are anything but "minimal."  *Contra* Marks Opp. 13.  They last until "at least August 31, 2021," may be extended again, and the rebuttable presumption has no expiration.[12]

---

[10]   The New York Courts' Updated Operating Protocols—which are issued by Defendant Marks' office and provide that the courts will return to "100% staffing" by May 24—in fact state that "[h]ousing cases are stayed by statute," with no reference to any exceptions.  Supp. Shapiro Decl., Ex. 3 at 4.  That across-the-board statement is also evidence of how indiscriminately vague and unverifiable Declaration Forms are being filed in order to stay cases.

[11]   *Elmsford Apartment Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148 (S.D.N.Y. 2020) is inapposite.  There, the court denied certain claims attacking a "temporary" executive order staying "a subset of evictions."  *Id*. at 175.  Here, all evictions are stayed by statute by submission of a Hardship Declaration.  Moreover, Plaintiffs here have lost access not just to their temporary, "preferred remedy" but to the only remedy that would make them whole— immediate equitable relief—which CEEFPA broadly eliminates the opportunity to pursue.  The Court should also decline to follow the state court decision in *Lakeragh*, as noted above.  *See also Chrysafis I*, Dkt. 32, at 1–2.

[12]   This Court has subject-matter jurisdiction over Plaintiffs' federal constitutional claims and pendent jurisdiction over their state law claims.  *See Hagans v. Lavine*, 415 U.S. 528 (1974).  The cases Defendant Marks cites to argue that this Court lacks jurisdiction to address claims under the New York State Constitution are inapplicable, Marks Opp. 6–7, as Plaintiffs do not seek to "enjoin the actions of state officials for purported violations of state

### III. The Balance Of Hardships And Public Interest Favor Injunctive Relief.

Defendant Marks categorically asserts that "[c]ourts examining motions for injunctive relief in the COVID-19 era have agreed that the equities and public interest favor continued enforcement of containment measures." Marks Opp. 19. The City Defendants—the only other Defendants to address the issue—rely on a similarly high-handed assertion about the State's overriding interests in combatting the pandemic. *See* City Opp. 20. But Defendants ignore that the *Roman Catholic Diocese* Court rejected exactly this premise in granting injunctive relief because "even in a pandemic, the Constitution cannot be put away and forgotten." 141 S. Ct. at 68. And as the Second Circuit subsequently explained in preliminarily enjoining State pandemic restrictions, "[n]o public interest is served by maintaining an unconstitutional policy when constitutional alternatives are available to achieve the same goal," *Agudath Israel*, 983 F.3d at 637. Here, as there, Defendants do not demonstrate "that public health would be imperiled if less restrictive measures were imposed," *Roman Catholic Diocese*, 141 S. Ct. at 68—in fact, they ignore that the pandemic is on its way out—in light of which CEEFPA Part A should be enjoined.[13]

### CONCLUSION

Plaintiffs respectfully request that the Court grant their application for a preliminary injunction pending the resolution of their claims on the merits.

---

law," but are instead challenging the constitutionality of CEEFPA itself. New York federal courts routinely review federal and state First Amendment claims together, as Defendant Marks implicitly recognizes in citing *Qing You Li v. City of New York*, 2018 WL 6251339 (E.D.N.Y. Nov. 28, 2018) (Donnelly, J.) (Marks Opp. 7 n.5).

[13] On May 21, Housing Court Answers and Make the Road New York filed a motion seeking permission to file an *amicus curiae* brief in opposition to Plaintiffs' motion for a preliminary injunction. *See* Dkt. 31. Plaintiffs reserve the right to request permission to file a responsive submission if their motion is granted. In any event, proposed *amici*'s arguments are substantially similar to those they advanced in an *amicus* brief in *Chrysafis I*, and fail for the same reasons explained in Property-Owner Plaintiffs' responsive submission in that case. *See Chrysafis I*, Dkt. 18-1, Dkt. 24. *Amici*'s arguments have been weakened further in light of New York's removal of pandemic restrictions, dramatically waning case numbers, and stabilized unemployment rates.

Dated: New York, New York
      May 26, 2021

GIBSON, DUNN & CRUTCHER LLP

By:    */s/ Randy M. Mastro*
       Randy M. Mastro
       Akiva Shapiro
       200 Park Avenue
       New York, NY 10166
       Tel.: (212) 351-4000
       rmastro@gibsondunn.com
       ashapiro@gibsondunn.com

       *Attorneys for Plaintiffs*