UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PANTELIS CHRYSAFIS, BETTY S. COHEN, BRANDIE LACASSE, MUDAN SHI, FEND ZHOU, AND RENT STABILIZATION ASSOSICATION OF NYC, INC.,

Plaintiffs,

v.

LAWRENCE K. MARKS, IN HIS OFFICIAL CAPACITY AS CHIEF ADMINISTRATIVE JUDGE OF THE COURTS OF NEW YORK STATE, ADRIAN H. ANDERSON, IN HIS OFFICIAL CAPACITY AS SHERIFF OF DUTCHESS COUNTY, NEW YORK, JAMES DZURENDA, IN HIS OFFICIAL CAPACITY AS SHERIFF OF NASSAU COUNTY, NEW YORK, JOSEPH FUCITO, IN HIS OFFICIAL CAPACITY AS SHERIFF OF NEW YORK CITY, NEW YORK, MARGARET GARNETT, IN HER OFFICIAL CAPACITY AS COMMISSIONER OF NEW YORK CITY DEPARTMENT OF INVESTIGATION, CAROLINE TANG-ALEJANDRO, IN HER OFFICIAL CAPACITY AS DIRECTOR, BUREAU OF MARSHALS, NEW YORK CITY DEPARTMENT OF INVESTIGATIONS,

Defendants.

Case No. 21-cv-2516

## MEMORANDUM OF LAW IN SUPPORT OF HOUSING COURT ANSWERS AND MAKE THE ROAD NEW YORK'S MOTION TO INTERVENE

THE LEGAL AID SOCIETY
Judith Goldiner, Esq. Attorney in Charge, Civil Law Reform Unit
Edward Josephson, Esq.
199 Water Street
New York, NY 10038
Tel: 212-577-3332
jgoldiner@legal-aid.org

Roland Nimis, Esq.
Nicole Kalum, Esq.
40 Worth Street, Suite 606
New York, NY 10013
Tel: (646) 442-3600
rnimis@lsnyc.org

*Attorneys for Proposed Intervenors Housing Court Answers and Make the Road New York*

i

## <u>TABLE OF CONTENTS</u>

<u>Pages</u>

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND ................................................................................................................... 2

ARGUMENT ........................................................................................................................ 9

I.      HCA and MTRNY Satisfy the Requirements for Permissive Intervention ......................... 9

II.     HCA and MTRNY's Participation Will Assist in the Just and Equitable
        Adjudication of this Case ............................................................................... 13

III.    Plaintiffs' Due Process Claims Have No Merit .......................................................... 14

CONCLUSION .................................................................................................................... 20

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*335-7 LLC v. City of New York*, 2020 WL 3100085 (June 11, 2020), ..........................................14

*Ass'n of Conn. Lobbyists LLC v. Garfield*, 241 F.R.D. 100 (D. Conn. 2007)..............................12

*Ben Ami v. Ronen*, L&T Index No. 59050-20 (Kings Co. Civ. Ct.) (petitioner's affidavit) .........16

*Bitzarkis v. Evans*,  2021 NY Slip Op 21280 (Kings Co Civ Ct)................................................17

*Bldg. & Realty Inst. Of Westchester and Putnam Ctys., Inc. v. State of New* York, No. 19-
  CV-11285, 2020 WL 5658703  (S.D.N.Y. Sept. 23, 2020) ......................................10, 11

*Bucklew v. Precythe*, 139 S. Ct. 1112 (2019). .................................................................14

*Chrysafis v. Marks*, --- F.4th ----, 2021 WL 4453457 (2d Cir. 2021) .......................................7, 13

*Chrysafis v. Marks*, 141 S. Ct. 2482 (2021) ...................................................................6

*Chrysafis v. Marks*, 2021 WL 2405802  (E.D.N.Y. June 11, 2021) .............................................5

*Commack Self-Serv. Kosher Meats, Inc. v. Rubin*, 170 F.R.D. 93 (E.D.N.Y. 1996) ...................11

*Degrafinreid v. Ricks*, 417 F. Supp. 2d 403 (S.D.N.Y. 2006)......................................................10

*Delaware Tr. Co. v. Wilmington Tr., N.A.*, 534 B.R. 500 (S.D.N.Y. 2015)................................10

*Dickerson v. Napolitano*, 604 F.3d 732 ((2d Cir. 2010).................................................14

*Dudits v. Rosa*, L&T 51924-19 (Rich. Co. Civ. Ct.)......................................................18

*Fleet Cap. Corp. v. Merco Joint Venture, LLC,* No. 02-CV-0279, 2002 WL 31528633
  (E.D.N.Y. Sept. 2, 2002) ....................................................................12

*Fordham Fulton Realty Corp, v. Polanco*, L&T 41131-18 (Bronx Co. Civ. Ct)
  (petitioner's affidavit).......................................................................16

*Friends of E. Hampton Airport, Inc. v. Fed. Aviation Admin.*, No. 15-CV-441, 2016 WL
  792411 (E.D.N.Y. Feb. 29, 2016) ................................................................10

*Fusari v. Steinberg*, 419 U.S. 379 (1975)....................................................................7

*Harbor Tech LLC v. Correa*, 2021 NY Slip Op 50995 (Kings Co Civ Ct) ................................17

*Miller v. Silberman*, 832 F. Supp. 663 (S.D.N.Y. 1993)....................................................11, 13, 14

iii

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo,* 804 F.3d 242 (2d Cir. 2015) ..............................15

