# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Randy M. Mastro
Direct: +1 212.351.3825
Fax: +1 212.351.5219
RMastro@gibsondunn.com

November 1, 2021

VIA ECF

The Honorable Gary R. Brown
United States District Judge
Eastern District of New York
100 Federal Plaza, Courtroom 840
Central Islip, New York 11722

Re:     *Chrysafis et al. v. Marks et al.*, No. 2:21-cv-02516-GRB-AYS

Dear Judge Brown:

I write as Plaintiffs' counsel in response to the Court's October 29 order (Dkt. 110), directing Plaintiffs to respond to the Motion to Intervene (Dkt. 98) filed by Housing Court Answers and Make the Road New York ("Amici"). Plaintiffs oppose Amici's motion. Any further participation by the Amici in this case—beyond treating their recent submission as an *amicus* brief in accordance with their existing *amicus* status—would be both inappropriate and prejudicial.

Plaintiffs initiated this action on May 6. Amici sought leave to participate in that capacity on May 21. Having already sought, and obtained, leave to participate in an *amicus* capacity, there is no basis for Amici now to seek a formal intervention as party defendants *five months* after they initially joined the case—and only days before the upcoming hearing—especially because they chose not to proceed by proposed order to show cause. To be clear, Plaintiffs do not object to Amici retaining their *amicus* status as such. However, permitting Amici to file additional briefing and participate in the November 8 hearing—which is just one week away—would plainly be prejudicial to Plaintiffs. The expedited briefing schedule and deadlines to which the parties already agreed for the exchange and submission of witness and exhibit lists are already set, and initial witness and exhibit lists have already been exchanged. Indeed, the State's opposition brief is due today, and Plaintiffs' reply is due just three days from now. Amici, instead, would burden Plaintiffs and this Court with, *inter alia*, an additional set of opposition papers, the eleventh-hour introduction of a host of as-yet-unknown witnesses for examination at the evidentiary hearing, and a doubling up on cross-examination of Plaintiffs' witnesses.

Amici, moreover, have already submitted to this Court the arguments and materials they want Your Honor to consider. Although their papers are styled as a Motion to Intervene, seven pages of their brief, instead, are devoted to arguing the *merits* of Plaintiffs' claims, and they have submitted substantive declarations and exhibits that likewise have nothing to do with the standard for permissive intervention. And despite Amici's claim that intervention will help clarify the factual issues, their analysis of the merits betrays a fundamental misunderstanding of the record in this case, making clear that their belated intervention

would instead only *muddy* the record that the existing parties have been building since May. *Compare, e.g.*, Dkt. 103 at 19 n.13 ("Ms. Shi has submitted no documentation that she ever filed an eviction proceeding"), *with, e.g.*, Dkt. 61-1 (complaint in Plaintiffs Shi and Zhou's nonpayment action), *and* Dkt. 61-2 (judgment in Plaintiffs Shi and Zhou's nonpayment action).

To the extent Amici's brief addresses the standard for permissive intervention pursuant to Federal Rule of Civil Procedure 24(b), they fail to meet it. "To be granted intervention . . . by permission, an applicant *must* . . . show that the interest is not protected adequately by the parties to the action." *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (emphasis added). Failure to satisfy this "requirement[]" provides "sufficient ground to deny the application." *Id.* (quoting *R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006)).[1] It is beyond dispute that the named Defendant—who is represented by the State Attorney General's Office—is more than capable of adequately defending the State's eviction moratorium. This suffices to defeat the motion. The *only* legal question in this case is whether the eviction moratorium violates Plaintiffs' constitutional rights, and Amici admit that they "seek to address the validity of Plaintiffs' constitutional claims." Dkt. 103 at 11. The Attorney General's Office has vigorously litigated these issues since the inception of this case—in this Court, in the Second Circuit, and before the United States Supreme Court.

Tellingly, despite participating as *amici* in this Court, Amici did not even attempt to submit *amicus* briefs in either the Second Circuit or the Supreme Court—a clear acknowledgment that the State is capable of defending the interests of those defending the challenged eviction moratorium. This capability is confirmed by one of the cases on which they purport to rely—*Commack Self-Service Kosher Meats, Inc. v. Rubin*, 170 F.R.D. 93, 103-05 (E.D.N.Y. 1996)—which explains that, when "a state is a party to an action involving its sovereign interest"—including "defending the constitutionality of [a] state statute"—the "state is presumed to represent the interests of all of its citizens".[2]

---

[1] Instead of relying on controlling law for the applicable legal standard, Amici cite a district court decision for the proposition that Rule 24(b) is "liberally construed." Dkt. 103 at 10 (citing *Del. Tr. Co. v. Wilmington Tr., N.A.*, 534 B.R. 500, 509 (S.D.N.Y. 2015)). This suggestion, inconsistent with current Second Circuit law, can be traced to practice treatises: *Delaware Trust* quotes *Degrafinreid v. Ricks*, 417 F. Supp. 2d 403, 407 (S.D.N.Y. 2006), which in turn cites *McNeill v. N.Y.C. Housing Authority*, 719 F. Supp. 233, 250 (S.D.N.Y. 1989), which based it on *Davis v. Smith*, 431 F. Supp. 1206, 1209 (S.D.N.Y. 1977), which derived it from two treatises.

[2] The *Commack* court denied intervention as of right on that basis. 170 F.R.D. at 105. Although the court granted permissive intervention at the time, it could not properly have done so under current Second Circuit law, where to be "granted intervention as of right *or by permission*," a movant "must . . . show that [its] interest is not protected adequately by the parties." *Floyd*, 770 F.3d at 1057 (emphasis added) (citation omitted).

