UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PANTELIS CHRYSAFIS, BETTY COHEN,
BRANDIE LACASSE, MUDAN SHI, FENG ZHOU,
and RENT STABILIZATION ASSOCIATION OF
NYC, INC.,

        *Plaintiffs*

   -against-

LAWRENCE K. MARKS, in his official capacity as
Chief Administrative Judge of the Courts of New York
State,

        *Defendant.*

21 CV 2516
(Brown, J.)

# DEFENDANT LAWRENCE K. MARKS'S MEMORANDUM
## OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION
## FOR A PRELIMINARY INJUNCTION

LETITIA JAMES
Attorney General of the State of New York
*Attorney for Defendant Marks*
300 Motor Parkway, Suite 230
Hauppauge, New York 11788

SUSAN M. CONNOLLY
Assistant Attorney General

# TABLE OF CONTENTS

Page

Preliminary Statement............................................................................1

Factual and Procedural Background................................................................ 1

STANDARDS FOR A PRELIMINARY INJUNCTION................................................4

POINT I - THE PLAINTIFFS LACK STANDING..................................................5

    A. None of the Individual Plaintiffs Have Standing to Challenge S50001's Notice
    Provisions..........................................................................5

    B. The Individual Plaintiffs Also Lack Standing to Assert Their Due Process
    and Petition Clause Claims...........................................................7

    C. The Rent Stabilization Association of New York City (RSA) Likewise Lacks
    Standing............................................................................11

POINT II – THE ACTION SHOULD BE DISMISSED ON ABSTENTION
PRINCIPLES............................................................................11

POINT III- PLAINTIFFS FAIL TO A SHOW LIKELIHOOD OF SUCCESS ON
THEIR CLAIMS OF VIOLATIONS OF THE FIRST OR FOURTEENTH
AMENDMENT ...........................................................................12

    A. First Amendment Claims............................................................13

    B. Fourteenth Amendment Due Process Claims...........................................14

POINT IV:  PLAINTIFFS FAIL TO SHOW IRREPARABLE HARM OR THAT
THE EQUITIES AND PUBLIC INTEREST WEIGH IN THEIR FAVOR.............16

    A. Plaintiffs Fail to Show Irreparable Harm ..........................................16

    B. The Balance of the Equities Does Not Support Plaintiffs.............................17

CONCLUSION...........................................................................19

# TABLE OF AUTHORITIES

## Cases

*18 Abingdon Square, LLC v. Daniele Strain et al.,* No. LT-079271-18
    (N.Y. Civ. Ct.)..............................................................................16

*Abuelafiya v. Orena,* No. LT-152-20/HU, 2021 WL 4234080, at *3
    (N.Y. Dist. Ct. Sept. 17, 2021)..........................................................16

*Bitzarkis v. Evans,* Civil Ct., Kings County, Index No. 81766/2019
    (October 25, 2021).................................................................8, 15

*Bronx Preservation LP v. Yolanda Santos et al,* No. LT-068614-2018
    (N.Y. Civ. Ct. Bronx Cty. 2018)........................................................15

*Carmen Hernandez v. Nieves Vasquez et al,* No. LT-050488 (N.Y. Civ. Ct.
    Bronx Cty. 2019)........................................................................15

*Catholic Charities of Diocese of Albany v. Serio,* 7 N.Y.3d 510, 525 (2006)....................13

*Charlesbank Equity Fund II v. Blinds To Go, Inc.,* 370 F.3d 151, 162 (1st Cir. 2004)..............17

*Chrysafis v. Marks,* 141 S. Ct. 2482 (2021) *(per curiam)*....................................1, 2

*Clapper v. Amnesty Intl. USA,* 568 U.S. 398, 409-10 (2013)....................................10

*COL, LLC v. Shankar et al.,* 2021 WL 4839298 (N.Y. Civ. Ct.,
    October 15, 2021)......................................................................15

*Courthouse News Serv. v. Brown,* 908 F.3d 1063, 1070-71 (7th Cir. 2018)........................11

*Davis v. N.Y. State Bd. of Elections,* 689 F. App'x 665, 668–669 (2d Cir. 2017)..................10

*Disability Rights N.Y. v. New York,* 916 F.3d 129, 132-33 (2d Cir. 2019)....................11, 12

*Domond v. Evans,* LT-070887/19 (N.Y. Civ. Ct. Queens Co.
    October 25, 2021)...................................................................15, 16

*Donohue v. Mangano,* 886 F. Supp. 2d 126, 150 (E.D.N.Y. 2012)................................16

*Elmsford Apartment Assocs., LLC v. Cuomo,* 469 F. Supp. 3d 148, 161
    (S.D.N.Y. 2020).......................................................................13

i

*Fordham Fulton Realty v. Polanco*, Civil Ct., Bronx County, Index No.
 0041131/2018...................................................................................8

*Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 143
 (2d Cir. 2016)..................................................................................5

*Grinberg Management & Development LLC and Wealth Mgmt SI LLC v. Marcelino
 Aguilar et al*, No. LT-050015-20/RI (N.Y. Civ. Ct. Richmond Cty.).....................15

*Harbor Tech LLC v. Correa*, Civil Ct., Kings County, Index No. 60788/2019
 (October 25, 2021)........................................................................8, 15

*Jamaica Seven LLC v. Douglas*, No. L & T 73780/19, 2021 WL 4537406,
 at *2 (N.Y. Civ. Ct. Sept. 30, 2021)........................................................15

*Kachalsky v County of Westchester*, 701 F.3d 81, 97 (2d Cir 2012)..........................19

*Kaufman v. Kaye*, 466 F.3d 83, 86 (2d. Cir. 2006)..........................................11

*Knife Rights, Inc. v. Vance*, 802 F.3d 377, 383 (2d Cir. 2015)...............................5

*Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621, 627 (1969)...........................13

*Lakeragh, et al. v. State of New York, et al.*, Index No. 902292-21
 (Albany County) (Mar. 30, 2021)..........................................................13

*LaValle v. Hayden*, 98 N.Y.2d 155, 161 (2002)..............................................13

