UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x
PANTELIS CHRYSAFIS, BETTY S.
COHEN, BRANDIE LACASSE, MUDAN
SHI, FENG ZHOU, and RENT
STABILIZATION ASSOCIATION OF NYC,
INC.,

   *Plaintiffs*,

  -against-

LAWRENCE K. MARKS, in his official
capacity as Chief Administrative Judge of the
Courts of New York State,

   *Defendant*.
------------------------------------------------------------x

No. 21-CV-02516 (GRB)

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' APPLICATION FOR A PRELIMINARY INJUNCTION

GIBSON, DUNN & CRUTCHER LLP

200 Park Avenue
New York, NY  10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

                                                                                              Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 3

    I.     Plaintiffs Have Standing To Challenge The Extension. ............................................... 3

    II.    The Extension Is Essentially The Same Law That The Supreme Court Enjoined. ...... 6

    III.   The Extension Should Independently Be Enjoined Because Plaintiffs Are Suffering Irreparable Harm And Are Likely To Succeed On the Merits of Their Claims, And The Balance Of Equities Strongly Favors Relief. ......................................................... 7

         A.    Plaintiffs Will Be Irreparably Harmed If The Extension Is Not Enjoined. ...... 7

         B.    Plaintiffs Are Likely To Succeed On The Merits Of Their Claims. .................. 8

             1.    The Extension Violates Plaintiffs' Procedural Due Process Rights. .... 8

             2.    The Extension Violates Plaintiffs' Free Speech Rights. ....................... 9

         C.    The Balance Of Hardships And Public Interest Favor Injunctive Relief........ 10

    IV.   The State's Abstention Argument Is Meritless. ........................................................... 10

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*,
    141 S. Ct. 2485 (2021) (per curiam) ................................................................. 2, 3, 8, 10

*Ala. Ass'n of Realtors v. U.S. Dep't of Health & Hum. Servs.*,
    2021 WL 3577367 (D.D.C. Aug. 13, 2021) ..................................................................... 7

*C.E.Y. Realty Assocs. v. Michaels*,
    No. LT-51238-20/NY (N.Y. Cnty. Civ. Ct. Oct. 21, 2021) .............................................. 4

*Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*,
    868 F.3d 104 (2d Cir. 2017) .............................................................................................. 6

*Chrysafis v. Marks*,
    141 S. Ct. 2482 (2021) (per curiam) ............................................................................ 1, 8

*Chrysafis v. Marks*,
    15 F.4th 208 (2d Cir. 2021) .............................................................................................. 7

*Colo. River Water Conservation Dist. v. United States*,
    424 U.S. 800 (1976) ........................................................................................................ 10

*Disability Rights N.Y. v. New York*,
    916 F.3d 129 (2d Cir. 2019) ........................................................................................... 10

*Guan v. Mayorkas*,
    2021 WL 1210295 (E.D.N.Y. Mar. 30, 2021) .................................................................. 6

*Jolly v. Coughlin*,
    76 F.3d 468 (2d Cir. 1996) ............................................................................................... 7

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) .................................................................................................. 2, 8, 9

*Nat'l Inst. of Family & Life Advocates v. Becerra*,
    138 S. Ct. 2361 (2018) ..................................................................................................... 9

*Voskoboynik v. Frovola*,
    No. 309600/2020 (Kings Cnty. Civ. Ct. Oct. 27, 2021) .................................................. 4

*Zauderer v. Office of Disciplinary Counsel*,
    471 U.S. 626 (1985) ......................................................................................................... 9

**Statutes**

N.Y. C.P.L.R. §408 ................................................................................................................... 4

N.Y. C.P.L.R. §504 ............................................................................................................................4

S50001 ............................................................................................................... *passim*

Case 2:21-cv-02516-GRB-AYS   Document 125   Filed 11/04/21   Page 4 of 15 PageID #: 2570

**PRELIMINARY STATEMENT**

Instead of grappling with the due process deprivation the State continues to impose on property owners under the latest iteration of its residential eviction moratorium, the State tries desperately to avoid the merits, devoting the majority of its brief to meritless standing and abstention arguments—the latter of which was previously rejected by this Court as "somewhat incongruous[.]" Dkt. 74 at 9. The State's procedural arguments fail, because Plaintiffs continue to be injured by the State's moratorium extension and simply seek to resume housing court proceedings in the ordinary course under pre-existing state court procedures.

