**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
gibsondunn.com

Akiva Shapiro
Direct: +1 212.351.3830
Fax: +1 212.351.6340
AShapiro@gibsondunn.com

July 31, 2023

VIA ECF

Honorable Judge Gary R. Brown
United States District Court
Eastern District of New York
100 Federal Plaza, Courtroom 940
Central Islip, NY 11777-9042

Re:   *Chrysafis v. Marks*, No. 2:21-cv-02516-GRB-AYS

Dear Judge Brown,

We write in response to the Court's July 20 Order directing Plaintiffs to show cause why their application for attorneys' fees in the above-captioned action brought against New York State Chief Administrative Judge Marks, in his official capacity as the state officer charged with implementing an unconstitutional state statute, is not barred by the text of 42 U.S.C. § 1988(b). That provision provides that attorneys' fees are not recoverable in an action against a judicial officer "for an act or omission taken in such officer's judicial capacity." *Id*.

## I.   Judicial Immunity Does Not Apply Because Plaintiffs Sued Chief Administrative Judge Marks In His Non-Judicial, Administrative Capacity.

The identified carveout in the civil rights attorneys' fees statute does not apply here because Plaintiffs did not bring this action against Chief Administrative Judge Marks for any act or omission taken in his judicial capacity, but rather sued him in his administrative capacity as New York State's Chief Administrative Judge. Section 1988(b) therefore poses no barrier to Plaintiffs' application for prevailing party attorneys' fees in this action.

*1. Judicial Immunity from Attorneys' Fees in Context.*   First passed as part of the Civil Rights Attorneys' Fees Awards Act of 1976, *see Connor v. Finch*, 431 U.S. 407, 409 n.1 (1977), Section 1988(b) provides that the prevailing party in an action to enforce certain civil rights laws may collect reasonable attorneys' fees. 42 U.S.C. § 1988(b). In *Pulliam v. Allen*, 466 U.S. 522 (1984), the Supreme Court held—in a suit brought against a state magistrate performing judicial duties (ordering the jailing of an individual for failing to post bond)—that the common law doctrine of "judicial immunity [was] not a bar to prospective injunctive relief against a judicial officer" even when "acting in her judicial capacity," and that "judicial immunity is [also] no bar to the award of attorney's fees under 42 U.S.C. § 1988." *Id*. at 541-44. On those grounds, the Supreme Court affirmed both an injunction issued by the lower courts against the magistrate and an award of attorneys' fees. *Pulliam* thus interpreted Sections 1983 and 1988 to permit both injunctive relief and attorneys' fees in *any* action against a judicial officer, regardless of whether the judicial officer was acting in a judicial or non-judicial capacity. *Pulliam* also noted that it was merely interpreting the statutes, as "it is for Congress,

GIBSON DUNN

July 31, 2023
Page 2

not this Court, to determine whether and to what extent to abrogate the judiciary's common law immunity." *Id*. at 543.

In 1996, Congress accepted the Court's invitation to narrow *Pulliam*'s abrogation of judicial immunity, passing the Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, 110 Stat. 3847 (1996) ("FCIA"). In parallel provisions, the FCIA restored the prohibition on injunctive relief against a judicial officer to § 1983, as well as the prohibition on awarding attorneys' fees against judges in such suits—but, in both instances, only if the judicial officers are sued for actions taken in their "judicial capacity." *Compare id.* § 309(b) (amending § 1988(b) by inserting the phrase "except that in any action brought against a judicial officer *for an act or omission taken in such officer's judicial capacity* such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction"), *with id.* § 309(c) (amending § 1983 by inserting the phrase "except that in any action brought against a judicial officer *for an act or omission taken in such officer's judicial capacity*, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable"). Thus, it is clear that "judicial capacity" means the same thing in both the Section 1983 injunctive relief context and in the Section 1988 attorneys' fees context, and in both instances only suits brought against a judicial officer acting in a "judicial capacity" come within the scope of the carveouts. As discussed below, this is not a "judicial capacity" lawsuit, as confirmed by the fact (among others) that the Supreme Court issued an injunction against Judge Marks in this case.