*Rosado v. Pruitt*, No. 17-CV-4843, 2018 WL 262835  (E.D.N.Y. Jan. 2, 2018).........................10

*Sabri v. United States*, 541 U.S. 600 (2004) ..............................................................................14

*Sanchez-Tiben v. Washington,* 2021 NY Slip Op 21276 (Bronx Co. Civ. Ct).............................15

*Schaghticoke Tribal Nation v. Norton*, No. 06-CV-81, 2006 WL 1752384 (D. Conn. June 14, 2006).........................................................................................................................10

*Smith & Smith v. Johnson*, L&T Index number 03920-20 (Rochester City Ct)............................18

*Tran v. Lennon*, L&T 053422-2019 (Bronx Co. Civ. Ct) (petitioner's affidavit).........................15

*U.S. v. Salerno*, 481 U.S. at 745 ................................................................................................15

*United States v. N.Y.C. Hous. Auth.*, 326 F.R.D. 411 (S.D.N.Y. 2018) ..................................10, 14

*United States v. Pitney Bowes, Inc.,* 25 F.3d 66, 73 (2d Cir.1994) ..............................................12

*USPS v. Brennan*, 579 F.2d 188 (2d Cir. 1978). .........................................................................10

*Wallerson v. Albright*, L&T 301432-20 (Queens Co. Civ. Ct) (petitioner's affidavit)................15

## <u>Statutes</u>

2020 N.Y. Laws Ch 381, Part A ....................................................................................................4

2020 N.Y. Laws Ch. 127, § 2(1). ..................................................................................................4

Federal Rules of Civil Procedure Rule 24 .....................................................................................9

Subpart A of Part C of 2021 N.Y. Laws Ch. 417 .......................................................................6, 9

## <u>Other Authorities</u>

*Coronavirus in the U.S.: Latest Map and Case Count*, The N.Y. Times, https://www.nytimes.com/interactive/2021/us/new-york-covid-cases.html (last visited Oct. 14, 2021). ......................................................................................................3

Kay Jowers et al., *Housing Precarity & the COVID-19 Pandemic: Impacts of Utility Disconnection and Eviction Moratoria on Infections and Deaths Across US Counties*, Nat'l Bureau Econ. Rsch. 11 (Jan. 2021), https://www.nber.org/system/files/working_papers/w28394/w28394.pdf. ......................3

N.Y. Exec. Order No. 202.28 .........................................................................................................4

]

iv

## PRELIMINARY STATEMENT

Plaintiffs seek an injunction against New York's revised eviction moratorium, alleging that the new procedures that allow landlords to challenge tenant hardship declarations create an "insurmountable hurdle" by requiring landlords to allege a good faith basis for their motion. See, Plaintiffs' Memorandum of Law, Dkt. No. 86, at 3-4. Plaintiffs allege – in their facial challenge to the statute -- that landlords can *never* uncover any facts concerning their tenants' financial situations, and will *in all cases* be too afraid of receiving a jail sentence for perjury to hazard a challenge on less than incontrovertible facts. *Id.*

Housing Court Answers and Make the Road NY, two tenant advocacy organizations who filed an amicus brief earlier in this action, as well as three individual tenants, now seek to intervene as parties in this action, so that they can present testimony in the upcoming evidentiary hearing that landlords are, in fact, not hesitating to file challenges to tenant declarations and that their challenges are being considered by the New York City Housing Court without any threat of prosecution or other penalties. In short, the procedures established in the revised moratorium statute do not violate Due Process – they constitute Due Process.

The many motions recently filed by landlords, attached as Exhibits to Proposed Intervenors' motion, establish that some landlords have uncovered considerable information concerning their tenants' financial and personal circumstances, while others have felt confident in filing challenges based only on cursory allegations. In these early days of the new statute, some judges have scheduled evidentiary hearings on landlords' motions, while other motions remain pending. In some cases, proceedings have been stayed on the alternate ground that the tenant had filed an application for payment of arrears under the State's ERAP statute, which has not been challenged by Plaintiffs.

Housing Court Answers ("HCA") and Make the Road New York ("MTRNY") are prominent non-profit organizations that serve low-income tenants throughout the state of New York. Their members and clients, who reside in New York City as well as Suffolk and Westchester Counties, are representative of New York's diverse tenant communities. Their members, many of whom have lost income or are medically vulnerable, are precisely the tenants the New York State Legislature sought to protect from eviction during an ongoing pandemic. If Plaintiffs prevail in this action, these tenants are at great risk of forced relocation and homelessness during a time when the importance of access to safe and secure housing has never been more salient.

As set forth below, the Proposed Intervenors are uniquely placed to assist the court in understanding the way in which the new statutory procedures are unfolding in real life. The Proposed Intervenors can also assist the court in weighing the factors comprising the *Mathews* balancing test, which in this case include not just the potential harm to landlords, but the State's interest in controlling an ongoing health emergency and protecting both tenants and the public at large.

## **BACKGROUND**

### A. The Ongoing COVID-19 Pandemic

The COVID-19 pandemic is an ongoing public health emergency that has inflicted widespread harm on New York and has greatly disrupted all aspects of civic life. As of October 14, 2021, over 2.5 million New Yorkers had tested positive for COVID-10 and over 55,000 have

died from the disease.[1] The number of cases in New York has continued to rise despite six months of general vaccine eligibility to all adults living or working in New York.