Moreover, while the adequacy of the State's defense alone suffices to defeat Amici's motion, so too does the prejudice and delay their motion will cause, as the parties race toward an imminent emergency hearing. *See British Airways Bd. v. Port Auth. of N.Y. & N.J.*, 71 F.R.D. 583, 585 (S.D.N.Y.) ("It is easy enough to see what are the arguments against intervention where, as here, the intervenor merely underlines issues of law already raised by the primary parties. Additional parties always take additional time. Even if they have no witnesses of their own, they are the source of additional questions, objections, briefs, arguments, motions and the like which tend to make the proceeding a Donnybrook Fair." (citation omitted)), *aff'd*, 556 F.2d 554 (2d Cir. 1976).

In any event, to the extent Amici purport to rely on a few one-off housing court proceedings that landlords have managed to advance in one way or another, such arguments only underscore that the courthouse doors are still effectively barred to landlords, whose more than 150,000 pending eviction proceedings have been stalled by the extended eviction moratorium.[3] In arguing otherwise, Amici appear to misunderstand the nature of Plaintiffs' due process claim—which concerns the *reasonableness* of the opportunity for landlords to be heard in response to their tenants' claims of COVID-related hardship. That a few landlords out of many thousands managed to successfully navigate the Extension's purported hearing mechanism does not render that mechanism consistent with due process. *See Mathews v. Eldridge*, 424 U.S. 319, 344 (1976) (explaining that "procedural due process rules are shaped by the risk of error inherent in the truthfinding process as applied to the generality of cases, not the rare exceptions").

The few proceedings that Amici cite are just the kinds of "rare exceptions" involving unusual circumstances that differentiate them both from Plaintiffs' circumstances and the "generality of cases," *id*., and make them the proverbial exception that proves the rule. For example, in *Sanchez-Tiben v. Washington*, a bedridden landlord was able to secure a hearing on his tenant's hardship claim because footage from motion-sensitive cameras in the building he shared with the tenant showed the tenant leaving for work at the same time as before the pandemic without wearing a mask or exhibiting any signs of hardship. Case No. LT-000223-20/BX (Bronx Cty. Civ. Ct.), Doc. No. 11 at 3-5. Similarly, in *Bitzarkis v. Evans*, the landlord obtained a hearing based on personal knowledge that the tenant's financial situation had not changed gained in connection with obtaining rental assistance payments on the tenant's behalf both before and after the pandemic. Case No. 81766/2019 (Kings Cty. Civ. Ct.), Dkt. 26 at 4-5. Plaintiffs here, like landlords in the overwhelming majority of cases, lack such concrete evidence of their tenants' current financial circumstances. *See, e.g.*, Dkt.

---

[3] Amici cite nine cases, of which only five resulted in a landlord actually being granted a hearing to challenge a hardship declaration. Dkt. 103 at 15-18. That is a tiny fraction of a percent of the more than 150,000 eviction proceedings currently pending in New York courts, as evidenced by data the State submitted to the Second Circuit and Defendant Marks' recent public statements, or unable even to be filed because of tenant "hardship" declarations preceding filing. *See* Ct. App. Dkt. 152-2 at 3; Ct. App. Dkt. 156.

90 ¶ 11 (Plaintiff Shi has not been able to communicate with her tenants—who "changed their phone number so [she] can't reach them"—for "many months"); Dkt. 89 ¶ 22 (Plaintiff Chrysafis is "not in contact with" his tenants and has "no way of knowing whether their hardship claims are true").

Moreover, despite representing to this Court that these "several cases" have "interpreted the statute in a way intended to . . . accommodat[e] the concerns expressed by the U.S. Supreme Court in a prior phase of this litigation" (Dkt. 103 at 16), the very same legal services organizations representing Amici here has advanced a markedly different position in the housing court, including in at least one of the very cases now cited—that the "legal presumption created by the filing of the COVID-19 Hardship Declaration shifts the burden to the landlord to *show* why it believes the tenant is not experiencing a financial hardship." *Sanchez-Tiben*, Doc. No. 9 ¶ 19.

Amici also neglect to mention that, unlike the few cases they cite, other housing court decisions have *denied* landlords a hearing based on the same reading Amici have advanced. For instance, Legal Services NYC represented the tenant in a case in which a court rejected a landlord's request for a hearing because the landlord's evidence was insufficient to invalidate *all five* potential sources of financial hardship in the tenant's unsubstantiated hardship declaration. See *C.E.Y. Realty Assocs. v. Michaels*, No. LT-51238-20/NY (N.Y. Cty. Civ. Ct.), Dkt. 33-1 at 2 (refusing to hold hearing because "the fact that ERAP paid [the landlord] for 15 months does not in and of itself automatically negate [the tenant's] Declaration of Financial Hardship," since he "indicated inability to pay rent or obtain alternative housing because of one or more of five different factors, not limited to ERAP having paid a portion of outstanding arrears").

In other words, this is déjà vu all over again. The legal presumption and stay of evictions in the tenant's favor on the tenant's unsworn say-so alone that the Supreme Court found unconstitutional continues under this amendment; it shifts the burden to the landlord to prove the negative that the tenant is not suffering any of the broad categories of COVID hardship set out in the statute, despite the fact that in almost every case the tenant, not the landlord, has the information needed to rebut that presumption. That violates due process.

For the foregoing reasons, Amici should not be permitted to make any further submissions or otherwise participate in this case until their Motion to Intervene is decided. The papers they have submitted should, at most, be treated as an *amicus* submission.

We thank the Court for its consideration.

The Honorable Gary R. Brown
November 1, 2021
Page 5

Respectfully,

*/s/ Randy M. Mastro*
Randy M. Mastro
cc: All counsel of record (via ECF)