*Lore v. City of Syracuse*, 2001 WL 263051, at *6 (N.D.N.Y. Mar. 9, 2001)....................16

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)................................5, 18

*Lydo Enterprises, Inc. v. City of Las Vegas*, 745 F.2d 1211, 1216 (9th Cir. 1984)............16

*Manhattan Powell, L.P. v. Lamine Cisse, Mofere Cisse, Meme Cisse,
 John Doe, Jane Doe*, No. LT-055996-19/N (NY Civ. Ct.)..................................15

*Mannix v. Phillips*, 619 F.3d 187, 197 (2d. Cir. 2010)........................................9

*Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 249 (2010)..............13

*Moore v. Consol. Edison Co.*, 409 F.3d 506, 511 (2d Cir. 2005).................................4

*Nnebe v. Daus*, 644 F.3d 147, 156-57 (2d Cir. 2011)........................................11

*Northeastern Florida Chapter of the Associated General Contractors v. City of Jacksonville*,
 508 U.S. 656, 662 (1993)..................................................................14

*O'Shea v. Littleton*, 414 U.S. 488, 500 (1974)..................................................11, 12

*Parkash 215 LLC v. Katherine Mussendon et al.*: LT-055492-19/BX............................16

*Point 128, LLC v. Sound De Point LLC*, No. LT-053636-20/QU,
    2021 WL 4768469, at *1 (N.Y. Civ. Ct. Oct. 7, 2021)....................................15

*Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1998)....................................17

*Rodriguez v. Winski*, 444 F. Supp. 3d 488, 493-94 (S.D.N.Y. 2020)..........................11

*Rossito-Canty v. Cuomo*, 86 F. Supp. 3d 175, 199 (E.D.N.Y. 2015)..........................17

*Sanchez-Tiben v. Washington*, Civil Ct., Bronx County, Index No. 000223/2020.........8, 15

*Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)....................5

*SKS & Assocs. v. Dart*, 619 F.3d 674 (7th Cir. 2010)......................................12

*Sowell v. Tinley Renehan & Dost, LLP*, 807 F. App'x 115, 118–119
    (2d Cir. 2020)..........................................................................5

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).....................................5

*Steel Co. v Citizens for a Better Envt.*, 523 US 83, 94 (1998)............................5

*Thomas v. New York City Bd. Of Elections*, 898 F. Supp. 2d 594, 597
    (S.D.N.Y. 2012).........................................................................5

*Tran v. Lennon*, Civil Ct., Bronx County, Index No. 000223/2020............................8

*Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 195
    (1997)..................................................................................19

*Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics USA, Inc.*, 454 F. Supp. 2d
    62, 71 (E.D.N.Y. 2006).................................................................10

*Voskoboynik v. Frolova*, Index No. 309600/2020 (Civil Court, Kings County
    Oct. 27, 2021).....................................................................7, 8, 15

*Wallace v. Kern*, 520 F.2d 400, 404 (2d Cir. 1975)........................................12

*Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 651 (1985)....................13

**Constitutional Provisions and Statutes**

**Federal**

First Amendment to U.S. Const……………………..………………………………4, 12, 13

Fourteenth Amendment to U.S. Const……………………………………………………12, 14

**State**

CEEFPA Part A……………………………………………...……………1, 2, 3, 4, 14

Ch. 417, 2021 N.Y. Laws ("S50001")……....…1, 2, 3, 4, 5, 6, 7, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19

       *Id.* Part C, Subpart A………………………………………………………4

       *Id.* § 1…………………………………………………………....……………17

       Id. § 2……………………………………………………………………2, 3, 6

       *Id.* § 3……………………………………………………………………3, 6

       *Id.* § 6……………………………………………………………………6, 9

       *Id.* § 7…………………………………………………………………………9

       *Id.* § 9……………………………………………………....……………3, 15

       *Id.* § 10……………………………………………………....……3, 7, 17

Ch. 418, 2021 N.Y. Laws ("S50002")………………………………………………2, 17, 18

N.Y. C.P.L.R. 408………………………………………………………………………7

Tenant Safe Harbor Act …………………………………………………....……………2, 3

**Legislative History**

N.Y. Senate, *Session*, Sept. 1, 2021, at 13:20-13:56………………………………………14

**Websites**

CBS News (updated Sept. 9, 2021), https://www.cbsnews.com/news
/eviction-ban-landlord-homelessness-tenants-rent/……………………………....……………17

New York State Emergency Rental Assistance Program Reports,
https://otda.ny.gov/programs/emergency-rental-assistance/program-reports.asp............................18

YouTube, .https://youtu.be/oZUO9IGWB18....................................................................................14

## PRELIMINARY STATEMENT

Plaintiffs—four[1] landlords, together with a trade association representing the residential housing industry in New York City— have filed an Amended Complaint to ask this Court to enjoin selected provisions of Ch. 417, 2021 N.Y. Laws (hereinafter "S50001")—the newly-enacted eviction moratorium statute that affords certain tenants experiencing COVID-related hardships a temporary stay of eviction proceedings while permitting landlords the opportunity to challenge a tenant's hardship claims. Because plaintiffs lack standing to maintain this action, and because they cannot make the required showing, they are not entitled to a preliminary injunction against S50001's enforcement.

### Factual and Procedural Background

In June 2021, this court denied plaintiffs' request for preliminary relief and dismissed the complaint in its entirety for failure to state a claim. On August 2021, upon plaintiffs' emergency motion for a writ of injunction, the U.S. Supreme Court issued an order enjoining the enforcement of Part A of New York's COVID-19 Emergency Eviction and Foreclosure Prevention Act of 2020 ("CEEFPA"), pending disposition of plaintiffs' appeal of this court's decision and order in the Second Circuit and any writ of certiorari, with three Justices dissenting. *Chrysafis v. Marks*, 141 S. Ct. 2482 (2021) (*per curiam*).