Leaving aside the State's meritless standing and abstention arguments, its latest moratorium extension suffers from the same infirmities that the Supreme Court concluded rendered CEEFPA Part A unconstitutional. *See Chrysafis v. Marks*, 141 S. Ct. 2482, 2482 (2021) (per curiam). This extension re-enacts the very eviction moratorium scheme that the Supreme Court enjoined—namely, that, on tenants' unsworn "hardship" say-so alone, eviction proceedings are automatically stayed, thereby denying landlords a meaningful opportunity to be heard. That due process violation is not cured by the State's illusory hearing mechanism, requiring landlords first to have to be able to swear, under penalty of perjury, to a good-faith belief that their tenant has no actual hardship and then, if they somehow secure a hearing, placing the burden on them to have to prove that negative. Imposing insurmountable hurdles on litigants before they have the opportunity to be heard is no opportunity at all. Indeed, the courthouse door effectively continues to remain shut to landlords, who cannot swear to something they do not know and risk subjecting themselves to criminal penalties for perjury in the process. Thus, this Court should enjoin the latest iteration of the State's eviction moratorium for the same reasons the Supreme Court enjoined

CEEFPA Part A.  The State's "sleight of hand" here brings to mind The Who's classic lyric:  "Meet the new boss.  Same as the old boss."

But there is a second, independent reason why injunctive relief should be granted here: Plaintiffs have satisfied all of the traditional preliminary injunction factors, and the State fails to meaningfully challenge that showing in its opposition brief.  Indeed, despite having litigated this case all the way to the Supreme Court and back, the State *still* persists in its claim that Plaintiffs have not suffered any irreparable harm, ignoring the contrary findings already made by this Court (Dkt. 74 at 10-12), and necessarily credited by the Supreme Court when it enjoined the State's eviction moratorium in August.  Contrary to the State's callous suggestion (Opp. 17), there is nothing "speculative" about these non-monetary injuries—which have left certain Plaintiffs homeless or even suicidal.  LaCasse Decl. ¶ 22; Chrysafis Decl. ¶ 2.  Indeed, as the Supreme Court has explained in enjoining a federal eviction moratorium, barring eviction intrudes on "one of the most fundamental elements of property ownership—the right to exclude."  *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 141 S. Ct. 2485, 2489 (2021) (per curiam).

The State's arguments opposing likelihood of success—which ignore virtually every case cited by Plaintiffs—fare no better.  For instance, in addressing Plaintiffs' procedural due process claim, the State completely ignores the leading Supreme Court case on this subject, *Mathews v. Eldridge*, 424 U.S. 319, 344 (1976).  Instead, the State cites a few housing court cases—out of more than 150,000 currently pending—in which landlords have filed affidavits disputing tenants' hardship declarations, and even fewer in which they have actually been granted a hearing to challenge tenants' unsworn hardship claims, ignoring that "procedural due process rules are shaped by the risk of error inherent in the truthfinding process as applied to the generality of cases, not the rare exceptions."  *Id.* at 344.  The State similarly ignores Plaintiffs' arguments why strict

2

scrutiny—and not the lesser scrutiny applicable to commercial speech cases—applies to their compelled speech claim, and it does not even attempt to carry its burden of proving that this extension satisfies strict scrutiny, which it does not.

The State's public interest arguments are simply a rehash of the arguments the State unsuccessfully advanced before the Supreme Court. Those arguments ignore the separate protections already afforded tenants under the TSHA. And they ignore that the Supreme Court has now *twice* enjoined eviction moratoria over invocations of pandemic-related risks, most recently instructing that "[w]hatever interest the Government had in maintaining the moratorium's original end date . . . has since diminished." *Ala. Ass'n of Realtors*, 141 S. Ct. at 2490. And, tellingly, the State's predicted parade of horribles never actually materialized when the Supreme Court enjoined CEEFPA Part A in August.

Accordingly, for all of these reasons, this Court should now preliminarily enjoin the State's latest iteration of its residential eviction moratorium.

## ARGUMENT

### I.     Plaintiffs Have Standing To Challenge The Extension.

Plaintiffs have standing to challenge this latest extension of the State's residential eviction moratorium law (the "Extension"), both facially and as applied.