Legislative history confirms that Congress's aim in passing the FCIA was limited to protecting judges' ability to perform judicial acts like deciding cases. In a report, the Senate Judiciary Committee noted that, in the years following the *Pulliam* decision, "thousands of Federal cases ha[d] been filed against judges and magistrates." S. Rep. 104-366, 1996 WL 520492, at *36 (Sept. 9, 1996). The Committee recognized that "the risk to judges of burdensome litigation create[d] a chilling effect that threaten[ed] judicial independence and [could] impair the *day-to-day decisions of the judiciary in* close or controversial *cases*." *Id*. (emphasis added). Seeking to mitigate these risks, Congress passed the FCIA to codify a "general prohibition against holding judicial officers (justices, judges and magistrates) liable for costs, including attorney's fees," but only "for acts or omissions taken in their judicial capacity." *Id*.

**2. The "Judicial Capacity" Inquiry**. That a defendant is a judicial officer alone is insufficient to support the conclusion that his actions are taken in a "judicial capacity." *See Forrester v. White*, 484 U.S. 219, 227 (1988) ("Here, as in other contexts, immunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches."). This is because, as the Supreme Court has recognized, there is "an intelligible distinction between judicial acts"—those taken in a judge's judicial capacity—"and the administrative, legislative, or executive functions that judges *may on occasion be assigned by law to perform*." *Id*. (emphasis added). Courts nationwide have identified a long list of tasks that fall within the latter category, and thus do not entitle a judge to immunity from an injunction or an application

# GIBSON DUNN

July 31, 2023
Page 3

for attorneys' fees. These include a judge "acting in an administrative capacity" when he demoted and discharged a probation officer, *id.* at 229; a judge engaged in "rulemaking" and enforcement, *Supreme Court of Virginia v. Consumers Union of United States, Inc.*, 446 U.S. 719, 731 (1980); judges who were members of a screening committee responsible for certifying private attorneys as eligible for participation in state's assigned-counsel plan, *Mitchell v. Fishbein*, 377 F.3d 157, 174 (2d Cir. 2004); and a state court judge's traditional holiday season "moratorium on the issuance of writs of restitution" from December 15 through January 2, *Morrison v. Lipscomb*, 877 F.2d 463, 464, 466 (6th Cir. 1989); *see also, e.g.*, *Farrell v. Burke*, 1998 WL 751695, at *4 (S.D.N.Y. Oct. 28, 1998) (explaining that "absolute immunity protects officials in their adjudicative or prosecutorial functions only," and thus declining to grant immunity on the pleadings where complaint did not indicate whether parole officer imposed special conditions on parolee as part of "an adjudicative process" or as "a purely administrative matter"); *Covington v. City of New York*, 916 F. Supp. 282, 288 (S.D.N.Y. 1996) ("[T]he training of assistant district attorneys is regarded as an administrative duty.").

In determining whether a given action is taken in a judicial or non-judicial capacity, "cases have followed a 'functional' approach," under which "immunity analysis rests on functional categories, not on the status of the defendant." *Cleavinger v. Saxner*, 474 U.S. 193, 201 (1985) (citation omitted). Courts look to "the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge," and to "the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009) (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)). Courts also consider whether a given act must be performed by a judge, or whether a non-judicial officer could accomplish the task just as well. *Mitchell v. Fishbein*, 377 F.3d 157, 174 (2d Cir. 2004) (quoting *Ex parte Virginia*, 100 U.S. 339, 348 (1879), in which a judge was found not to be immune "from a claim of racial discrimination in the preparation of general jury lists to affect all future trials," a "'ministerial'" task that "'might as well have been committed to a private person as to one holding the office of a judge'"). Administrative, legislative, and executive tasks may be "quite important in providing the necessary conditions of a sound adjudicative system," but they are "not themselves judicial or adjudicative." *Forrester*, 484 U.S. at 229.

**3. Plaintiffs' Lawsuit and the Supreme Court Injunction Enjoining Judge Marks's "Enforcement" of CEEFPA Part A**. In the instant action, Plaintiffs (New York State property owners who rented units to tenants) brought suit under 42 U.S.C. § 1983, challenging the constitutionality of Part A of New York State's COVID-19 Emergency Eviction and Foreclosure Prevention Act of 2020 ("CEEFPA"), on the grounds that it denied property owners their procedural due process right to challenge declarations of COVID-19 hardship filed by tenants—which declarations automatically stayed eviction proceedings—and violated other constitutional rights. Dkt. 1 (Complaint) at 3-4. The Eleventh Amendment prevented Plaintiffs from bringing suit directly against the State. *Greater Chautauqua Federal Credit Union v. Marks*, 600 F. Supp. 3d 405, 420 (S.D.N.Y. 2022). Instead, pursuant to the doctrine

# GIBSON DUNN

July 31, 2023
Page 4

established by the Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908), Plaintiffs were required to bring their suit against a "state official" with "some nexus to the challenged violation of federal law, such as a duty to enforce the law." *Id*. at 421 (quoting *Ex parte Young*, 209 U.S. at 156-57); *see also, e.g.*, *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 532 (2021).