Since March 2020, when the pandemic's impact on New York began in earnest, New York has implemented various tenant protections to mitigate the devastating, often deadly consequences of the COVID-19 surge, particularly in economically vulnerable renter communities. Residential eviction moratoriums are credited with saving lives across the United States,[2] in addition to providing critical time necessary for renters to apply for, and their landlords to receive, financial assistance with rental arrears through newly created rental assistance programs. In December 2020, New York enacted its own comprehensive moratorium, staying the progress of eviction proceedings filed against renters for whom financial hardship or a pre-existing medication condition render them unable to pay rent or safely relocate during the pandemic.

### B.  New York Residential Evictions During the COVID-19 Pandemic

On March 20, 2020, then-New York Governor Andrew Cuomo issued Executive Order 202.8 which, among other things, stayed execution of all warrants of eviction in New York State for 30 days. N.Y. Exec. Order No. 202.8. This stay was subsequently extended twice, ultimately running until June 13, 2020. N.Y. Exec. 202.31. Executive Order No. 202.28, issued on May 7,

---

[1] *Coronavirus in the U.S.: Latest Map and Case Count*, The N.Y. Times, https://www.nytimes.com/interactive/2021/us/new-york-covid-cases.html (last visited Oct. 14, 2021).

[2] Kay Jowers et al., *Housing Precarity & the COVID-19 Pandemic: Impacts of Utility Disconnection and Eviction Moratoria on Infections and Deaths Across US Counties*, Nat'l Bureau Econ. Rsch. 11 (Jan. 2021), https://www.nber.org/system/files/working_papers/w28394/w28394.pdf.

2020, barred the commencement, filing, or service of any legal action for nonpayment of rent against someone that is eligible for unemployment insurance or otherwise facing financial hardship during the COVID-19 pandemic. N.Y. Exec. Order No. 202.28.

In June 2020, the New York State Legislature enacted the Tenant Safe Harbor Act ("TSHA"), prohibiting the eviction of "residential tenants who have suffered financial hardship during the COVID-19 covered period." 2020 N.Y. Laws Ch. 127, § 2(1). TSHA allows a tenant to complete a Hardship Declaration, attesting, under penalty of perjury, that the tenant has suffered a financial hardship as a result of the COVID-19 pandemic. A landlord may only obtain a money judgment against a tenant protected by TSHA; under the statute, courts are barred from issuing judgments of possession against qualifying tenants during the covered period.

In December 2020, the New York State Legislature responded to the surging pandemic by enacting the COVID-19 Emergency Eviction and Foreclosure Prevention Act ("CEEFPA"), which stayed most eviction proceedings through May 1, 2021, upon the submission of a Hardship Declaration. 2020 N.Y. Laws Ch 381, Part A ("Part A") §§ 4, 6. A hardship declaration would also stay any previously issued warrants of eviction. *Id.* at § 8. On April 23, 2021, during the first weeks of general eligibility for the vaccine for all adults in New York, the Legislature extended CEEFPA's eviction moratorium for four more months, to August 31, 2021.

On May 6, 2021, Plaintiffs filed this action, alleging that Part A is unconstitutional and seeking a preliminary injunction. On June 1, this Court held an evidentiary hearing on the Plaintiffs' application for a preliminary injunction, which was consolidated with the underlying merits of the case, in which two plaintiffs and an administrative officer of the Housing Court testified. On June 11, the Court denied Plaintiffs' preliminary injunction and ordered entry of final

judgment in favor of Defendants. *Chrysafis v. Marks*, 2021 WL 2405802, at *15 (E.D.N.Y. June 11, 2021).

First, in denying Plaintiffs' due process claims, the Court found that Part A, as a legislative act rather than an adjudicative act, "governs the timing, format and litigation of eviction proceed[ing]s generally…and is not subject to the notice and hearing requirements of the due process clause." *Id*. at *8 (citation omitted). Further, the Court found that Part A is reasonably related to the public health goal of preventing the spread of COVID-19 because "it is the act of eviction, not the timing of the non-payment, that increases the risk of COVID spread." *Id*. at *9. Finally, given the State's broad discretion to achieve the constitutional purpose for which Part A was enacted, the Court found that the procedural treatment of a tenant's hardship declaration does not implicate procedural due process concerns.

Next, the Court assessed each of Plaintiffs' remaining constitutional challenges, finding that all lack merit. Plaintiffs argued that the language of the hardship declaration form, as established by Part A, is impermissibly vague, but "provide[d] little argument and no evidence demonstrating that the hardship declaration is impermissibly vague." *Id*. at *11. The Court adopted the reasoning of a New York state court reviewing the same issue, finding that the plain language of Part A can be understood by "persons of ordinary intelligence" and "is not written in a manner that permits or encourages arbitrary application." *Id*. The Court also rejected Plaintiffs' argument that Part A inhibits their First Amendment right to petition the courts, as Plaintiffs have access to other state court actions to pursue any arrearages stemming from a tenant's non-payment of rent; will be able to file eviction proceedings based on non-payment of rent at Part A's expiration; and retain the ability to file eviction proceedings based on nuisance allegations, an exception contained within Part A, during the moratorium's effective period. *Id*. at *12. Finally, Plaintiffs argued that

Part A's notice requirements, which require a landlord to provide a blank hardship declaration form and information about legal services providers to tenants, constitute compelled speech in violation of the First Amendment. The Court finds that the notice requirement "clearly falls under the umbrella of commercial speech as expression related solely to the economic interests of the speaker and its audience." *Id*. at *13 (citation omitted). Laws that require factual speech by commercial entities are subject to an assessment of rationality and the Court stated that "[t]here is no doubt that the notice requirement [in Part A] is rational; similar factual notices have been upheld for a range of purposes far less pressing than the mitigation of an ongoing pandemic." *Id*.