The Order expressly addressed only plaintiffs' procedural due process claim. It explained that "CEEFPA generally precludes a landlord from contesting [a tenant's self-certification of financial hardship] and denies the landlord a hearing," and that "[t]his scheme violates the Court's longstanding teaching that ordinarily 'no man can be a judge in his own case' consistent with the Due Process Clause." *Id.* at 2482. The order further stated that it was not enjoining enforcement of the Tenant Safe

---

[1] The Amended Complaint was filed on behalf of five individual plaintiffs. On the evening of October 31, 2021, one of the plaintiffs, Betty Cohen, filed a notice of voluntary dismissal of her claims. *See* Doc. 113.

Harbor Act ("TSHA"), which prohibits courts from issuing a warrant of eviction or judgment of possession if tenants establish "a COVID-related hardship defense in eviction proceedings." *Id.* at 1-2.

Before the appeal was heard in the Second Circuit, several provisions of CEEFPA Part A expired by their own terms. Subsequently, on September 2, 2021, the New York Legislature enacted S50001,which provided eviction protections under a new scheme that has several significant differences from CEEFPA Part A, directly in response to the Supreme Court's order. At the same time, the Legislature also enacted S50002, which provides additional funding for the State's COVID Emergency Rental Assistance Program ("ERAP"), and expands eligibility under ERAP to permit additional landlords—including those who are unable to secure the cooperation of their tenants in applying for arrearages—to receive rental arrearage benefits. Ch. 418, 2021 N.Y. Laws.

In enacting S50001, the Legislature recounted COVID-19's devastating and continuing effects on the State, and concluded that it was "necessary" to continue providing certain eviction protections given its finding that significant numbers of residential evictions would "exacerbate the resurgence of COVID-19," damage "the state's economic recovery," and cause "deleterious social and public health effects" in increasing homelessness and housing instability. S50001, § 2, pp.2-3. At the same time, the Legislature acknowledged the Supreme Court's August 12 order, which criticized Part A's "provisions that provided for a tenant to self-certify financial hardship and delayed a landlord from contesting the certification," and concluded that it was therefore "necessary to modify the residential eviction moratorium to address the Supreme Court's due process concern." *Id.* To further these aims, S50001 again provides for the suspensions or stays of certain residential evictions upon a tenant's filing of a sworn hardship declaration, and imposes certain obligations on landlords. But S50001 also includes a number of important changes from Part A that are material here.

Most critically, the Legislature responded to the Supreme Court's stated due process concern by affording landlords an opportunity to challenge tenants' sworn hardship declarations. Specifically, the new statute provides that courts "shall grant a hearing" to adjudicate the validity of a tenant's hardship declaration when a landlord submits a motion attesting to his or her "good faith belief that the [tenant] has not experienced a hardship." *Id.* pt. C, subpt. A, § 10, p.26. S50001 further instructs that if, following a hearing, a claim of hardship is found to be invalid, the court must "continue to a determination on the merits" of the underlying eviction proceeding. *Id.* § 10(c), p.26. Cases with valid claims of hardship, absent allegations that the tenant is intentionally causing significant property damage or engaging in nuisance conduct, are entitled to a stay until January 15, 2022. S50001 also incorporates the new hearing requirement into its rebuttable-presumption provision. S50001 provides that a tenant's submission of a sworn and unchallenged or judicially found valid hardship declaration creates a rebuttable presumption of a financial hardship for purposes of TSHA's affirmative defense to eviction, S50001 pt. C, subpt. A, § 9, p.26—a distinct statute which plaintiffs do not challenge here, and which the Supreme Court's stay order explicitly declined to disturb.

S50001 also modifies the notices required by CEEFPA Part A that landlords are required to provide when they demand rent in anticipation of evictions, issue predicate pre-eviction notices, or commence eviction proceedings. *Id.* §§ 1(4), 2, pp.20-22. Specifically, the S50001 notices that landlords must provide to tenants reflect the new hearing requirement and certain other substantive changes made in S50001. The obligation to transmit these new notices under S50001 applies only prior to when a landlord "commence[s] an eviction proceeding." *Id.* §§ 2 ("Pre-eviction notices"), 3(1) (requiring landlords to attest compliance with notice requirements when commencing eviction), p.22.

The Second Circuit ordered supplemental briefing on whether S50001's enactment rendered plaintiffs' claims moot. Plaintiffs then moved to enjoin S50001's enforcement based on the Supreme Court's order pertaining to CEEFPA Part A, contending that S50001 was a mere continuation of the

earlier statute such that the Supreme Court's order extended to S50001. On September 29, 2021, the Second Circuit denied plaintiffs' motion and dismissed plaintiffs' due process claims as moot, and remanded the case to this court with leave for plaintiffs to amend their pleadings if they wished to challenge S50001. *See* Doc. No. 81 at 5. In doing so, the Second Circuit expressly rejected plaintiffs' argument that S50001 modified CEEFPA Part A in only "insignificant" or "superficial" ways, concluding instead that S50001 represented "a new law" that was enacted by legislators for the express purpose of remedying "the defect identified by the Supreme Court." *Id.* at 12. The Second Circuit declined to entertain plaintiffs' claims that S50001's new hearing procedures were inadequate, reasoning that such allegations were premature and speculative in the absence of fact development "clarify[ing] how the new statute will be implemented" in the state courts. *Id.* at 14.

On October 15, 2021, plaintiffs filed an Amended Complaint together with an Order to Show Cause for a Preliminary Injunction, challenging Part C, Subpart A of S50001 and seeking a stay of enforcement of those provisions pending a determination of the merits. In the Amended Complaint, plaintiffs assert the same due process and First Amendment claims against Subpart A of Part C of S50001 that they asserted previously against CEEFPA Part A. Rather than requesting hearings under S50001, plaintiffs instead allege that S50001's new hearing procedures are "illusory" and fail to satisfy due process because landlords have no way to attest to a good faith belief as to a tenant's lack of hardship so as to obtain a hardship hearing (Am. Compl. ¶¶ 78-80). For all the reasons set forth herein, plaintiffs cannot satisfy the prerequisites for preliminary relief, and their motion should be denied.