*First*, the State's argument that Plaintiffs lack standing to assert their due process claims because they have not "attempted to seek a hearing" Opp. 7-10, totally misunderstands the nature of Plaintiffs' challenge. The Extension violates due process precisely *because* this purported process is illusory and cannot be taken advantage of by Plaintiffs. Br. 20-21. Because they lack the information needed in order to swear, under penalty of perjury, to a good-faith belief that their tenants' hardship claims are false, *see* Shi Decl. ¶ 11; LaCasse Decl. ¶ 11; Chrysafis Decl. ¶ 22, the Extension bars them from seeking any hearing at all, S50001, Part C, Subpart A §§ 4-6, 10.

3

Plaintiff Shi's second-hand knowledge that "her tenant was arrested for selling drugs on the property," Opp. 7, has no bearing on her ability to form a good-faith belief as to her tenants' financial circumstances or whether they were impacted by the pandemic. Similarly, that Plaintiff Chrysafis's cousin/property manager was not aware of any COVID-related hardships facing their tenants in May does not mean Mr. Chrysafis can now swear to a good-faith belief that those tenants are not suffering *any* of the statute's vague "hardships." Chrysafis Decl. ¶ 22. So, too, for Plaintiff LaCasse's belief that her tenants' employment status is unchanged. LaCasse Decl. ¶¶ 10-11.[1]

The State cites the potential for discovery in eviction proceedings, but such discovery is only available with leave of court. *See* N.Y. C.P.L.R. § 408.[2] As the State's citation confirms, landlords will not have access to discovery before having to swear to a good-faith belief that a hardship claim is false, since cases will be stayed upon submission of a hardship declaration. *See* Dkt. 117-7, *Voskoboynik v. Frovola*, No. 309600/2020 (Kings Cnty. Civ. Ct. Oct. 27, 2021) (granting discovery to landlord "entitled to a hearing on the validity of [the] hardship claim"). The same follows *a fortiori* for landlords who have been barred from even *commencing* eviction proceedings, as there is no pre-commencement discovery mechanism. And the State ignores that other housing court decisions have rejected attempts to challenge hardship declarations where the landlord was unable to disprove *each* category of financial hardship. *See* Dkt. 116-1, *C.E.Y. Realty Assocs. v. Michaels*, No. LT-51238-20/NY (N.Y. Cnty. Civ. Ct. Oct. 21, 2021). Plaintiffs, like the overwhelming majority of landlords, cannot satisfy such an onerous requirement.[3]

---

[1] Contrary to the State's baseless insinuations, *see* Opp. 10 n.3, former Plaintiff Cohen's voluntary dismissal of her claims had nothing to do with her standing to assert them (or with the merits of her claims). *See also* Dkt. 107.

[2] In their opening brief, Plaintiffs inadvertently cited N.Y. C.P.L.R. § 504 in discussing this leave-of-court requirement, rather than N.Y. C.P.L.R. § 408. Dkt. 86 at 16 n.2.

[3] The State also argues that Plaintiffs Zhou and Shi lack standing because their tenant falls within the Extension's narrow nuisance exception. Opp. 9. But they cannot satisfy the Extension's requirement that they demonstrate that their tenant "*is* persistently and unreasonably engaging in behavior that . . . causes a substantial safety hazard

4

Nor does the purported "availability of the S50001 hearings" "undermine[]" Plaintiffs' ability to challenge the Extension's hopelessly vague provisions. Opp. 9-10. A property owner must judge whether a tenant satisfies the hardship declaration's vague categories—and thus whether the landlord can assert a good-faith basis as to the absence of any such hardship—before even *requesting* a hearing. The State's contrary argument thus puts the cart before the horse.

The State also misses the mark in asserting that Plaintiff Chrysafis "may not have a live eviction proceeding at all" because he "settled his eviction proceeding against his tenants through a stipulation." Opp. 10-11 (citing Dkt. 117-6 at 294-95). The State cites an October 2019 stipulation; but, as Mr. Chrysafis has explained, the tenants failed to uphold their end of that bargain, allowing him to obtain a judgment that he has been unable to enforce in light of the State's continuing eviction moratoria. *See* Chrysafis Decl. ¶ 12; *see also* Dkt. 117-6 at 320, 359, 377-79.[4]

*Second*, although the State contends that Plaintiffs lack standing to bring their free speech claims because their tenants "have already submitted hardship declarations," Opp. 5-6, the State