In a prior proceeding, Plaintiffs initially brought suit against New York Attorney General Leticia James. *See Chrysafis v. James*, 2:21-cv-0998-SJF-ARL at ECF No. 1 (E.D.N.Y. Feb. 24, 2021). The court granted a motion to dismiss Ms. James, however, after concluding that she was immune from suit under the doctrine of sovereign immunity. *Chrysafis v. James*, 534 F. Supp. 3d 272, 290 (E.D.N.Y. 2021). The court's decision was based on the fact that CEEFPA did not "charge[] the Attorney General with a particular duty to enforce the parts of the statute challenged herein." *Id*. Instead, the court concluded that the statute "*is administered by the New York court system*." *Id*. (emphasis added).

Following the court's decision, Plaintiffs commenced this action against Judge Marks "in his official capacity as Chief Administrative Judge of the Courts of New York State." Dkt. 1 at 1 & ¶ 20. As Plaintiffs alleged, "[i]n that role, [Judge Marks] directs New York's Office of Court Administration and is responsible for . . . implementing and administering CEEFPA Part A." *Id*. ¶ 20. The Complaint detailed, *inter alia*, the actions Judge Marks's Office of Court Administration took—pursuant to the statute's directives, *see id*.—to fulfil its role as the statute's administrator, including mailing declaration forms to tenants, translating the form into numerous languages, and issuing an administrative order directing the courts to conduct residential eviction proceedings in accordance with CEEFPA's provisions. *Id*. at ¶ 21. Plaintiffs made these factual allegations to support having named Judge Marks as the State officer charged with implementing the statute, and thus the proper party to be sued under *Ex parte Young*. *See also id*. ¶ 120 ("Defendants are depriving Plaintiffs of their property rights without providing an adequate procedural remedy—including, for Chief Administrative Judge Marks, by implementing CEEFPA's provisions . . . .").

The State did not move to dismiss the suit against Judge Marks on sovereign immunity grounds, as it had in the earlier case against Ms. James, implicitly conceding that Judge Marks was the properly identified administrator of the challenged State law. Nor did the State move to dismiss or otherwise argue that Judge Marks was immune from a suit for injunctive relief under Section 1983's restriction on the issuance of an injunction against a judicial officer acting in his "judicial capacity"—and for good reason, as discussed in more detail below.

In granting an injunction against Judge Marks in August 2021—specifically, an "order enjoin[ing] the enforcement of" CEEFPA Part A—the U.S. Supreme Court likewise implicitly treated Judge Marks as the properly named administrator of CEEFPA acting in a non-judicial capacity in implementing the statute, and thus both the proper defendant in litigation to enjoin its enforcement and a party not subject to the "judicial capacity" carveout for injunctive relief

GIBSON DUNN

July 31, 2023
Page 5

under Section 1983.  *See Chrysafis v. Marks*, 141 S. Ct. 2482 (2021).  The Second Circuit likewise acknowledged, in remanding the case to this Court for further proceedings following the State Legislature's amendment of CEEFPA to address the Supreme Court's decision, that "the Supreme Court's injunction as to CEEFPA, Part A 2020, remains operative." *Chrysafis v. Marks*, 15 F.4th 208, 215 n.9 (2d Cir. 2021).

***4. Judge Marks's Administration of the Challenged Law Was Not Judicial.***  In administering CEEFPA, Judge Marks exercised "delegated administrative authority"—not judicial authority. *Morrison*, 877 F.2d at 466.  The law tasked Judge Marks's office with, among other things, mailing declaration forms, ECF No. 83-1 at 4 (§ 2), determining how long the courts needed to prepare for compliance with the law, *id.*, and determining whether the hardship declaration form should be translated into additional languages for posting on the court website, *id.* at 7 (§ 10).  These are "administrative" tasks, *Forrester*, 484 U.S. at 227—hence their assignment by the Legislature to Judge Marks in his role as the chief administrator of the New York court system—not judicial ones. *See Chrysafis*, 534 F. Supp. 3d at 290 (CEEFPA "is administered by the New York court system").  Indeed, Judge Marks did not even need to be a judge to complete them (as evidenced by the fact that they were delegated to the *office* he oversaw, rather than to him personally); they "might as well have been committed to a private person as to one holding the office of a judge." *Mitchell*, 377 F.3d at 348.  It would be a bizarre result if the State, sued via one of its officers pursuant to *Ex parte Young*, was shielded from paying attorneys' fees to a prevailing party simply because the officer it tasked with implementing the statute happened to be an administrative judge acting in an administrative capacity.  To conclude that these tasks were "converted into 'judicial acts,'" merely because the administrator of this specific law was a judge "would lift form above substance." *Forrester*, 484 U.S. at 230.  Such a result would, among other things, perversely incentivize states to task judges with implementing statutes that the state believes may be subject to constitutional challenge in order to avoid paying attorneys' fees to a prevailing party—or, worse still, to evade injunctive relief *altogether* under the corresponding judicial immunity carveout in Section 1983.