Following the entry of judgment on June 14, 2021, Plaintiffs sought an injunction pending their appeal, which was denied by this Court and the Second Circuit on June 16, 2021, and June 26, 2021, respectively.

Plaintiffs appealed and filed an emergency application for injunctive relief from the Supreme Court. On August 12, 2021, the Supreme Court granted Plaintiffs' application for an injunction, enjoining the enforcement of Part A pending disposition of Plaintiffs' appeal. *Chrysafis v. Marks*, 141 S. Ct. 2482, 2482 (2021). In enjoining the enforcement of Part A, the Supreme Court held that a landlord's due process rights are violated where the landlord is "precluded from contesting" the hardship declaration and is denied a hearing. *Id*.

On August 31, 2021, Part A expired by its terms. 2020 N.Y. Laws Ch. 381, Part A § 13. On September 1, 2021, the New York State Legislature enacted a new eviction moratorium, which is Subpart A of Part C of 2021 N.Y. Laws Ch. 417 ("Subpart C(A)"). Subpart C(A) provides landlords with an express mechanism to challenge a tenant's hardship declaration: if a landlord has "a good faith belief" that a tenant has not experienced a hardship, the landlord may make a motion, on notice to the tenant, attesting to this belief and the court "shall grant a hearing" to

6

determine whether the hardship declaration is valid. Subpart C(A), § 10(a). If, following a hearing, the court finds the hardship claim valid, the court will grant or issue a stay; if, following a hearing, the court finds the hardship claim invalid, the proceeding will continue to a determination on the merits. *Id*. at § 10(b)-(c).

On September 9, 2021, Plaintiffs moved to enjoin enforcement of Subpart C(A) pending their appeal, which was heard by the Second Circuit on September 21, 2021. On September 29, 2021, the Second Circuit denied the injunction, vacated this Court's June 11, 2021, decision and judgment, and remanded the action to this Court "with leave for Plaintiffs to amend their pleadings and assert claims challenging the new statute." *Chrysafis v. Marks*, --- F.4th ----, 2021 WL 4453457, at *2 (2d Cir. 2021). The Second Circuit found that Subpart C(A) is not a mere superficial or insignificant change to Part A, but is rather "a new law, which legislators, aware of the defect identified by the Supreme Court, explicitly sought to remedy." *Id*. at *4 (internal citations omitted). The court noted that in *Fusari v. Steinberg*, 419 U.S. 379 (1975), a case involving a challenge to Connecticut's procedure for awarding unemployment compensation benefits that was pending at the time that the state legislature amended the procedure to improve it, the Supreme Court found that the questions raised by the plaintiffs were "significantly affected" by the changes to the new law, and further, "the mere possibility that the new law would remedy the defects in the old law was enough for the Court to remand the case 'for reconsideration in light of the intervening changes in the Connecticut law.'" *Chrysafis*, 2021 WL 4453457, at *4, quoting *Fusari*, 419 U.S. at 390.

The Second Circuit, concluding that Plaintiffs' due process claim is moot,  stated that "we cannot be certain how the new procedures in Subpart C(A) will be implemented in practice in the state courts or what administrative steps the Chief Administrative Judge of those courts might think are necessary, if any, to mitigate the alleged due process deficiencies in those procedures."

7

*Chrysafis*, 2021 WL 4453457, at *5. Further, "[a] hearing in a District Court proceeding will provide an opportunity to clarify how the new statute will be implemented, thereby creating the basis for an informed appellate ruling as to a due process claim in the event of a subsequent appeal." *Id*.

On October 15, 2021, Plaintiffs filed an amended complaint in this action and moved, by Order to Show Cause, for a preliminary injunction. The motion was noticed to be heard on October 29, 2021, and following consultation between the parties, the motion and an evidentiary hearing were scheduled to take place on November 8, 2021. In their preliminary injunction motion, Plaintiffs assert that Subpart C(A) does not remedy the defects the Supreme Court identified in Part A and is "functionally a continuation of that prior law." Dkt. No. 86, at 14. Arguing that the provision of a hearing to a landlord who challenges the veracity of a tenant's hardship declaration constitutes a minor change to the law at issue, Plaintiffs contend that a "good faith belief" is too onerous a standard, and that making such a statement presents a risk of a perjury indictment so great as to render Subpart C(A)'s hearing requirement impossible to reach. Plaintiffs further argue that, if a landlord is able to overcome the obstacle of a good faith showing, Subpart C(A) unfairly allows the stay to remain in place until the hardship claim is found to be invalid and places the burden on the landlord to dispute the hardship claim, "impos[ing] on landlords the burden of somehow *proving* the negative at a hearing." Dkt. 86, at 17 (emphasis in original).

As explained more fully below, despite the parade of horribles conjured by Plaintiffs, since September 1, 2021, numerous landlords across New York City and State have filed motions seeking to challenge tenants' hardship declarations, such motions have been duly calendared by the court and some of them have been already adjudicated and granted. In granting landlords' motions for hearings, at least some State judges have interpreted the new statute in exactly the

opposite manner from what Plaintiffs fear, allowing landlords to interpose challenges based on common-sense good faith "beliefs", rather than assertions of knowledge subject to perjury indictments.  To the knowledge of the Proposed Intervenors, not a single landlord has been threatened with sanctions, much less prosecution.