## STANDARDS FOR A PRELIMINARY INJUNCTION

A preliminary injunction is an "extraordinary and drastic remedy" that is "unavailable except in extraordinary circumstances." *Moore v. Consol. Edison Co.*, 409 F.3d 506, 511 (2d Cir. 2005). Where injunctive relief would "affect government action taken in the public interest pursuant to a statute or regulatory scheme, the moving party must demonstrate (1) irreparable harm absent injunctive relief,

(2) a likelihood of success on the merits, and (3) public interest weighing in favor of granting the injunction." *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 143 (2d Cir. 2016). Where movants seek to change the status quo, and strike down a duly enacted statute, they must show "a clear or substantial likelihood of success on the merits." *Thomas v. New York City Bd. Of Elections*, 898 F. Supp. 2d 594, 597 (S.D.N.Y. 2012).

## POINT I - THE PLAINTIFFS LACK STANDING

This action must be dismissed at the outset because none of the plaintiffs can establish standing to pursue their claims. Article III standing is a jurisdictional requirement that must be determined at the outset, prior to any review of the claims, *Steel Co. v Citizens for a Better Envt.*, 523 US 83, 94 (1998), and "must be shown affirmatively" by the proponent of jurisdiction, *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). To establish standing "a plaintiff must have suffered an 'injury in fact,' that is 'fairly traceable to the [defendant's] challenged conduct,' and that is 'likely to be redressed by a favorable judicial decision.'" *Sowell v. Tinley Renehan & Dost, LLP*, 807 F. App'x 115, 118–119 (2d Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). The injury must also be "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Here, plaintiffs cannot carry their burden to show that they are or will imminently suffer any concrete and particularized injury from S50001 to entitle them to prospective relief against S50001's enforcement—the only relief they seek. *See Knife Rights, Inc. v. Vance*, 802 F.3d 377, 383 (2d Cir. 2015).

### A.     None of the Individual Plaintiffs Have Standing to Challenge S50001's Notice Provisions

None of the individual plaintiffs have standing to assert their First Amendment claims seeking prospective relief against S50001's notice requirements because those requirements, which apply prior to or upon the commencement of an eviction proceeding, do not apply to them. Specifically, S50001

requires landlords to provide "[p]re-eviction notices," including the form hardship declaration, when making a "written demand for rent" in anticipation of eviction, providing any required "written notice … prior to the commencement of an eviction proceeding," or serving the notice of petition of the eviction itself. S50001 pt. C, subpt. A, § 2, p.22. This notice requirement is enforced by courts at the outset of an eviction proceeding: a court may not "accept for filing any petition . .. to commence an eviction proceeding" unless the landlord attests that he or she has served the required pre-eviction notices on the tenant. *Id.* § 3(1), p.22-23. None of the individual plaintiffs, however, are seeking to bring new eviction proceedings: they all have *ongoing* eviction proceedings that were commenced before S50001's enactment. Indeed, three of the four remaining individual plaintiffs commenced eviction proceedings even before CEEFPA was enacted: Shi and Zhou filed and obtained a judgment in October 2019; and Chrysafis obtained a judgment and warrant of eviction against his tenants in February 2020. (See Ex. D, pp. 42 – 43, Ex. E, pp.21) The last plaintiff, LaCasse, filed an ejectment action against her tenants in March 2021, and has obtained a judgment of possession in that action on September 21, 2021, and is currently attempting to finalize and execute a warrant of eviction against her tenants. (Ex. B, pp. 44-45)

Nor does the individual plaintiffs' failure to provide the pre-eviction notices required by S50001 pose any future obstacle to their respective eviction proceedings. While S50001 does require the court to check whether the tenant was served with the requisite notices before it may issue a warrant for eviction. S50001 pt. C, subpt. A, § 6(b)(i), p.24, that provision only applies when a "tenant has not submitted the hardship declaration." But here, all of the individual plaintiffs' tenants have already submitted hardship declarations (Doc. 87, p. 10-11, Doc. 89, p. 8-9, Doc. 90, p. 8-9, Ex. D., pp. 49-50), and thus this provision does not apply. Because none of the individual plaintiffs face any concrete and imminent injury from S50001's notice requirements, they have no standing to seek prospective relief against those requirements.

**B.     The Individual Plaintiffs Also Lack Standing to Assert Their Due Process and Petition Clause Claims**

None of the remaining individual plaintiffs have attempted to seek a hearing to challenge their tenants' claims of hardship, which S50001 provides "shall" be held upon a landlord's attestation of a "good faith belief" that the tenant "has not experienced a hardship." S50001 pt. C, subpt. A, § 10(a). Instead, they persist in their procedural due process and Petition Clause claims by relying on their conclusory assertions that the hearings provided by S50001 are "illusory because landlords typically lack access to the information necessary to make such an attestation." *See* Am. Compl. ¶ 78.

But such bare assertions are insufficient to demonstrate standing. For one thing, plaintiffs' contention that landlords will never have sufficient knowledge about their tenants' circumstances to dispute a claim of hardship in good faith is refuted by the record, which is replete with the details about their respective tenants' financial and personal circumstances. (*See, e.g.,* Doc. 13 at 5-6 (Chrysafis's property manager attesting that tenants "are not suffering hardship due to COVID and one of them has continued to work throughout the pandemic"), Doc. 69-1 at 41-43 (LaCasse testifying her tenant's "child care situation has not changed at all"), Doc. 87 at 3-4 (LaCasse attesting that her tenants' employment status has not changed), Doc. 90 at 5 (Shi attesting to belief that tenant was arrested for selling drugs at the property).) Nor is it plausible, as plaintiffs suggest, that landlords lack any means of obtaining information about their tenants so as to make the requisite attestation. Again, the record demonstrate that even when tenants are uncommunicative, landlords can acquire knowledge about their tenants through the assistance of neighbors or others who are able to observe the tenants' activities. *See, e.g.,* Doc. 88 at 2 (Cohen asked superintendent to report on her tenant's status), Doc. 90 at 5 (Shi learning about tenant's arrest from neighbor). And in any event, courts have permitted landlords to obtain discovery from their tenants for purposes of challenging a tenant's claim of hardship—an avenue that is available to plaintiffs. *See* N.Y. C.P.L.R. 408; *Voskoboynik v. Frolova,*

Index No. 309600/2020 (Civil Court, Kings County Oct. 27, 2021) (granting discovery in eviction proceeding in connection with landlord's motion to challenge tenant's hardship declaration) (decision attached as part of Ex. G).