---

to others," S50001, Part C, Subpart A § 7 (emphasis added), based on second-hand reports about their tenant's actions in April, Shi Decl. ¶ 16, especially since a "mere allegation" will not satisfy the exception, S50001, Part C, Subpart A § 7(3). Plaintiff LaCasse cannot reclaim her property through the Extension's exception for tenants who "intentionally" cause "significant property damage," since the Extension places the burden on her to "establish" that the exception applies, *id.* § 7(3), and the tenants have barred her from accessing the property for months, LaCasse Decl. ¶ 4. Nor would it satisfy due process to require Ms. LaCasse to now establish that the exception applies, since she has already obtained a judgment of possession and warrant of ejectment that are not being effectuated as a result of the Extension. The Dutchess County Sheriff's Office's refusal to enforce Ms. LaCasse's warrant of ejectment, *see* Dkt. 106-7 at 4, further exacerbates the deprivation of Ms. LaCasse's due process rights. Its misrepresentations to this Court about the matter are even more concerning. *Compare* Dkt. 106-7 at 3 (submission on behalf of Dutchess County Sheriff's Office, dated October 27, asserting that "no signed warrant has been provided" to the Sheriff's Office for Ms. LaCasse's property), *with* Dkt. 110-1 (email from Ms. LaCasse to Dutchess County Sheriff, dated October 12, transmitting warrant of ejectment), *and* Dkt. 106-6 (October 14 letter from Ms. LaCasse's attorney referencing Sheriff's Department's review of the warrant and refusal to execute it). We are, moreover, concerned about the Sheriff's Office's compliance with court orders, including those of this Court, since it is already acting in violation of the state court ejectment order.

[4] Even if the State had intended to cite a subsequent July 2021 stipulation between Mr. Chrysafis and his tenants, Dkt. 117-6 at 296, the State's standing argument would still lack merit. *See* Dkt. 121. Under that stipulation, the tenants agreed to a money judgment and deferred warrant of eviction, which would be "stayed until 9/1/21," the day after CEEFPA Part A was set to expire. Dkt. 117-6 at 296. Of course, the Extension was then enacted instead—once again staying Mr. Chrysafis's case, in light of the hardship declaration previously filed by his tenants. *See* Dkt. 117-6 at 297-98; *see also* S50001 Part C, Subpart A §§ 1(4), 2-4, 6, 9-10.

5

ignores that Plaintiff LaCasse has *multiple* tenants—some of whom already stopped paying rent, with others primed to follow suit if the moratorium is not enjoined, *see* LaCasse Decl. ¶¶ 13-14. The Extension requires Ms. LaCasse to send notices and lists of legal service providers to those tenants with any written rent demand or written notice required by lease or by law. S50001, Part C, Subpart A § 2. Because this compelled speech "change[s] what [she] would otherwise say," LaCasse Decl. ¶ 14, she has standing to challenge it. *See Guan v. Mayorkas*, 2021 WL 1210295, at *14 (E.D.N.Y. Mar. 30, 2021) ("A plaintiff has standing if he can show *either* that his speech has been adversely affected by the government [action] or that he has suffered some other concrete harm, including non-speech related harms." (citation and internal quotation marks omitted)); *see also Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017) (where parties seek same relief, "the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement" (citation and quotation marks omitted)).

*Finally*, the president of the Rent Stabilization Association of NYC ("RSA") submitted sworn testimony that its budget allocation for litigation expenses is on pace to more than double because of its efforts challenging the moratorium, and that RSA was forced to eliminate resources it provides to members. Strasburg Decl. ¶¶ 8, 13. Such a diversion of RSA's "resources away from its current activities" is precisely the sort of injury that "has been repeatedly held to be independently sufficient to confer organizational standing." *See, e.g.*, *Centro*, 868 F.3d at 111.

**II.     The Extension Is Essentially The Same Law That The Supreme Court Enjoined.**

The State completely ignores Plaintiffs' argument that the Extension reenacts virtually all of CEEFPA Part A's enjoined provisions. Br. 13-15. Nor does the State grapple with the *express* statutory language confirming that the prior moratorium has been "extend[ed]," S50001 § 2, or dispute that Defendant Marks issued official guidance for New York courts confirming the same,

6

Shapiro Decl. Ex. 2 at 1.  And the State fails to engage with the substance of Plaintiffs' argument that the Extension's minor changes do not cure the due process violation.  Br. 16-17.