Moreover, even if Plaintiffs' lawsuit *had* been targeted at specific actions taken by Judge Marks to enforce the law (which it was not), rather than challenging a State legislative enactment on its face and as applied (which it was), those actions *still* would not have qualified as "judicial" in nature.  To enforce CEEFPA, Judge Marks issued an Administrative Order directing the New York courts to conduct residential eviction proceedings in accordance with the statute.  *See* Dkt. 1 ¶ 21.  And, "[i]n furtherance of CEEFPA's requirements," his office posted the hardship declaration form and accompanying translations on the court's website.  *Id.*  These are not actions "normally performed by a judge." *Mireles*, 502 U.S. at 12.  Indeed, the Plaintiffs in this case *never* interacted with Judge Marks in his judicial role.  *Id.*  Judge Marks did not, for example, adjudicate any lawsuit between or involving the parties.  *See Bliven*, 579 F.3d at 211 ("The principal hallmark of the judicial function is a decision in relation to *a particular case*." (emphasis added)).  At most, his conduct consisted of generally

applicable "rulemaking," not "adjudication." *Supreme Court of Virginia*, 446 U.S. at 731. As such, Section 1988(b)'s restriction on the award of attorneys' fees for acts taken by a judicial officer acting in a "judicial capacity" does not apply.

## II. The State Has Forfeited Any Judicial Immunity Argument.

Because the State has never asserted judicial immunity in this action or contended that Section § 1988(b) precludes Plaintiffs' application for attorneys' fees, it has forfeited the issue. CEEFPA's constitutionality has been vigorously litigated since February 2021, *see Chrysafis v. James*, 2:21-cv-0998-SJF-ARL at ECF No. 1 (E.D.N.Y. Feb. 24, 2021), including the specific issue of who the proper defendant would be, *see id*. at ECF No. 27 (motion to dismiss suit against Ms. James on sovereign immunity grounds). The instant action, seeking injunctive relief against Judge Marks in his official capacity, was commenced in May 2021 and litigated to the Supreme Court and back, with the State never once suggesting that judicial immunity might bar the action under Section 1983. Even in opposing Plaintiffs' application for attorneys' fees and costs, the State never argued that Section 1988(b)'s "judicial capacity" carveout applied or that Judge Marks was otherwise entitled to judicial immunity of any kind. "[I]t is a fundamental principle of 'our adversarial system of adjudication' that 'courts normally decide only questions presented by the parties,' and here, neither party addressed [the issue raised by the Court]." *Jusino v. Federation of Catholic Teachers, Inc*., 54 F.4th 95, 105 (2d Cir. 2022) (quoting *Sineneng-Smith*, 140 S. Ct. at 1579); *see also 605 Fifth Property Owner, LLC v. Abasic, S.A*., 2023 WL 4417343, at *2 (2d Cir. July 10, 2023). "Government actors who seek absolute immunity 'bear the burden of showing that public policy requires an exemption of that scope.'" *DiBlasio v. Novello*, 344 F.3d 292, 297 (2d Cir. 2003) (quoting *Butz v. Economou*, 438 U.S. 478, 506 (1978)). Here, whether because it correctly recognized that judicial immunity is not available in this case or for some other reason, the State elected not to assert the defense—either specifically with respect to Plaintiffs' application for attorneys' fees, or at any other point during the two-plus years during which this action has been litigated. Having failed to allege immunity, let alone try to carry its burden in this regard, the State has forfeited any such defense (which is unavailable in any event for the reasons discussed above).

Respectfully submitted,

/s/ *Akiva Shapiro*

Akiva Shapiro

Cc: All counsel of record (via ECF)