Proposed Intervenors Housing Court Answers and Make the Road NY now proceed by this motion for permissive intervention.

### C.  HCA and MTRNY Promote Housing Justice

Proposed Intervenors are prominent non-profit organizations that promote housing justice and serve low-income tenants throughout the state of New York who would be at imminent risk of eviction if Subpart A of Part C of the New York State Legislature's new eviction moratorium (Subpart C(A)) of 2021 N.Y. Laws Ch. 417) were found to be unconstitutional. HCA provides legal information to *pro se* litigants in New York City Housing Courts through tabling and a telephone hotline. MTR works to increase the power of Latino and working-class communities including by providing legal services for tenants to prevent eviction, advocating for housing justice, and training tenants on their housing rights. Proposed Intervenors' clients or members are in the class of persons who would be most affected by the outcome of this action: low-income New York tenants and families who are facing financial hardship due to the COVID-19 pandemic and/or who would have a heightened risk of severe illness or death from COVID-19.

### ARGUMENT

### I.  HCA and MTRNY Satisfy the Requirements for Permissive Intervention

HCA and MTRNY meet the standard for permissive intervention under Rule 24(b) of the Federal Rules of Civil Procedure. Rule 24(b) states, in relevant part, that "[o]n timely motion, the

court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(b). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). "Permissive intervention is wholly discretionary with the trial court." *USPS v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978).  "This rule is 'to be liberally construed' in favor of intervention." *Delaware Tr. Co. v. Wilmington Tr., N.A.*, 534 B.R. 500, 509 (S.D.N.Y. 2015) (quoting *Degrafinreid v. Ricks*, 417 F. Supp.2d 403, 407 (S.D.N.Y. 2006)).

A motion to intervene is timely when a case is at an "early stage."  HCA and MTRNY move to intervene only weeks after the action's remand to this Court, "prior to any significant substantive motions by the parties in this case." *Schaghticoke Tribal Nation v. Norton*, No. 06-CV-81, 2006 WL 1752384, *8 (D. Conn. June 14, 2006). As Plaintiffs filed amended pleadings less than two weeks prior to the submission of this motion, "[t]his action is in its infancy." *Friends of E. Hampton Airport, Inc. v. Fed. Aviation Admin.*, No. 15-CV-441, 2016 WL 792411, at *9 (E.D.N.Y. Feb. 29, 2016); *see also Rosado v. Pruitt*, No. 17-CV-4843, 2018 WL 262835, at *3 (E.D.N.Y. Jan. 2, 2018) (granting permissive intervention where motions were filed "only a couple of months" after an amended pleading was filed).

HCA and MTRNY's defense will also share common questions with the main action, as required by 24(b)(1)(B). "It is well-established by district courts in the Second Circuit that '[t]he words 'claim or defense' are not read in a technical sense, but only require some interest on the part of the applicant.'" *Bldg. & Realty Inst. Of Westchester and Putnam Ctys., Inc. v. State of New York*, No. 19-CV-11285, 2020 WL 5658703, at *9 (S.D.N.Y. Sept. 23, 2020), quoting *United States v. N.Y.C. Hous. Auth.*, 326 F.R.D. 411, 418 (S.D.N.Y. 2018). HCA and MTRNY's

anticipated defense is guided by the legal question at issue in this case: whether the CEEFPA as amended by Subpart C(A) 2021 is constitutional. *See Bldg. & Realty Inst. Of Westchester & Putnam Ctys., Inc.,*, 2020 WL 5658703, at *9 (finding intervening tenant groups' "defense will share with the main Action a fundamental question of law" —the constitutionality of amendments to New York's Rent Stabilization Law—and granting permissive intervention); *see also Miller v. Silberman*, 832 F. Supp. 663, 673-74 (S.D.N.Y. 1993) (granting permissive intervention to tenants whose "defense raises the same legal questions as the defense of the named Defendants—all claims concern the constitutionality of the Housing Court's policies and procedures); *see also Commack Self-Serv. Kosher Meats, Inc. v. Rubin*, 170 F.R.D. 93, 106 (E.D.N.Y. 1996) (finding common "questions of law and fact" where intervening "rabbis, kosher customers, and rabbinical and lay organizations" sought to defend the constitutionality of New York's Kosher Laws). While HCA and MTRNY intend to offer additional arguments, evidence and claims to those asserted by the government Defendants, their arguments and claims find common basis with those raised by the government Defendants. HCA and MTRNY seek to address the validity of Plaintiffs' constitutional claims, Plaintiffs' purported reason for commencing this action.

Intervention is important even where the law at issue will be defended by the government. Inadequate representation by a party is "clearly a minor factor at most" in considering permissive intervention. *United States v. N.Y.C. Hous. Authority*, 326 F.R.D. at 418. For example, in *Bldg. & Realty Inst. Of Westchester and Putnam Ctys*., in granting permissive intervention, the court recognized the contribution of the tenant groups to the creation of the law at issue, as well as the reality that the state "do[es] not always act in lockstep with tenants." 2020 WL 5658703, at *13. The court further found that tenant groups offered a "unique, personal, and highly relevant"

perspective, "and that they will bring specialized expertise and substantial familiarity to the [a]ction," and granted intervention. *Id*. at 13 (internal citations omitted).