Plaintiffs' conclusory assertions also cannot be credited in the face of preliminary data from the state courts, which demonstrate that as of today, numerous hearings have already been conducted across the State, with more scheduled to be conducted in the coming weeks.[2] And the many recent state court decisions further confirm that "good faith belief" has not been a barrier to landlords' ability to file attestations, including attestations with information similar to those that the individual plaintiffs have demonstrated they already possess about their respective tenants. *See* Davidson declaration October 26, 2021 (Doc. 104) (appending decisions, including those referenced herein). For example, requests for hearings have been made by landlords based upon social media posts (*Harbor Tech LLC v. Correa,* Civil Ct., Kings County, Index No. 60788/2019 (October 25, 2021), the tenant smoking marijuana and having guests (*Bitzarkis v. Evans,* Civil Ct., Kings County, Index No. 81766/2019 (October 25, 2021), the tenant leaving for work every day at 3:30 p.m., (*Sanchez-Tiben v. Washington,* Civil Ct., Bronx County, Index No. 000223/2020), the landlord's presumption that the tenant's income had increased since the landlord was receiving less of a rental subsidy from public assistance sources (*Tran v. Lennon,* Civil Ct., Bronx County, Index No. 000223/2020), and that the landlord had not received notification that the tenant has applied for ERAP nor provided any documentation to support their hardship application, (*Fordham Fulton Realty v. Polanco,* Civil Ct., Bronx County, Index No. 0041131/2018). The foregoing shows S50001's new process for challenging a hardship declaration— far from being "illusory"—is in fact being utilized by other landlords throughout the State, some of

---

[2] The State is the process of finalizing its data on this point, and anticipate it will be able to provide updated and certified data as to the number of hearings that have been requested, scheduled and conducted across the State by the November 8, 2021 hearing.

whom have been successful in showing that their tenants had not experienced a COVID-related hardship.

Moreover, S50001 provides that landlords may pursue evictions and obtain warrants of eviction, notwithstanding a tenant's valid claim of hardship, where a tenant has "intentionally caused significant damage to the property" or is engaged in nuisance conduct that "causes a substantial safety hazard to others." S50001, pt. C, subpt. A, §§ 6(b)(ii), 7. Those exceptions would appear to be available several of the plaintiffs here, again undermining their claim of injury. LaCasse has made allegations about her tenants' conduct that would appear to fall within the intentional property damage exception (Ex. B, bate stamp 000025, certified court records of Dutchess County Index No. 50834/2021*),* Doc. 87, p. 2, Doc. 69-1 p.10*).* Shi and Zhou's claim that their tenants are engaged in drug-dealing from the house (Doc. 90 at 5) also arguably creates a "substantial safety hazard" to the neighbors, S50001, pt. C, subpt. A, § 7. Yet none of these plaintiffs have even attempted to invoke these exceptions. Absent such an attempt, they cannot establish that they suffer injury under S50001.

The availability of the S50001 hearings similarly undermines plaintiffs' vagueness claim. That claim is premised on the argument that the hardship declarations "provide landlords with no notice about what circumstances prohibit them from evicting tenants," effectively "delegat[ing] the authority to determine the scope of [S50001] to tenants themselves. *See* Am. Compl. ¶ 102. But tenants no longer have such purported authority because S50001 now allows landlords to request hearings where courts will evaluate the validity of tenants' hardship claims. *See also Bitzarkis, supra,* No. 81766/2019 (Kings Cty. Civ. Ct.) (Decision & Order Oct. 20, 2021)(Exhibit G) (construing S50001 to require "a landlord to show good faith belief that a tenant has not experienced 'a' hardship in order to gain a hearing"—not that the tenant has experienced *no* hardship among the ones enumerated in the declaration). Whatever lack of clarity the hardship declarations themselves may have, the hearings will allow landlords and tenants to put forth more specific details and proof in support of their competing

claims. *Cf. Mannix v. Phillips*, 619 F.3d 187, 197 (2d Cir. 2010) ("[W]e generally evaluate a vagueness claim only as applied to the facts of a particular case.").

In light of the individual plaintiffs' failure to even *attempt* to request a hearing to challenge their tenants' hardship claims, or to invoke potentially applicable exceptions to S50001's stay provisions, their speculative allegations about futility fall short of demonstrating a "certainly impending" injury arising from S50001's new provisions. *Clapper v. Amnesty Intl. USA*, 568 U.S. 398, 409-10 (2013) (allegations of injury premised on a plaintiff's "highly speculative fear," or a "highly attenuated chain of possibilities" insufficient); *Davis v. N.Y. State Bd. of Elections*, 689 F. App'x 665, 668–669 (2d Cir. 2017) (affirming ruling that injury was "entirely hypothetical" where it turned on "contingent future events," even where the plaintiff "provide[d] reasons why, in his opinion, these events are likely to happen"). Plaintiffs cannot manufacture standing here based on such "self-inflicted injuries" premised on their "subjective fear[s]." *Clapper*, 568 U.S. at 409; *Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics USA, Inc.*, 454 F. Supp. 2d 62, 71 (E.D.N.Y. 2006). Their refusal to avail themselves of S50001's hearing procedures and exceptions do not confer them with standing to assert their due process or Petition Clause claims.