Instead, the State disingenuously suggests that the Second Circuit's mootness opinion ruled that the Extension remedied CEEFPA Part A's constitutional infirmities.  Opp. 14-15.  Not so.  The Second Circuit concluded that Plaintiffs' due process claim was moot because it involved "expired provisions" of CEEFPA, and that a hearing before this Court would "provide an opportunity to clarify how the new statute will be implemented."  *Chrysafis v. Marks*, 15 F.4th 208, 215 (2d Cir. 2021).  But that Court also made clear that challenges to the continued eviction moratorium, whether "based on the Supreme Court's injunction or any other ground . . . remain for adjudication in the first instance in . . . the District Court."  *Id.* at 215 n.9.  Thus, it is for this Court to decide if the Extension is "merely a renewal of the challenged conduct" that the Supreme Court already enjoined.  *Ala. Ass'n of Realtors v. U.S. Dep't of Health & Hum. Servs.*, 2021 WL 3577367, at *3 (D.D.C. Aug. 13, 2021).  It most definitely is.

### III. The Extension Should Independently Be Enjoined Because Plaintiffs Are Suffering Irreparable Harm And Are Likely To Succeed On the Merits of Their Claims, And The Balance Of Equities Strongly Favors Relief.

#### A. Plaintiffs Will Be Irreparably Harmed If The Extension Is Not Enjoined.

As the Second Circuit has made clear, "it is the *alleged* violation of a constitutional right that triggers a finding of irreparable harm." *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996).  Yet the State ignores this precedent; that this Court previously credited Plaintiffs' showing of irreparable harm, Dkt. 74 at 2, 12; and that the Supreme Court necessarily agreed when it enjoined CEEFPA Part A.  Those harms have only been exacerbated by the Extension.  *See* Br. 10-12.

As it has done throughout this case, the State disingenuously focuses on mere lost rent.  Opp. 17.  Even setting aside that "depriving [landlords] of rent payments with no guarantee of eventual recovery" risks "irreparable harm," the State simply ignores the moratorium's deprivation

7

of "one of the most fundamental elements of property ownership—the right to exclude." *Ala. Ass'n of Realtors*, 141 S. Ct. at 2489. Here, all of the individual Plaintiffs need to reclaim their properties so that they or their immediate family members can live in them.

### B. Plaintiffs Are Likely To Succeed On The Merits Of Their Claims.

#### 1. The Extension Violates Plaintiffs' Procedural Due Process Rights.

Like CEEFPA Part A, the Extension deprives Plaintiffs of "the opportunity to be heard at a meaningful time and in a meaningful manner," *Mathews*, 424 U.S. at 333 (citation and internal quotation marks omitted), and impermissibly permits a tenant to be "a judge in his own case," *Chrysafis*, 141 S. Ct. at 2482; *see also* Br. 18-22.

The State fails even to cite *Mathews* or any of the other key due process cases on which Plaintiffs rely, let alone engage with any of the *Mathews* factors. Indeed, aside from mischaracterizing the Second Circuit's mootness decision, *see supra* Section II, the State's only response is to point to a handful of housing court cases in which courts granted hearings to address the validity of hardship declarations or in which property owners submitted filings disputing those declarations. Opp. 15-16. But, as Plaintiffs explained after Amici tried the same tactic last week (*see* Dkt. 114 at 3-4), that argument only underscores that the courthouse doors are still effectively barred to landlords, since these proceedings are but a miniscule fraction of the more than 150,000 eviction proceedings currently pending in New York courts, as evidenced by the State's own data and Defendant Marks's recent public statements—not to mention the additional proceedings that cannot even be *commenced* because of the moratorium. See Ct. App. Dkt. 152-2 at 3; Ct. App. Dkt. 156. That a small number of landlords managed to navigate the Extension's purported hearing mechanism does not transform it into a process providing a *reasonable* opportunity to be heard,

8

consistent with due process. *See Mathews*, 424 U.S. at 344 ("[P]rocedural due process rules are shaped by . . . the generality of cases, not the rare exceptions.").[5]

### 2. The Extension Violates Plaintiffs' Free Speech Rights.

Because the Extension compels Plaintiffs to "speak a particular message" they would otherwise avoid, it is subject to (and fails) strict scrutiny. *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2371 (2018); *see* Br. 22-24. The State offers no argument to the contrary and again ignores Plaintiffs' cited cases. And, despite asserting that this case is governed by the commercial speech standard in *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 651 (1985), the State does not even try to address Plaintiffs' arguments explaining that *Zauderer* is inapplicable, let alone argue that the Extension would survive strict scrutiny. *See* Br. 23-24.[6]