Similarly, HCA, MTRNY and their members would be directly affected by Plaintiffs' intended outcome. As leading tenant groups serving low-income renters throughout New York State, HCA and MTRNY fought for the protections provided by Subpart C(A). Their perspective of the law and its impact, as well as their "specialized expertise and substantial familiarity with the legal issues that are presented for review" are essential to just adjudication of this matter. *Garfield*, 241 F.R.D. at 103. This Court should permit their intervention.

Permitting HCA and MTRNY to intervene will cause no delay or otherwise prejudice any party's rights. The "principal guide" in determining whether to grant permissive intervention is whether doing so "will unduly delay or prejudice the adjudication of the rights of the original parties." *Fleet Cap. Corp. v. Merco Joint Venture, LLC,* No. 02-CV-0279, 2002 WL 31528633 (E.D.N.Y. Sept. 2, 2002), quoting *United States v. Pitney Bowes, Inc.,* 25 F.3d 66, 73 (2d Cir.1994). HCA and MTRNY are prepared to submit responsive papers on the same schedule as Defendants, requiring no additional time causing delay to the original parties. Their "additional briefings and argument will only help facilitate a speedy, fair and accurate resolution of the case. Additional discovery is also not likely to become burdensome or otherwise unduly delay adjudication because this case, at base level, is a facial constitutional challenge to a newly-enacted statute." *Ass'n of Conn. Lobbyists LLC v. Garfield*, 241 F.R.D. 100, 103 (D. Conn. 2007).

In contrast, denying their motion would prejudice the class of persons most affected by the outcome of this action: low-income New York tenants at risk of eviction during a deadly pandemic. It was tenant-rights organizations like HCA and MTRNY that lobbied the government to pass the very protections being challenged here. *See Commack*, 170 F.R.D. at 102 ("Organizations may

have sufficient interest to support intervention as a matter of right in actions involving legislation or regulations previously supported by the organization.")

Although HCA and MTRNY share Defendants' goal of preserving Subpart C(A), it is tenants who will imminently face eviction and homelessness if Plaintiffs' challenge is successful. HCA and MTRNY affected members bear the greatest consequence of this action. "Considerations of fairness strongly weigh in favor of permissive intervention" to allow HCA and MTRNY's affected members the opportunity to be heard. *Miller*, 832 F. Supp at 674.


II.   **HCA and MTRNY's Participation Will Assist in the Just and Equitable Adjudication of this Case**

HCA and MTRNY offer an invaluable perspective in this action. As membership organizations comprised of thousands of vulnerable tenants, HCA and MTRNY have access to facts and evidence about the impact of moratorium that Defendants may not, bringing into the courtroom the voices of those who have the most at stake in this matter.

In its decision remanding the case to this Court, the Second Circuit identified the need for an evidentiary hearing to clarify the factual matters at issue. *Chrysafis*, 2021 WL 4453457, at *5. HCA and MTRNY filed an amicus brief in this action and now seek a grant of intervention to ensure that the Court has access to a full and nuanced understanding of the factual matters at issue in this action. HCA and MTRNY are uniquely positioned to provide the Court with examples of the ways in which Subpart C(A) is impacting housing court cases. The Court must have the opportunity to hear testimony representative of the people impacted by Subpart C(A) and the outcome of this case, including tenants and their representatives.

"Courts have often specifically recognized the benefits of intervention by tenant groups whose viewpoint and knowledge of the underlying circumstances would assist the court during the

course of litigation." *335-7 LLC v. City of New York*, 2020 WL 3100085, at *3 (June 11, 2020), citing *Miller*, 832 F. Supp. at 674; *see also United States v. N.Y.C. Hous. Auth.*, 326 F.R.D. at 419 (finding that permissive limited intervention of public housing tenant groups will provide "a fuller picture to evaluate the fairness, reasonableness, and equities" of the consent decree at issue, and "contribute to a just and equitable adjudication of the motion for approval.")

Here, HCA and MTRNY are well placed to inform the court how the amended moratorium statute is actually playing out in the courts of New York City and State – a reality far different than that conjured by Plaintiffs' Amended Complaint and preliminary injunction papers. Proposed intervenors can present evidence that the amended moratorium statute in practice provides due process to both landlords and tenants, appropriately balancing the rights of each together with the Legislature's overarching purpose of controlling the ongoing COVID-19 pandemic. Accordingly, their motion to intervene should be granted.

## III.    Plaintiffs' Due Process Claims Have No Merit.

Plaintiffs seek to assert a facial challenge to the amended moratorium statute and seek an injunction enjoining courts throughout New York State from applying the statute's provisions in any case. "A facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1127 (2019). "Facial challenges are generally disfavored" because they often rest on speculation and risk short-circuiting the democratic process "by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Dickerson v. Napolitano*, 604 F.3d 732, 741 (2d Cir. 2010). Facial challenges also raise the risk of "premature interpretation of statutes on the basis of factually barebones records." *Sabri v. United States*, 541 U.S. 600, 609 (2004). Thus, to succeed, courts insist that "the challenger must establish that no set of circumstances exists under which the

[challenged law] would be valid." *N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo,* 804 F.3d 242, 265 (2d Cir. 2015) (quoting *U.S. v. Salerno*, 481 U.S. at 745).