Finally, for at least one of the remaining individual plaintiffs, recent events suggest that he may not have a live eviction proceeding at all and thus is not impacted by S50001 in any way.[3] . Specifically, according to court records, Pantelis Chrysafis has settled his eviction proceeding against his tenants through a stipulation, (*see* Exhibit E pp. 294-295) strongly suggesting that he and his tenants may have come to an agreement about both past rent and vacating the property, thereby rendering Chrysafis's

---

[3] As confirmed by her notice of voluntary dismissal (Doc. 113), Betty Cohen lacks standing to maintain her claims against S50001 because her pending nonpayment eviction proceeding had been rendered moot by her recent acceptance of rental arrearage benefits through the State's rental assistance program (which brought her tenant current on his rental obligations). *See* Doc. 88 at 4-5.

eviction proceeding moot. These developments would appear to deprive Chrysafis of any concrete stake in this action.

### C. The Rent Stabilization Association of New York City (RSA) Likewise Lacks Standing

This Court previously dismissed RSA based on lack of associational standing, *see* Doc. 74 at 5 n.3, a ruling that RSA did not challenge on appeal. On remand, RSA now attempts to bypass this court's prior determination—as well as its waiver of the opportunity to challenge that determination on appeal—through its allegation that it has, since months *before* S50001's enactment, "divert[ed]" resources away from "its ordinary activities." *See* Am. Compl. ¶ 21. But such a bare and conclusory assertion falls short of establishing standing. *See Rodriguez v. Winski*, 444 F. Supp. 3d 488, 493-94 (S.D.N.Y. 2020). Absent concrete evidence concerning RSA's regular activities and how its activities changed as a result of S50001—the sole subject of this suit—RSA cannot carry its burden to demonstrate any concrete injury attributable to S50001 sufficient to establish standing. *See Nnebe v. Daus*, 644 F.3d 147, 156-57 (2d Cir. 2011) (citing detailed testimony about organization's activities and impact in concluding that organization had standing).

## POINT II – THE ACTION SHOULD BE DISMISSED ON ABSTENTION PRINCIPLES

Principles of federalism and comity here require abstention and thus independently support dismissal of plaintiffs' claims. As the Supreme Court has made clear, federal courts should abstain from issuing equitable relief that would impermissibly intrude in a State's "administration of its own law[s]." *O'Shea v. Littleton*, 414 U.S. 488, 500 (1974) (quotation marks omitted). This Court and its sister circuits have uniformly relied on settled principles of abstention and comity in declining to interfere with the administration of state courts, including by compelling state courts to "apply[] a certain burden of proof," *Disability Rights N.Y. v. New York*, 916 F.3d 129, 132-33 (2d Cir. 2019), to undertake particular methods of assigning judges, *Kaufman v. Kaye*, 466 F.3d 83, 86 (2d Cir. 2006), or to dictate

clerk's office functions and procedures for filings, *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1070-71 (7th Cir. 2018).

Plaintiffs' requested relief would result in precisely such inappropriate federal intrusion. Enjoining S50001 would displace current state-court eviction procedures and peremptorily require state courts to conduct hearings, issue judgments in proceedings that would otherwise be stayed, and apply different evidentiary burdens from those the Legislature prescribed. Such a result would improperly "legislate and engraft new procedures upon existing state . . . practices," *Wallace v. Kern*, 520 F.2d 400, 404 (2d Cir. 1975); dictate how state courts manage civil proceedings and "perform their judicial functions," *Disability Rights*, 916 F.3d at 133-34 (quotation marks omitted); and impose federal "monitoring of the operation of state court functions," *O'Shea*, 414 U.S. at 500-01.

Indeed, the Seventh Circuit relied on these settled abstention principles in dismissing a similar challenge to an administrative judicial order which temporarily restricted eviction proceedings during holidays and in extreme inclement weather. *See SKS & Assocs. v. Dart*, 619 F.3d 674 (7th Cir. 2010). Because entertaining plaintiff's claim on the merits would require "a federal court [to] tell state courts how to manage and when to decide a category of cases pending in the state courts," the Seventh Circuit declined to hear the dispute because doing so would "run contrary to the 'vital' considerations of comity and federalism." *Id.* at 679.

Where, as here, plaintiffs seek sweeping relief designed to alter the entire "course of future state" court proceedings, *O'Shea*, 414 U.S. at 500, abstention is mandatory and does not depend on the pendency of any state proceeding, *see Disability Rights*, 916 F.3d at 134; *SKS & Assocs.*, 619 F.3d at 679. But in any event, all of the individual plaintiffs here in fact have pending eviction proceedings. Requiring state courts to advance these pending cases using procedures different from those selected by the Legislature, or to accept new cases in disregard of the prerequisites for filing established by the Legislature, would run afoul of bedrock principles of federalism and comity.

**POINT III - PLAINTIFFS FAIL TO A SHOW LIKELIHOOD OF SUCCESS ON THEIR CLAIMS OF VIOLATIONS OF THE FIRST OR FOURTEENTH AMENDMENT**

Plaintiffs are unlikely to succeed on the merits concerning their claims of violations of the First or Fourteenth Amendments as against S50001, for the same reasons relied upon by this Court in its prior decision dismissing plaintiffs' claims against CEEFPA. Statutes enacted by the state Legislature "enjoy a strong presumption of constitutionality," and "parties challenging a duly enacted statute face the initial burden of demonstrating the statute's invalidity beyond a reasonable doubt." *LaValle v. Hayden*, 98 N.Y.2d 155, 161 (2002); *see Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621, 627 (1969) (noting "general presumption of constitutionality afforded state statutes"). In addition, "substantial deference is due the Legislature." *Catholic Charities of Diocese of Albany v. Serio*, 7 N.Y.3d 510, 525 (2006). Moreover, plaintiffs assert a facial challenge, which is "the most difficult challenge to mount successfully, since the challenger must establish no set of circumstances under which the Act would be valid." *Elmsford Apartment Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148, 161 (S.D.N.Y. 2020).