---

[5] The State also references what it represents are housing court survey data that it "anticipate[s]" it will offer at the November 8 preliminary injunction hearing. Opp. 8 & n.2. Plaintiffs already expressed their intention to object to the admissibility of any such belated proffer. *See* Dkt. 122. Then, literally hours ago, at the deadline for the parties' exchange of final witness lists, the State provided a PDF file, entitled "Initial survey data" (suggesting these data are preliminary), containing a spreadsheet of purported survey results. Admissibility issues aside, these purported survey results appear to *support* Plaintiffs' claims: Even crediting the State's proffer, of the more than 150,000 pending eviction proceedings in the State (not to mention all the other cases that cannot even be commenced due to the moratorium), only 485 landlords have been able to submit the sworn statement necessary to attempt to contest a tenant's unsworn hardship declaration, only 124 have then received a hearing, and only 44 have successfully defeated the tenant's hardship claim. Moreover, the surveys themselves on their face fail to distinguish between residential and commercial eviction proceedings. *See also* S50001, Part B, Subpart A (commercial eviction moratorium with similar hardship declaration scheme, including good-faith attestation requirement for landlords seeking to contest claimed tenant hardship). Because Plaintiffs only challenge the *residential* eviction moratorium, any such aggregate data is useless. Additionally, the results are plainly unreliable: While the State's spreadsheet indicates that no hearings to contest hardship declarations in New York City have been calendared for dates more than three months after the date of filing, Plaintiffs are already aware of at least one such case. Case No. LT-305596-21/NY (New York Cnty. Civ. Ct.), Doc. No. 14 (challenge to hardship declaration filed October 19, 2021, with hearing calendared for January 26, 2022). Given that Plaintiffs were able to identify this error on just a surface-level review of the spreadsheet immediately upon receiving it only hours ago, it seems this supposed summary document is riddled with errors.

[6] The State appears to have erroneously assumed that Plaintiffs invoked their Petition Clause claim as a basis for this preliminary injunction application, *see* Opp. 14, when in fact Plaintiffs simply reserved their rights to pursue that claim on the merits, *see* Br. 22 n.4. To the extent the State suggests that Plaintiffs lack standing to pursue the Petition Clause claim (Opp. 7-11), that argument fails for the same reasons discussed *supra* Section I.

9

### C. The Balance Of Hardships And Public Interest Favor Injunctive Relief.

The State ignores that the Supreme Court has twice enjoined eviction moratoria despite government speculation about public health and economic impact—none of which materialized following the injunction in this very case. Br. 25. Moreover, where the government has been given "additional months to distribute rental-assistance funds," then "[w]hatever interest the [g]overnment had in maintaining the moratorium's original end date" is "diminished." *Ala. Ass'n of Realtors*, 141 S. Ct. at 2489-90. The State concedes that nearly $1 billion in arrearage benefits have already been distributed. Opp. 19. And it simply ignores the protections afforded to tenants under the TSHA. *See id.* at 18-19. The equities clearly favor injunctive relief.

## IV. The State's Abstention Argument Is Meritless.

The State resurrects an abstention argument that this Court already rejected (Dkt. 74 at 9-10) and the Supreme Court did not even deem worthy of addressing when it enjoined CEEFPA Part A. The argument fares no better this time. Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," and this case does not present the "exceptional circumstances" that would warrant "[a]bdication" of that duty. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813-17 (1976); *see also Disability Rights N.Y. v. New York*, 916 F.3d 129, 134 (2d Cir. 2019) (abstention mandated "only when the plaintiff seeks to enjoin ongoing state proceedings" or "failure to [abstain] would result in an ongoing federal audit of state criminal proceedings" (citation and internal quotation marks omitted)). As this Court recognized, "there are no parallel civil or criminal proceedings into which this Court is asked to intrude that could implicate abstention concerns," as Plaintiffs' "chief complaint centers around the absence of such proceedings." Dkt. 74 at 9-10.

## CONCLUSION

Plaintiffs respectfully request that the Court grant their application.

10

Dated: New York, New York
November 4, 2021

           GIBSON, DUNN & CRUTCHER LLP

By:   */s/ Randy M. Mastro*
      Randy M. Mastro
      Akiva Shapiro
      Jessica Benvenisty
      William J. Moccia
      Lauren Myers
      200 Park Avenue
      New York, NY 10166
      Tel.: (212) 351-4000
      rmastro@gibsondunn.com
      ashapiro@gibsondunn.com

*Attorneys for Plaintiffs*