Plaintiffs' facial claims fail on the most basic possible level. Far from establishing that the statutory procedures can *never* afford landlords a due process hearing on the merits of their tenants' hardship declarations, the court records and declarations submitted by the Proposed Intervenors clearly show that numerous landlords have not been too intimidated by the fear of perjury indictments to file motions under the new statute, and in many cases have been able to uncover considerable factual information to support their claims for relief. As shown by the numerous motions and court rulings attached to Proposed Intervenors' declarations, landlords have not hesitated to file motions under the new statute, and regardless of the level of factual support set forth by the landlords, the courts have calendared the landlord's motions, and in some cases scheduled hearings on the merits of the tenants' hardship claims.

In *Wallerson v. Albright*, L&T 301432-20 (Queens Co. Civ. Ct) (petitioner's affidavit) annexed as Exhibit 6,[3] for example, the court scheduled a hearing based on the simple statement that the landlord had " a good faith belief that Respondent is not suffering a hardship contrary to their claim." *See also, Sanchez-Tiben v. Washington,* 2021 NY Slip Op 21276 (Bronx Co. Civ. Ct), annexed as Exhibit 3 (landlord has video of tenant leaving for work each day); *Tran v. Lennon*, L&T 053422-2019 (Bronx Co. Civ. Ct) (petitioner's affidavit), annexed as Exhibit 7[4] (landlord

---

[3] Available at https://iapps.courts.state.ny.us/nyscef/Document-List?docetId=pI4syzXszGn3HDQRkJaRHA==&display=all&court-Type=Queens%20County%20Civil%20Court%20-%20Landlord%20And%20Tenant%20Division&resultsPageNum=1.

[4] Available at https://iapps.courts.state.ny.us/nyscef/DocumentList?docketId=BclbdjXpQk51SowwvlqKGw==&display=all&courtType=Bronx%20County%20Civil%20Court%20-%20Landlord%20And%20Tenant%20Division&resultsPageNum=1.

speculates that tenant's income must have increased because her City rental subsidy decreased); *Fordham Fulton Realty Corp, v. Polanco*, L&T 41131-18 (Bronx Co. Civ. Ct) (petitioner's affidavit), annexed as Exhibit 8[5] (landlord claims tenants have not experienced a financial hardship because tenant have not applied for the Emergency Rental Assistance Program and have not produced any documentation to support the claims listed on the hardship declaration); *Ben Ami v. Ronen*, L&T Index No. 59050-20 (Kings Co. Civ. Ct.) (petitioner's affidavit), annexed as Exhibit 9[6] (tenant purchased an air conditioner, and did not mention hardship during case pertaining to repairs).

In no case are the Proposed Intervenors aware of a landlord having been threatened with a perjury indictment as feared by Plaintiffs, or even faced with monetary sanctions under 22 N.Y.C.R.R. Rule 130, the State equivalent of FRCP Rule 11.  Plaintiffs therefore have absolutely no chance of proving their claim that the amended CEEFPA procedures deny Due Process to landlords in *every case*.

Notably, several cases have addressed the identical concerns raised in Plaintiffs' preliminary injunction motions, and have interpreted the statute in a way intended to preserve its constitutionality, and to effectuate the Legislature's intention of accommodating the concerns expressed by the U.S. Supreme Court in a prior phase of this litigation.  In the case of *Bitzarkis v.*

---

[5]  Available at
https://iapps.courts.state.ny.us/nyscef/DocumentList?docketId=EQxUa6bfUiz588/AfSsE_PLUS
_A==&display=all&courtType=Bronx%20County%20Civil%20Court%20-
%20Landlord%20And%20Tenant%20Division&resultsPageNum=1.

[6] Available at
https://iapps.courts.state.ny.us/nyscef/DocumentList?docketId=gPljeePwNjzKwRSgqokAkw==
&display=all&courtType=Kings%20County%20Civil%20Court%20-
%20Landlord%20And%20Tenant%20Division&resultsPageNum=1.

*Evans*,  2021 NY Slip Op 21280 (Kings Co Civ. Ct), annexed as Exhibit 1,[7] for example, the landlord contested her tenant's hardship declaration by claiming that the tenant had the same public assistance income before and during the pandemic, and that her health would not be endangered by eviction because the tenant was capable of entertaining guests and smoking marijuana.  The court held that such allegations constituted sufficient "good faith belief" to mandate a hearing under the statute, reasoning that the Legislature did not intend to impose such a high evidentiary burden on landlords so as to provide them with a "meaningless remedy."  Addressing an additional concern raised by Plaintiffs herein, the *Bitzarkis* court held that a landlord does not need to controvert every possible hardship their tenant might assert, as that would require "a spectrum of knowledge about a tenant so broad as to be burdensome to the landlord."  Accordingly, the court scheduled an evidentiary hearing at which, *inter alia*, the tenant would be required to establish that her health conditions "would pose a significant risk of severe illness or death" if she were compelled to move.

Similarly, in *Harbor Tech LLC v. Correa*, 2021 NY Slip Op 50995 (Kings Co Civ. Ct), annexed as Exhibit 2, the court held that it had discretion to preserve the "meaningfulness" of the statutory hearing by requiring tenants to go forward with evidence of financial hardship that is peculiarly within their own knowledge, and to permit appropriate trial subpoenas.[8]  Subpoenas have also been permitted in *Dudits v. Rosa*, L&T 51924-19 (Rich. Co. Civ. Ct.) (judicial

---

[7] Also available at https://nycourts.gov/reporter/3dseries/2021/2021_21280.htm.