**A. First Amendment Claims**

Even assuming plaintiffs have a basis for challenging the hardship declarations (which only tenants—and not landlords—are required to complete), the declarations are not unconstitutionally vague because they contain clear language that is easily understood by tenants, as this court (and another state court) have already determined. *See* Doc. 74 at 20-21; *Lakeragh, et al. v. State of New York, et al.*, Index No. 902292-21 (Albany County) (Mar. 30, 2021) (rejecting vagueness claim) (Exhibit "G")

Plaintiffs' compelled speech claim as against S50001 fails on the merits, even were this Court to conclude that plaintiffs have standing to assert such a claim in the first place (*supra* Point I.A). This court has already concluded that requiring landlords to provide pre-eviction notices about tenant rights under the eviction moratorium, including blank hardship declarations and a list of tenant-assistance

13

organizations merely concerns the provision of "purely factual and uncontroversial information" that is "reasonably related" to a state interest and that is not "unduly burdensome," and thereby comports with the First Amendment. *See* Doc. 74 at 22-24; *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 651 (1985); *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 249 (2010). This same reasoning applies with full force to S50001, which requires the same types of notices.

Moreover, plaintiffs' Petition Clause claims fail because S50001 permits them to proceed with evictions by challenging tenant claims of hardship, giving them the opportunity to achieve what they have been requesting all along: resumption of eviction proceedings. Like CEEFPA Part A, nothing in S50001 prohibits plaintiffs from pursuing other legal avenues for relief through a money judgment to collect arrears or for summary proceedings against nuisance tenants, those engaging in nuisance conduct or causing property damage, or those who cannot establish or do not claim hardship. Accordingly, plaintiffs have no likelihood of success on their Petition Clause claim. *See* Doc. 47 at 21-22.

### B. Fourteenth Amendment Due Process Claims

In challenging S50001 on procedural due process grounds, plaintiffs rely on the identical arguments they made against CEEFPA Part A, and again insist that S50001 suffers from the same infirmities as the earlier statute. But the Second Circuit has already squarely rejected these contentions when it dismissed plaintiffs' due process claims as moot, concluding that unlike the statutory amendment at issue in *Northeastern Florida Chapter of the Associated General Contractors v. City of Jacksonville*, S50001 does not differ from CEEFPA Part A "only in some insignificant respect," 508 U.S. 656, 662 (1993). *See* Doc. 81 at 11-12. To the contrary, the Second Circuit found that S50001 was enacted by the Legislature expressly in order to remedy "the defect identified by the Supreme Court," *Id.* at 12; S50001, § 1 ¶ 3, and in fact fundamentally altered the central feature of the prior statutory scheme to give landlords the ability to immediately challenge a tenant's certification of hardship at a hearing. *See*

N.Y. Senate, *Session*, Sept. 1, 2021, at 13:20-13:56, YouTube, https://youtu.be/oZUO9IGWB18 (sponsor describing addition of hearing requirement as "very significant change"). S50001's revisions to CEEFPA Part A's rebuttable presumption also prevents any such presumption from applying until landlords first have an opportunity to contest their tenants' claims of hardship, S50001 pt. C, subpt. A, § 9, further undermining plaintiffs' due process claims.

The Supreme Court's concerns having been so squarely addressed, it is clear that plaintiffs' due process claims have no likelihood of success here. The crux of plaintiffs' claim against S50001 is that the hearing mechanism is "illusory" (Doc. 86 at 15), and thus do not provide landlords with the meaningful opportunity to be heard required by due process. But, as explained above, plaintiffs' conclusory assertion that landlords will never have sufficient knowledge about their tenants' circumstances to dispute a claim of hardship in good faith is contradicted by their own submissions in this action. And as noted *supra*, in the six weeks since the law was enacted, housing courts across the State have seen landlords challenge hardship declarations – and in a number of cases, succeed.[4] *See Sanchez-Tiben v. Washington*, No. L & T 000223/2020, 2021 WL 4839235, *supra* (NY Civ. Ct. Bronx Cty. Oct. 18, 2021); *COL, LLC v. Shankar et al.*, 2021 WL 4839298 (N.Y. VCiv. Ct., October 15, 2021); *Voskoboynik v. Frolova*, et. al., (N.Y. Civ. Ct. Kings Co. October 28, 2021); *Bitzarkis v. Lila Evans,* No. LT-81766/2019 (N.Y. Civ. Ct. Kings Cty. Oct. 20, 2021) (declaring hardship declaration invalid and proceeding with eviction action); *Manhattan Powell, L.P. v. Lamine Cisse, Mofere Cisse, Meme Cisse, John Doe, Jane Doe,* No. LT-055996-19/N (NY Civ. Ct.) ; *Harbor Tech vs. Soto and Correa, supra*, Nos. LT 060788/19 & 60790/19 (NY Civ. Ct.); *Grinberg Management & Development LLC and Wealth*

---

[4] To be sure, housing courts are also proceeding with eviction actions where no hardship declaration has been received. *See e.g. Point 128, LLC v. Sound De Point LLC,* No. LT-053636-20/QU, 2021 WL 4768469, at *1 (N.Y. Civ. Ct. Oct. 7, 2021); *Jamaica Seven LLC v. Douglas*, No. L & T 73780/19, 2021 WL 4537406, at *2 (N.Y. Civ. Ct. Sept. 30, 2021)

*Mgmt SI LLC v. Marcelino Aguilar et al*, No. LT-050015-20/RI (N.Y. Civ. Ct. Richmond Cty.); *Bronx Preservation LP v. Yolanda Santos et al*, No. LT-068614-2018 (N.Y. Civ. Ct. Bronx Cty. 2018); *Carmen Hernandez v. Nieves Vasquez et al*, No. LT-050488 (N.Y. Civ. Ct. Bronx Cty. 2019); *Domond v. Evans*, LT-070887/19 (N.Y. Civ. Ct. Queens Co. October 25, 2021); *18 Abingdon Square, LLC v. Daniele Strain et al.*, No. LT-079271-18 (N.Y. Civ. Ct.); *Abuelafiya v. Orena*, No. LT-152-20/HU, 2021 WL 4234080, at *3 (N.Y. Dist. Ct. Sept. 17, 2021); *Parkash 215 LLC v. Katherine Mussendon et al.*: LT-055492-19/BX; *see also* Davidson Declaration, Doc. 104 (collecting and appending cases and decision). And in the face of their own refusals to invoke the hearing procedures, plaintiffs' speculation about the inadequacies of these procedures cannot support any claim for relief. "A preliminary injunction is not justified when based mainly on speculation." *Lydo Enterprises, Inc. v. City of Las Vegas*, 745 F.2d 1211, 1216 (9th Cir. 1984). Under these circumstances, plaintiffs have no likelihood of success on the merits of their facial challenge to S50001.