[8]  Available at https://www.nycourts.gov/reporter/3dseries/2021/2021_50995.htm.

subpoena), annexed as Exhibit 5,[9] and *Smith & Smith v. Johnson*, L&T Index No. 03920-20 (Rochester City Ct), annexed as Exhibit 4.

Considering that Plaintiffs' Amended Complaint was filed only six weeks after the amendment of the State statute, and that there has been little time for motions to be briefed or scheduled, there has already been a remarkable amount of evidence to establish the utter hollowness of Plaintiffs' claims.  New York's courts have already established that the amended statute affords landlords an avenue for challenging their tenants' hardship claims.  The Due Process clause does not mandate that landlords succeed in their endeavors in every instance.

To the extent that Plaintiffs allege that the amended CEEFPA is unconstitutional only as applied to themselves,[10] Plaintiffs have still failed to show that the statute has deprived them of their constitutional rights.  Plaintiff Brandie LaCasse has not even attempted to make use of the State procedures to challenge the hardship declaration filed by her clients.[11]  See, Declaration of Brandi LaCasse, Dkt No. 87, at 10-11. Although she asserts that there is "no feasible way" that she can submit the required affidavit of good faith, she also claims to know that "the tenants do not appear to be suffering financially," that the "male tenant has continued his pre-pandemic employment as an emergency medical technician," that the "female tenant, who did not work prior to the pandemic, has continued to stay at home," and that "one of the tenants recently received a

---

[9]  Available at
https://iapps.courts.state.ny.us/nyscef/DocumentList?docketId=NNhFBrOAawiDYxbIp69p8A==
&display=all&courtType=Richmond%20County%20Civil%20Court%20-
%20Landlord%20And%20Tenant%20Division&resultsPageNum=1.

[10]  To the extent that Plaintiffs set forth as-applied claims, they are of course not entitled to the State-wide injunction they seek.

[11]  Ms. LaCasse could file such a motion in her pending Supreme Court action, or could file a new summary proceeding, since the amended statute no longer bars landlords from commencing proceedings against tenants who have filed hardship declarations.

large amount of money in connection with a medical malpractice dispute."  Ms. LaCasse submits

no state court ruling that such information could not, as a matter of law, constitute a "good faith"

basis for a motion under the amended CEEFPA, nor does she provide any support for her

assumption that her failure to negate each and every possible grounds for tenant hardship would

cause her motion to be denied, much less subject her to a perjury prosecution.  Indeed, the decisions

submitted by the Proposed Intevenors show exactly the contrary.  In the absence of any showing

that she tried and failed to pursue her claims in state court, Ms. LaCasse's as-applied claims are

not ripe for adjudication.  *Gherardi v. New York*, 161 F. App'x 60, 62 (2d Cir. 2005)

Similarly, although Betty Cohen asserts that she "will have no reasonable opportunity" to

contest her tenant's hardship declaration" because she doesn't know which categories in the

declaration apply to him, at least some courts have ruled that landlords must only contest one

potential basis for hardship. Ms. Cohen has not even attempted to obtain a ruling in State court,

and has also apparently made no attempt to simply give a telephone call to the tenant *whom she

has known for 26 years* and ask him about his situation.  See, Declaration of Betty S. Cohen, Dkt

No. 88, at 10.[12]

Although Mudan Shi attests that she has no knowledge of her tenants' circumstances and

that they refuse to communicate with her, she does not allege that she has sought discovery in the

eviction proceeding that she allegedly filed in 2019, as already permitted in several cases.  See,

Declaration of Mudan Shi, Dkt No. 88, at 10.[13]  Similarly, Mr. Chrysafis, although he claims to

---

[12] Ms. Cohen also admits that although her tenant accrued arrears totally $30,000, she has received *$32,935* from the Small Business Administration and the NYS ERAP program.  Declaration of Betty S. Cohen, Dkt No. 88, at 12-13.

[13] Ms. Shi has submitted no documentation that she ever filed an eviction proceeding, or that her tenant filed a hardship declaration under the pre-amendment statute.  The state court e-filing website shows no proceedings commenced by a Mudan Shi or a Feng Zhou.

19

know that at least one of his tenants has been continuously employed, insists that despite his allegedly financial and emotional desperation, he cannot even attempt to file a motion in the Nassau court attesting to what he does know, and attempting to obtain the relief he seeks – relief that has been granted by numerous courts based upon similar allegations.

Accordingly, Plaintiffs have not shown, and cannot show, that they have a likelihood of success on either their facial or as-applied claims.  Indeed, these claims have no merit, and should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should grant HCA and MTRNY's motion to intervene.

Dated:  New York, NY
       October 26, 2021

Respectfully submitted,

THE LEGAL AID SOCIETY

By:  *s/* _____

Judith Goldiner, Esq. Attorney in Charge, Civil Law Reform Unit
Edward Josephson, Esq.
199 Water Street
New York, NY 10038
Tel: 212-577-3332
jgoldiner@legal-aid.org

Roland Nimis, Esq.
Nicole Kalum, Esq.
40 Worth Street, Suite 606
New York, NY 10013
Tel: (646) 442-3600
rnimis@lsnyc.org

*Attorneys for Proposed Intervenors*
*Housing Court Answers and*

20

*Make the Road New York*

21