## POINT IV: PLAINTIFFS FAIL TO SHOW IRREPARABLE HARM OR THAT THE EQUITIES AND PUBLIC INTEREST WEIGH IN THEIR FAVOR

### A. Plaintiffs Fail to Show Irreparable Harm

Plaintiffs fail to make the required convincing showing of harm based on purported constitutional injuries. While an actual constitutional injury may cause irreparable harm, "the mere allegation of a constitutional infringement itself does not constitute irreparable harm." *Lore v. City of Syracuse*, 2001 WL 263051, at *6 (N.D.N.Y. Mar. 9, 2001); *see also Donohue v. Mangano*, 886 F. Supp. 2d 126, 150 (E.D.N.Y. 2012). Rather, only where a constitutional injury is "convincingly shown" may a finding of irreparable harm be warranted. *Id.* Here, Plaintiffs fall far short of the required convincing showing.

Indeed, at least one of the remaining individual plaintiffs appears to have obtained rental arrearage benefits to cover their tenants' nonpayment through ERAP, the State's rental assistance

program.[5] News reports indicate that LaCasse may also have recently received the rental arrears she was owed by her tenants. See CBS News (updated Sept. 9, 2021), https://www.cbsnews.com/news/eviction-ban-landlord-homelessness-tenants-rent/. Moreover, under S50001's and S50002's modifications to the State's rental assistance program, the other remaining plaintiffs have more opportunities than before to obtain monetary relief for any rental arrearages, further alleviating their asserted harms. The new statutes expand eligibility for the State's rental assistance program, and further allows certain small landlords to receive arrearage benefits even if they are unable to secure their tenants' assistance. S50001 pt. A, § 1, p.3; S50002, pp.2-3. And under S50001's new provisions, even where stays are granted following a court finding of financial hardship, courts must also direct eligible parties to apply for rental assistance benefits as part of issuing that stay, further increasing the ability of landlords to receive the rent arrearages they are owed. S50001, pt. C, subpt. A, § 10(b), p.26.

In addition, "[t]he movant must demonstrate an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1998). Here, the additional harms alleged by plaintiffs are either monetary or speculative. Neither is sufficient to show irreparable harm. *See Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004) ("A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store."); *Rossito-Canty v. Cuomo*, 86 F. Supp. 3d 175, 199 (E.D.N.Y. 2015) ("Irreparable harm may not be premised only on a possibility.").

---

[5] Prior to dismissing her claims, Cohen acknowledged having received a $10,000 COVID-related government grant, as well as $22,935 in rental arrears from ERAP, which together exceed the $30,000 that she alleges was owed by her tenant. *See* Doc. 88 at 4.

**B. The Balance of the Equities Does Not Support Plaintiffs**

The balance of the equities also does not support plaintiffs' request for a stay of enforcement of S50001. S50001 now permits all plaintiffs to move to challenge their tenants' declarations of hardship through the statute's new hearing procedures, or to proceed by invoking a potential exception for intentional property damage or nuisance conduct, giving them the opportunity to achieve what they have been requesting all along: resumption of eviction proceedings and eviction of their tenants. Plaintiffs' speculation that those hearing procedures may be inadequate is an insufficient basis for a finding of an "'actual or imminent,'" "concrete and particularized" future injury entitling them to an injunction against a new statute. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

As noted *supra*, Point I, plaintiffs do not face current or future injuries as a result of S50001, and thus lack the concrete stake that would be necessary to support their request for preliminary (or other) injunctive relief here. In any event, whatever injuries plaintiffs may face from S50001, those harms are outweighed by the serious public-health and economic effects that would result from permitting mass evictions to proceed. As the Legislature expressly found in enacting S50001 in September 2021, the public-health threats from COVID-19 have not dissipated; instead, COVID-19 "cases have risen ten-fold" since early July 2021. S50001 § 2, p.2. And the uncontroverted evidence before the Legislature established that "residential eviction protections are effective public health measures"; by contrast, the lifting of eviction moratoriums in other States led to a steady increase in COVID-19 transmission and mortality in the weeks that followed. *Id.* This Court should not override the Legislature's considered judgment and allow these harms to proceed, particularly when the Legislature enacted reforms in S50001 and S50002 to increase state funding for and expand coverage of the State's rental assistance program, and to promote greater public awareness of the program—all in order to enable more landlords like plaintiffs to be able to receive the billions of dollars in available aid to cover their tenants' unpaid rents.

By all accounts, the temporary stay of certain evictions imposed by S50001 has had the intended effect: as of October 26, 2021, the State has processed over 250,000 applications for rental assistance benefits, paid over $900 million in arrearage benefits to landlords, and has provisionally approved another $900 million to be paid upon certain final verifications. *See* New York State Emergency Rental Assistance Program Reports, https://otda.ny.gov/programs/emergency-rental-assistance/program-reports.asp (last visited Oct. 30, 2021). These critical benefits have obviated countless eviction proceedings, stabilized the housing market, and allowed many New Yorkers to remain in their homes while the economy recovers and the pandemic continues to improve. The equities and public interest weigh overwhelmingly in favor of continued enforcement of S50001 until January 15, 2022. The Court should grant "substantial deference to the predictive judgments of [the legislature], *Kachalsky v County of Westchester*, 701 F.3d 81, 97 (2d Cir 2012) (quoting *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 195 (1997)), as the Legislature has been responsible for addressing important matters of public policy in facing fast-changing circumstances of a historic nature.

## CONCLUSION

For all of the forgoing reasons, Defendant Marks respectfully requests that the Court deny plaintiffs' motion for a preliminary injunction.

Dated:  Hauppauge, New York
        November 1, 2021

LETITIA JAMES
Attorney General, State of New York

By:

SUSAN M. CONNOLLY
Assistant Attorney General