FILED
CLERK

1:29 pm, Sep 21, 2023

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
PANTELIS CHRYSAFIS, MUDAN SHI, FENG
ZHOU, AND RENT STABILIZATION
ASSOCIATION OF NYC, INC.,

                  Plaintiffs,

           -against-

LAWRENCE K. MARKS, in his official
capacity as Chief Administrative Judge of the
Court of New York State,

                  Defendant.
-------------------------------------------------------------------X

**MEMORANDUM
AND ORDER**
21-CV-2516 (GRB)(AYS)

**GARY R. BROWN, United States District Judge:**

       Plaintiffs Pantelis Chrysafis, Mudan Shi, Feng Zhou and Rent Stabilization Association

of NYC, Inc. (collectively "plaintiffs") commenced this Section 1983 action against defendant

Lawrence K. Marks, in his official capacity as Chief Administrative Judge of the Court of New

York State ("defendant"), challenging the constitutionality of Part A of the COVID-19

Emergency Eviction and Foreclosure Prevention Act, as amended on May 4, 2021 ("CEEFPA

Part A"). Following approximately three months of litigation in this Court, the Second Circuit,

and the Supreme Court, on August 12, 2021, the Supreme Court enjoined that eviction

moratorium law pending appeal. *Chrysafis v. Marks*, 141 S. Ct. 2482 (2021) (per curiam). As a

result, the New York State Legislature allowed CEEFPA Part A to expire by its own terms on

August 31, 2021. Plaintiffs now move pursuant to 42 U.S.C. § 1988 and Rule 54(d)(2) of the

Federal Rules of Civil Procedure, to recover attorneys' fees and costs to compensate for work

performed and costs expended on this case between April 26, 2021 (the date by which counsel

commenced work in this matter) and August 31, 2021 (the date of CEEFPA Part A's expiration).

For the following reasons, the motion is granted to the extent set forth herein.

**BACKGROUND**

The facts, procedural history and legislative background of CEEFPA Part A are

contained in this Court's Memorandum and Order dated June 11, 2021, familiarity with which is

assumed.  DE 74.

On May 6, 2021, plaintiffs commenced this Section 1983 action challenging  the

constitutionality of CEEFPA Part A.  DE 1.  The initial enactment, Executive Order ("EO") No.

202.8 entered March 20, 2020, imposed a 90-day moratorium on residential evictions.  *Melendez*

*v. City of New York*, No. 20-CV-5301 (RA), 2020 WL 7705633, at *3 (S.D.N.Y. 2020).

Thereafter, the State extended the eviction moratorium and provided more detailed procedures.

*See* DE 74.  On May 4, 2021, the State extended the moratorium (which had been set to expire

on May 1, 2021) to August 31, 2021.  *See* 2021 N.Y. Laws ch. 104; DE 1-1; DE 40-4.  Two days

later, plaintiffs filed the instant § 1983 action seeking preliminary and permanent injunctive

relief as against CEEFPA.  DE 1.  The following day, plaintiffs moved by order to show cause

for a preliminary injunction.  DE 7.  Briefing on the motion was completed on May 26, 2021.

DE 7-14, 29-30, 33-36, 46-47.  In addition, defendants filed four motions for pre-motion

conferences to dismiss the complaint.  DE 52, 53, 54, 59.  The Court held a preliminary

injunction hearing, which was consolidated with the trial on the merits, on June 1, 2021, at which

two plaintiffs and an administrative officer of the Housing Court testified.  DE 65.  On June 11,

2021, the Court denied the motion for injunctive relief based on, *inter alia*, plaintiffs' failure to

show a likelihood of success on their claims.  DE 74.  The Court directed entry of final judgment

on the merits in favor of defendant.  *Id*.  On June 14, 2021, plaintiffs sought an injunction

pending appeal from this Court, which the Court denied.  *See* Order dated June 15, 2021.

On June 16, 2021, plaintiffs filed a Notice of Appeal.  DE 78.  Plaintiffs moved for an

emergency injunction pending appeal, which the Second Circuit denied on July 26, 2021.  DE

80.  Plaintiffs appealed, and on August 12, 2021, the Supreme Court granted plaintiffs'

application and enjoined CEEFPA Part A pending final disposition of appellate proceedings in

the Second Circuit and the Supreme Court.  *Chrysafis*, 141 S. Ct. at 2485 (2021).  CEEFPA Part

A expired by its own terms on August 31, 2021.  New York State enacted a new moratorium

statute on September 1, 2021, that sought to "modify [CEEFPA Part A] to address the Supreme

Court's due process concern."  S50001 § 2.  On September 29, 2021, the Second Circuit held

that the expiration of CEEFPA Part A and the subsequent enactment of the amended moratorium

statute mooted plaintiffs' appeal.  *Chrysafis v. Marks*, 15 F. 4th 208, 211 (2d Cir. 2021).

Plaintiffs now seek an award of $754,912.41, comprised of (i) attorneys' fees

($677,584.50) and costs ($7,251.66) for work performed by Gibson, Dunn & Crutcher LLP

("Gibson Dunn") on the underlying litigation; and (ii) attorneys' fees for work performed in

connection with their fees application ($70,076.25).  DE 153-1 & 2; DE 153-16.

## DISCUSSION

### A.  Applicable Law

"The general rule in our legal system is that each party must pay its own attorney's fees

and expenses."  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010).  However, 42 U.S.C.

§ 1988(b) provides that:

> In any action or proceeding to enforce a provision of 1981, 1981a, 1982, 1983, 1985 and
> 1986 of this title, . . . title VI of the Civil Rights Act of 1964 . . .  the court, in its
> discretion, may allow the prevailing party, other than the United States, a reasonable
> attorney's fee as part of the costs, except that in any action brought against a judicial
> officer for an act or omission taken in such officer's judicial capacity[1] such officer shall

---

[1] The parties agree that the provision in Section 1988(b) that attorneys' fees are not recoverable in an action against
a judicial officer "for an act or omission taken in such officer's judicial capacity" does not apply here because

not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

42 U.S.C. § 1988(b); *see James v. City of Boise*, 577 U.S. 306, 306 (2016); *see also Fox v. Vice*, 563 U.S. 826, 833 (2011) (holding that Section 1988(b) "allows the award of 'a reasonable attorney's fee' to 'the prevailing party' in various kinds of civil rights cases, including suits brought under § 1983).  "When a plaintiff succeeds in remedying a civil rights violation . . . he [or she] serves 'as a private attorney general,' vindicating a policy that Congress considered of the highest priority." *Fox*, 563 U.S. at 833 (*purgandum*)[2].  As such, "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (*purgandum*); *see Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791 (1989); *see also Agudath Israel of America v. Hochul*, No. 20-cv-04834 (KAM)(RML), 2021 WL 5771841, at *3 (E.D.N.Y. Dec. 6, 2021) (holding "[t]o qualify as a prevailing party, a plaintiff must obtain at least some relief on the merits of his [or her] claim") (*purgandum*).

Where "a party receives a stay or preliminary injunction but never obtains a final judgment, attorney's fees are proper if the court's action in granting the preliminary injunction is governed by its assessment of the merits." *Haley v. Pataki*, 106 F.3d 478, 483 (2d Cir. 1997).  "A determination of whether a court's action is governed by its assessment of the merits requires close analysis of the decisional circumstances and reasoning underlying the grant of

---

defendant was sued not in his judicial capacity, but rather in his administrative capacity as New York State's Chief Administrative Judge.  *See* DE 154; DE 155.

[2] *See Farmers Property and Casualty Ins. Co. v. Fallon*, No. 21-CV-6022 (GRB)(ARL), 2023 WL 4975977, at *3 n.6 (E.D.N.Y. Aug. 3, 2023) (discussing use of "*purgandum*" to indicate the removal of superfluous items for the ease of reading).

preliminary relief." *Id*. (*purgandum*).  Moreover, "a party prevails under § 1988 where it obtains

a preliminary injunction against enforcement of a law that is later amended or appealed."

*HomeAway.com, Inc. v. City of New York*, 523 F. Supp. 3d 573, 584 (S.D.N.Y. 2021) (collecting

cases).

### B.  Prevailing Party

Here, the Supreme Court granted a preliminary injunction against enforcement of

CEEFPA Part A based on its assessment of the merits.  Specifically, the Court found that

CEEFPA Part A's self-certification scheme violated plaintiffs' due process rights.  *Chrysafis*,

141 S. Ct. at 2482.  As the Second Circuit found, in response to the injunction, the New York

State Legislature allowed the challenged statute to expire and replaced it with a new moratorium

law that expressly purported to remove the constitutional infirmity, thus mooting plaintiffs'

claims.  *Chrysafis*, 15 F.4th at 214 (finding the landlords' case "concerns a state legislature's

enactment of a new law, which legislators, aware of the defect identified by the Supreme

Court, *see* S50001, § 1, ¶ 3, explicitly sought to remedy").  That the preliminary injunction

obtained by plaintiffs never ripened into a permanent injunction does not change this result.

*LaRouche v. Kezer,* 20 F.3d 68, 75 (2d Cir. 1994) (holding a "determination of mootness neither

precludes nor is precluded by an award of attorneys' fees").  Although the intervening statutory

change mooted plaintiffs' claims, the Second Circuit nevertheless found that the subsequent

developments did not undermine the continuing force of the Supreme Court's injunction of

CEEFPA Part A.  *Chrysafis*, 15 F.4th at 215 n.9 (stating that "even though the Landlords'

pending due process claims are moot, the Supreme Court's injunction as to CEEFPA Part A

2020, remains operative").

Inasmuch as plaintiffs have "neutralized and then caused to be superseded a law [they] persuasively argued was unconstitutional," and the Supreme Court's injunction "was never reversed, dissolved, or otherwise undone," plaintiffs have prevailed.  *HomeAway.com Inc.*, 523 F. Supp. 3d at 585 (quoting *Sole v. Wyner*, 551 U.S. 74, 83 (2007)).  As such, plaintiffs are entitled to reasonable attorneys' fees and costs.

### C.  Reasonable Attorney's Fees.

Once a district court determines that a party has prevailed, it must calculate what constitutes a reasonable attorney's fee.  *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992); *see Barfield v. New York City Health and Hosp. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008).  The Court is given "considerable discretion in determining what constitutes a reasonable attorney's fee in a given case." *Barfield*, 537 F.3d at 151.  " Both [the Second Circuit] and the Supreme Court have held that the lodestar – the product of a reasonably hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee." *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (*purgandum*).  "The lodestar figure includes most, if not all, of the relevant factors constituting a reasonable' attorney's fee. *Perdue*, 599 U.S. at 553 (*purgandum*); *see also Millea*, 658 F.3d at 167.  "[T]he lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue,* 599 U.S. at 551.  "The reasonable hourly rate is the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Lilly v. City of New York*, 934 F.3d 222, 231 (2d Cir. 2019).

"The burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed." *Maldonado v. Srour*, No. 13-CV-5856

(ILG)(JO), 2016 WL 5864587, at *1 (E.D.N.Y. Oct. 6, 2016). "The moving party 'must support its application by providing contemporaneous time records that detail "for each attorney, the date, the hours expended, and the nature of the work done." *Riley v. City of New York*, No. 10-V-2513 (MKB), 2015 WL 9592518, at *2 (E.D.N.Y. Dec. 31, 2015) (quoting *New York Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)). "District courts have broad discretion, using their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of each component of a fee award." *Feltzin v. Union Mall LLC*, 393 F. Supp. 3d 204, 212 (E.D.N.Y. 2019) (*purgandum*).

Plaintiffs request $677,584.50 in fees for the merits-stage work of its counsel Gibson Dunn performed between April 26, 2021 and August 31, 2021 as set forth below:

| Timekeeper | Hours | Requested Rate | Requested Fees |
|---|---|---|---|
| *Partners* | | | |
| Randy M. Mastro | 97.7 | $550.00 | $53,735.00 |
| Akiva Shapiro | 318.8 | $550.00 | $175,340.00 |
| *Senior Associates* | | | |
| Jessica C. Benvenisty | 280.9 | $375.00 | $105,337.50 |
| William J. Moccia | 274.2 | $375.00 | $102,825.00 |
| *Midlevel Associates* | | | |
| Erich A. Bruhn | 217.4 | $287.50 | $62,502.50 |
| Lauren K. Myers | 182.9 | $287.50 | $52,583.75 |
| Seton Hartnett O'Brien | 168.9 | $287.50 | $48,558.75 |
| *Junior Associates* | | | |
| Lavi M. Ben Dor | 142.6 | $200.00 | $28,520.00 |
| Bina Nayee | 54.7 | $200.00 | $10,940.00 |
| Maxwell A. Peck[1] | 159.3 | $200.00 | $31,860.00 |
| *Other Timekeepers* | | | |
| Angel S. Arias | 8.5 | $90.00 | $765.00 |
| LaToya A. Best | 11.6 | $90.00 | $1,044.00 |
| Laura M. Coppola | 9.9 | $90.00 | $891.00 |
| Leigh Fanady | 29.8 | $90.00 | $2,682.00 |

DE 153-1 at 13; DE 153-2 ¶ 10. Defendant contends that both the requested hourly rates and claimed hours are excessive. DE 153-13 at 7-19.

### (1) Reasonable Hourly Rates

The Second Circuit instructed district courts to consider "all case-specific variables" including the factors set forth in *Johnson v. Georgia Highway Express, Inc*, 488 F.2d 714 (5th Cir. 1974)[3] in determining the reasonable hourly rate. *Lilly,* 934 F.3d at 230. However, the Court "need not robotically recite and make separate findings as to all twelve of the Johnson factors." *Torcivia v Suffolk County*, 437 F. Supp. 3d 239, 251 (E.D.N.Y. 2020) (*purgandum*). This Court also follows the Second Circuit's "forum rule," which "generally requires use of the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009). Fees should not be awarded at higher out-of-district rates unless "a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Id*. at 172.

Under the "forum rule," this Court uses the prevailing hourly rate in the Eastern District of New York in calculating the reasonable hourly rate. *Torcivia*, 437 F. Supp.3d at 251. Notably, in light of the numerous factors that courts in this circuit consider to determine a reasonable hourly rate, "the range of reasonable attorney fee rates in this district varies depending on the type of case, the nature of the litigation, the size of the firm, and the expertise of its attorneys." *Siracuse v. Program for the Dev. of Human Potential*, No. 07 CV 2205 (CLP), 2012 WL 1624291, at *30 (E.D.N.Y. Apr. 30, 2012). In Section 1983 cases, courts have

---

[3]The twelve *Johnson* factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Lilly,* 934 F.3d at 230.

awarded fees in the Eastern District of New York at an hourly rate of $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $60 to $100 for paralegals, and "fees in complex cases . . . have ranged between $400-$600 per hour for partners, $200 to $400 per hour for associates and $75-$100 for paralegals." *Agudath Israel of America*, 2021 WL 5771841, at *5 (*purgandum*); *see also Cidoni v. Woodhaven Center of Care*, No. 2:21-cv-03654 (JMA)(JMW), 2023 WL 2465167, at *4 (E.D.N.Y. Mar. 10, 2023) ("As recently as January 2023, the Eastern District has held that in this district, hourly rates generally range from $300 to $450 for partner-level attorneys, and $200 to $325 for those with less experience") (*purgandum*) (collecting cases); *cf. Ingevity Corp. v. Regent Tek Indus., Inc.*, No. 22-CV-565 (NGG)(RLM), 2023 WL 2553896, at *11 (E.D.N.Y. Mar. 17, 2023) (holding that "[i]n this District, approved hourly rates for attorneys normally range from $200 to $450 for partners in law firms, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for paralegals").

"The highest rates in this district are reserved for expert trial attorneys with extensive experience before the federal bar, who specialize in the practice of civil rights law and are recognized by their peers as leaders and experts in their fields." *Feltzin*, 393 F. Supp. 3d at 212. Such attorneys have typically shown involvement in teaching and speaking engagements and other academic and professional achievements, writings published in scholarly and professional journals, or appearances as an expert in the media, etc. *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 300 (E.D.N.Y. 2012); *see, e.g., Agudath Israel of America*, 2021 WL 5771841, at *5 (awarding counsel with over twenty-five years of experience, and was a former Deputy Attorney General of the State of New York, an hourly rate of $550 who stated that "he has devoted a substantial portion of his practice to pursuing Free Exercise claims" and awarding

counsel, a partner and head of the Appellate and Supreme Court practice at his firm with over fifteen years' experience, and who served as the Solicitor General for the State of Wisconsin, an hourly rate of $500 where the Court found he did not specialize in civil rights litigation).

The Court has carefully considered the case-specific variables and the prevailing hourly rates discussed above to determine the reasonable hourly rate for each timekeeper.  Plaintiffs state that the rates requested on this motion are significantly discounted from Gibson Dunn's customary rates, DE 153-2 ¶ 11.  Upon review of the declaration and exhibits in support of plaintiffs' motion for attorneys' fees, however, the Court finds that in certain instances, the rates requested exceed the prevailing hourly rates in the Eastern District of New York.  The Court addresses each category of timekeepers in turn.

First, Randy M. Mastro, a former partner of Gibson Dunn, chair of the firm's litigation practice for over 20 years, and lead counsel in this case was admitted to practice in New York and New Jersey in 1982.  DE 153-2, ¶ 22.  Mr. Mastro has extensive experience litigating constitutional issues and challenges to government action in New York, and has argued more than 100 appeals in state and federal court.  *Id.*  Mr. Mastro has substantial constitutional, government enforcement, and appellate litigation experience and was twice named (jointly with Akiva Shapiro) Litigator of the Week by *The American Lawyer*.  *Id.* ¶ 24.  Unquestionably, Mr. Mastro would be viewed as a leader and expert in Section 1983 litigation amongst his peers. Cognizant that highest rates in the Eastern District of New York for civil rights claims are reserved for counsel "who specialize in the practice of civil rights law and are recognized by their peers as leaders and experts in their fields," *Agudath Israel of America*, 2021 WL 5771841, at *7, the Court finds that the requested $550 is an appropriate hourly rate for Mr. Mastro.

Akiva Shapiro, a litigation partner at Gibson Dunn, chair of the firm's New York Administrative Law and Regulatory Practice Group, and member of the firm's Appellate and Constitutional Law Practice Group has been practicing for approximately fourteen years.  DE 153-2, ¶ 23.  Mr. Shapiro has significant experience litigating constitutional issues and challenges to government action in New York and federal courts, including the United States Supreme Court.  *Id*.  Mr. Shapiro has not practiced as long as Mr. Mastro and has not indicated the depth of his specialty in civil rights law, but in consideration of his appellate litigation experience and qualifications, the Court finds a reasonable rate is $450 per hour, which represents the higher end of awarded fees in recent Section 1983 cases in the Eastern District of New York.  *See Cidoni*, 2023 WL 2465167, at *4 (observing that this District has found $400 per hour appropriate for partners with more than fourteen years' experience and awarding $450 to founding and sole partner of firm in discrimination case).

Next, both Jessica C. Benvenisty and William J. Moccia have over ten years of experience.  DE 153-2, ¶¶ 25-26.  Ms. Benvenisty was a senior litigation associate at the time she left the firm and her practice included constitutional litigation and challenges to government action.  *Id*.  Both Ms. Benvenisty and Mr. Moccia  were included in the *Best Lawyers: Ones to Watch in America* for her work in Commercial Litigation and his work in Appellate Practice and Commercial Litigation.  *Id*.  Based on their experience and qualifications, the Court finds that $325, which represents the higher end of awarded fees in recent Section 1983 cases in the Eastern District of New York for senior associates, an appropriate hourly rate.

With respect to the three mid-level associates, Seton Hartnett O'Brien was admitted to practice in New Jersey in 2017 and in New York in 2019.  DE 153-2, ¶ 27.  Ms. O'Brien's practice included constitutional and appellate litigation and challenges to government action in

New York.  *Id*.  Lauren Myers was admitted to practice in New York in 2018, and her practice included complex commercial litigation and challenges to government action in New York City. DE 153-2, ¶ 28.  Erich A. Bruhn was admitted to practice in New York and the District of Columbia in 2020, and his practice included constitutional and appellate litigation and challenges to government action in New York.  DE 153-2, ¶ 29.  The Court finds that Ms. O'Brien, Ms. Myers, and Mr. Bruhn's requested fees of $287.50,  *id.* ¶ 10, are more than the prevailing rate for associates at their level of experience and accordingly reduces the hourly fees to $250.

Finally, the motion seeks fees (1) for work performed by then-junior associates Bina Nayee, Maxwell A. Peck, and Levi M. Ben Dorr at an hourly rate of $200; and (2) for work/assistance with filings and organization of documents by paralegals Angel S. Arias and Leigh Fanady and managing and assistant managing attorneys Laura M. Coppola and LaToya A. Best at an hourly rate of $90.  DE 153-2, ¶¶ 10, 30.  The Court finds that Ms. Nayee, Mr. Peck, and Mr. Ben Dorr's requested fees of $200,  *id.* ¶ 10, are more than the prevailing rate for associates at their level of experience and accordingly reduces the hourly fees to $150.  The Court finds the hourly rate of $90 for the remaining paralegals and managing attorneys who assisted with filing and organization of documents to be appropriate and awards them $90 per hour.

### (2) Reasonable Number of Hours Expended

After assessing the reasonableness of the hourly rates, "[a] court determines whether the hours claimed by the prevailing side were reasonably expended, and adjusts the award accordingly."  *Holick v. Cellular Sales of N.Y., LLC*, 48 F.4th 101, 106 (2d Cir. 2022) (*purgandum*).  "The party seeking attorney's fees also bears the burden of establishing that the

number of hours for which compensation is sought is reasonable." *Stratakos v. Nassau County*,
574 F. Supp. 3d 154, 160 (E.D.N.Y. 2021) (*purgandum*).

A courts must use its experience to exclude hours that are "excessive, redundant, or
otherwise unnecessary," and in dealing with such surplusage, have discretion simply to deduct a
reasonable percentage of the number of hours claimed. *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149,
173 (2d Cir. 1998) (*purgandum*); *see also Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir.
1994) (holding "[w]e do not require that the court set forth item-by-item findings concerning
what may be countless objections to individual billing items"); *Reiter v. Maxi-Aids, Inc.*, No. 14-
CV-3712 (SJF)(GRB), 2019 WL 1641306, at *5 (E.D.N.Y. Apr. 16, 2019) (holding "[i]t is well-
established that, given the impracticality of a line-by-line review of individual records, a district
court may exercise its discretion and use a percentage reduction as a practical means of trimming
fat from a fee application"). For example, in *Matusick v. Erie County Water Authority*, the
Second Circuit upheld a district court's 50 percent across-the-board reduction of hours in light of
"concerns regarding unspecified conferences, telephone calls, email correspondence, and
reviews." 757 F.3d 31, 64-65 (2d Cir. 2014) (*purgandum*); *see also Francois v. Mazer*, 523 F.
App'x 28, 29 (2d Cir. 2013) (upholding 40 percent across-the-board reduction in hours); *Kirsch*,
148 F.3d at 173 (upholding "20% reduction for vagueness, inconsistencies, and other
deficiencies in the billing records"). In doing so, however, courts need not become "green-
eyeshade accountants" or look to "achieve auditing perfection." *Fox*, 563 U.S. at 838.

Moreover, "a district court has discretion to reduce requested attorneys' fees where the
prevailing party assigned an inordinate number of attorneys to litigate the action." *Houston v.
Cotter*, 234 F. Supp. 3d 392, 404 (E.D.N.Y. 2017) (*purgandum*); *see, e.g., Lochren v. County of
Suffolk*, 344 F. App'x 706, 709 (2d Cir. 2009) (affirming a 25 percent cut "because plaintiffs

13

overstaffed the case, resulting in the needless duplication of work and retention of unnecessary personnel"); *American Lung Ass'n v. Reilly*, 144 F.R.D. 622, 627 (E.D.N.Y. 1992) (determining that the "use of so many lawyers for relatively straightforward legal tasks was excessive and led to duplication of work," and reducing 40% of plaintiffs' attorneys' hours); *see also National Helicopter Corp. of Am. v. City of N.Y.*, No. 96 CV 3574 SS, 1999 WL 562031, at *7 (S.D.N.Y. July 30, 1999) (Sotomayor, J.) ("It is also apparent that this matter was staffed with more attorneys, at higher rates, than necessary and that in certain respects, these attorneys either duplicated each other's efforts or performed services unnecessary to this litigation.").

Finally, the Second Circuit has held that determining reasonable hours expended is "best made by the district court on the basis of its own assessment of what is appropriate for the scope and complexity of the particular litigation." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983); *see Lore v. City of Syracuse*, 670 F.3d 127, 175 (2d Cir. 2012) (holding that "the district court, which is intimately familiar with the nuances of the case," is in the best position to determine an appropriate fees award).

Plaintiffs assert that its counsel at Gibson Dunn reasonably expended 1,957.20 hours between April 26, 2021 and August 31, 2021, including *pro bono* work performed for this matter from May 3, 2021 through August 31, 2021. DE 153-1; DE 153-2. Defendant argues that the hours claimed by plaintiffs are excessive. DE 153-13. Upon review of the billing records, the Court agrees and finds that the number of hours expended by Gibson Dunn on this litigation to be unreasonably excessive for several reasons.

First, a relatively large number of attorneys and support staff were assigned to this matter, including two partners, eight associates and four other timekeepers. This is an excessive number, given that the two partners have significant experience in litigating constitutional issues

and appellate practice, and the two senior associates have substantial experience as well.  When

considering the reasonableness of counsel's claimed number of hours, "a district court has

discretion to reduce requested attorneys' fees where the prevailing party assigned an inordinate

number of attorneys to litigate the action."  *Houston*, 234 F. Supp. 3d at 404 (*purgandum*); *see,*

*e.g., Lochren*, 344 F. App'x at 709 (affirming a 25 percent cut "because plaintiffs overstaffed the

case, resulting in the needless duplication of work and retention of unnecessary personnel");

*Struthers v. City of New York*, No. 12-CV-242 (JG), 2013 WL 5407221, at *8-9 (E.D.N.Y. Sept.

25, 2013) (reducing fees because the fees requested for responding to motion papers were

"excessive"); *American Lung Ass'n v. Reilly*, 144 F.R.D. at  627; *see also National Helicopter*

*Corp. of Am.*, 1999 WL 562031, at *7.

  A review of the billing records indicates that staffing this litigation with an inordinate

number of attorneys resulted in a duplication of efforts and excessive communication with co-

counsel.  For example, the timesheets show that the attorneys billed a great deal of time

conferencing and corresponding among themselves and reviewing documents.  DE 153, Exs. A-

C (Multiple entries throughout the billing records included, "Attend team strategy call regarding

next steps;" "Participate in internal team call regarding next steps;" "Conference with team;"

"Correspondence with A. Shapiro and team regarding revising papers;" "Correspondence with

team regarding refiling;" "Communications with Gibson Dunn team re: strategy and tasks for;"

"Various correspondences with team members;"  "Participate in team strategy call;"

"Correspondence with internal team;" "Review and respond to team communications regarding

case progress").  Courts have generally found that "[a]n across-the-board reduction is . . .

appropriate where the records demonstrate excessive communication with co-counsel."

*Hargroves v. City of N.Y.*, Nos. 03-CV-1668; 4646; 3869; 5323 (RRM)(VMS), 2014 WL

1271039, at *6 & n.9 (E.D.N.Y. Mar. 26, 2014) (*purgandum*); *see, e.g., Grant v. Lockett*, 605 F.

Supp. 3d 399, 407-08 (N.D.N.Y. 2022) (reducing hours for excessive time expended in

reviewing documents and conferencing amongst multiple attorneys); *Pope v. County of Albany*,

No. 1:11-CV-0736 LEK/CFH, 2015 WL 5510944, at *13 (N.D.N.Y. Sept. 16, 2015) (reducing

attorneys' fees requested after determining there was a "large pattern of consistent overstaffing,"

including the "proliferation of intra-office conferences").  In addition, the timesheets reflect

instances of significant overlap of efforts by multiple attorneys.  For example, from April 26,

2021 to May 6, 2021, Mr. Mastro, Mr. Bruhn, Ms. Benvenisty, Ms. Nayee, Ms. Myers, Mr. Peck,

Mr. Shapiro, Ms. Coppola spent over 120 hours conferencing, preparing, revising and filing the

complaint.  DE 153-4. *See Shim v. Millenium Group*, No. 08-CV-2772493 (FB)(VVP), 2010

WL 2772493, at *5 (E.D.N.Y. June 21, 2010), *adopted by* 2010 WL 2772342 (E.D.N.Y. July 12,

2010) (highlighting that over 100 hours devoted by three different attorneys to draft a complaint

was inefficient).

Notably, during this lawsuit the staffing of this matter was top-heavy.  Nearly 50% of the

total hours were billed by two partners and two senior associates.  Between April 26, 2021 and

August 31, 2021, Mr. Mastro, Mr. Shapiro, Ms. Benvenisty and Mr. Moccia billed a total of

971.6 hours of the 1957.20 total billed hours.  DE 153-2.  That said, the Court acknowledges that

the litigation's initial papers, motions for preliminary relief, hearings and appeals focused on

constitutional and statutory questions which lent itself to heavy hours by seasoned attorneys

representing plaintiffs.  However, there were instances in the billing records that reflected work

that could have been handled by attorneys with lower billing rates, particularly with respect to

case filing and other pretrial tasks which did not require the expertise of such seasoned attorneys,

as well as the fee application itself.

16

Although it is clear that it is the plaintiffs' "prerogative to commission or to approve top-heavy staffing" on a matter, in fee-shifting cases, the governing test of reasonableness is objective; it is not dictated by a particular client's subjective desires or tolerance for spending. The test is whether the plaintiff(s) spent the minimum necessary to litigate the case effectively." *HomeAway.com, Inc.*, 523 F. Supp. 3d at 592 (*purgandum*).  Recognizing that an objectively reasonable client may prefer that more hours be billed to cost-effective associates, many courts in this circuit reduce fee awards where hours recorded fall heavily onto partners and senior associates billing at high rates. *See id*. (collecting cases).

Further, the Court finds that a reduction in hours is appropriate based on vague and block-billed time entries.  For example, there were numerous vague entries such as "Work on various issues going forward," "Emails regarding status," "Work on various issues," and "Work on letter to court."  DE 153, Exhs. A, B, C.  Additionally, many hours billed were attributed solely to "Prep for hearing," "Work on hearing," "Prepare for hearing," and "Work on hearing issues," without more specification. *Id.*  "Courts look unfavorably on such vague entries, because they limit courts' ability to decipher whether the time expended has been reasonable." *Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona*, No. 07-CV-6304 (KMK), 2021 WL 1222159, at *9 (S.D.N.Y. Mar. 31, 2021) (*purgandum*); *see Seong Soo Ham v. Sushi Maru Express Corp.*, No. 15-CV-6138, 2017 WL 9482112, at *3 (E.D.N.Y. Aug. 18, 2017), *adopted by* 2017 WL 4023131 (E.D.N.Y. Sept. 13, 2017), *aff'd,* 736 F. App'x 19 (2d Cir. 2018) (excluding time for vague entries such as reviewing "recent case law" and "various emails" and a conference with [colleague] re status"); *see, e.g., Kirsch*, 148 F.3d at 172 (affirming 20% reduction in fees due to, *inter alia*, entries that were "too vague to sufficiently document the hours claims"); *Anderson v. County of Suffolk*, No. CV-09-1913(GRB), 2016 WL

1444594, at *6 (E.D.N.Y. Apr. 11, 2016) (noting that courts "have imposed reductions as high as 40% based solely on vague billing entries") (collecting cases).

Relatedly, although some time entries submitted are fairly specific and note tasks completed, a number of entries fail to delineate the time spent on each discrete task, thus hindering the Court's ability to assess whether the hours are reasonable, especially where the number of hours blocked were over five hours and covered time expended on multiple tasks. DE 153, Exhs. A, B, C.  "While it is unnecessary for [fee applicants] to identify with precision the amount of hours allocated to each individual task, attorneys seeking reimbursement must provide enough information for the [c]ourt and the adversary, to assess the reasonableness of the hours worked on each discrete project." *Village of Pomona*, 2021 WL 1222159, at *9 (*purgandum*).  In general, courts disfavor block billing but it "is most problematic where large amounts of time (e.g., five hours or more) are blocked billed," thereby "meaningfully cloud[ing] a reviewer's ability to determine the projects on which significant legal hours were spent." *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 53 (S.D.N.Y. June 15, 2015).  Hence, where counsel relies on vague entries or block billing practices which make it difficult for a court to determine the reasonableness of the hours expended, an across-the-board reduction is warranted.  *See Ortiz v. City of New* York, 843 F. App'x 355, 360 (2d Cir. 2021) (holding "[w]hen there are problems with billing records, such as vague entries or block-billing, we have approved the use of percentage cuts as a practical means of trimming fat from a fee application") (*purgandum*).

In sum, for the reasons discussed above, the Court finds that an across-the-board reduction of 40% of the hours billed by plaintiffs' counsel is appropriate and will serve as a

18

reasoned estimate of the excessive or unidentifiable charges and other issues regarding the number of hours billed in this matter.

### (3) Summary of Reasonable Attorneys' Fees for Underlying Litigation

Applying the rates and reductions outlined above, and excluding the instant fee application (discussed below), the Court awards plaintiffs attorneys' fees in the total amount of $347,264.70 for the underlying litigation as follows:

| Timekeeper | Reasonable Hours | Reasonable Rate | Reasonable Fees |
|---|---|---|---|
| Randy M. Mastro | 58.62 | $550 | $32,241.00 |
| Akiva Shapiro | 191.28 | $450 | $86,076.00 |
| Jessica C. Benvenisty | 168.54 | $325 | $54,775.50 |
| William J. Moccia | 164.52 | $325 | $53,469.00 |
| Erich A. Bruhn | 130.44 | $250 | $32,610.00 |
| Lauren K. Myers | 109.74 | $250 | $27,435.00 |
| Seton H. O'Brian | 101.34 | $250 | $25,335.00 |
| Lavi M. Ben Dor | 85.56 | $150 | $12,834.00 |
| Bina Nayee | 32.82 | $150 | $ 4,923.00 |
| Maxwell A. Peck | 95.58 | $150 | $14,337.00 |
| Angel S. Arias | 5.10 | $ 90 | $     459.00 |
| Latoya A. Best | 6.96 | $ 90 | $     626.40 |
| Laura M. Coppola | 5.94 | $ 90 | $     534.60 |
| Leigh Fanady | 17.88 | $ 90 | $   1,609.20 |
| **TOTAL** | **1174.32** | | **$347,264.70** |

### D.  Fees on Fees Application

In their initial fees application, plaintiffs seek $50,985.00 in attorneys' fees for 139.6 hours incurred in drafting and submitting the instant fee petition in connection with their fee recovery work on this matter from January 31, 2020 through November 15, 2022.  DE 153-2 at

9-11, Ex. J.  Plaintiffs' initial fee application reflects the efforts of two partners, one senior

associate, and three midlevel associates as follows.  *Id*.

| Timekeeper | Hours | Requested Rate | Requested Fees |
|---|---|---|---|
| *Partners* | | | |
| Randy M. Mastro | 3.5 | $550.00 | $1,925.00 |
| Akiva Shapiro | 17.7 | $550.00 | $9,735.00 |
| *Senior Associates* | | | |
| William J. Moccia | 60.4 | $375.00 | $22,650.00 |
| *Midlevel Associates* | | | |
| Erich A. Bruhn | 16.9 | $287.50 | $4,858.75 |
| Catherine H. McCaffrey[5] | 14.7 | $287.50 | $4,226.25 |
| Seton Hartnett O'Brien | 26.4 | $287.50 | $7,590.00 |

DE 153-2 ¶ 33.

In their supplemental application, plaintiffs seek an additional $19,091.25 in attorneys'

fees for an additional 55.6 hours incurred for fee recovery work, including preparation for their

reply brief, from November 16, 2022 through January 25, 2023.  DE 153-16, Ex. K.  Plaintiffs'

supplemental fee application reflects the work of one partner, one senior associate, and three

midlevel associates as follows.  *Id*.

| Timekeeper | Hours | Requested Rate | Requested Fees |
|---|---|---|---|
| *Partners* | | | |
| Akiva Shapiro | 6.3 | $550.00 | $3,465.00 |
| *Senior Associates* | | | |
| William J. Moccia | 16.6 | $375.00 | $6,225.00 |
| *Midlevel Associates* | | | |
| Erich A. Bruhn | 9.5 | $287.50 | $2,731.25 |
| Catherine H. McCaffrey[1] | 9.5 | $287.50 | $2,731.25 |
| Seton Hartnett O'Brien | 13.7 | $287.50 | $3,938.75 |

DE 153-16 ¶ 5.  When combined with the $50,985.00 for fee recovery work through November

15, 2022, this yields a request for $70,076.25 in attorney's fees for 195.20 hours expended in

preparing the fee application.  Defendant appears to concede that an award of additional fees in

preparing the application is warranted in this case but contends that the hourly rates and time spent on the motion is excessive.  *See* DE 153-13 at 22-23.

The Second Circuit has held that prevailing parties under Section 1988 are entitled to recover a reasonable attorney's fees for time reasonably expended in preparing and defending a fee petition, known as "fees on fees."  *Hines v. The City of Albany*, 862 F.3d 215, 223 (2d Cir. 2017) (citation omitted).  And as in determining a reasonable number of hours billed in the underlying litigation, the number of hours spent in preparing the fees on fees application cannot be "excessive, redundant, or otherwise unnecessary" taking into account "the unique facts of the case."  *New York Ass'n for Retarded Children v. Cuomo*, Nos. 72 CV 356, 357 (RJD), 2019 WL 3288898, at *9 (E.D.N.Y. July 22, 2019).  To be clear, the hours requested must be reasonable.  *See Weynt v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999); *see Anderson v. County of Suffolk*, No. CV 09-1913 (GRB), 2016 WL 1444594, at *9 (E.D.N.Y. Apr. 11, 2016).  However, "[i]f the fee claims are exorbitant," or if the "time devoted to presenting [the fee petition] is unnecessarily high, the judge may refuse further compensation or grant it sparingly."  *Valley Disposal Inc. v. Central Vermont Solid Waste Mgmt Dist.*, 71 F.3d 1053, 1059 (2d Cir. 1995) (*purgandum*); *see S.F. v. New York City Dep't of Educ.*, No. 21 Civ. 11147 (PAE), 2023 WL 4531187, at *10 (S.D.N.Y. July 13, 2023) (noting in an IDEA case, the fees action did not call upon special expertise and "merely entailed the well-trod and relatively mechanistic process of preparing and defending a fee application"); *Cruceta v. City of New York*, No. 10 Civ. 5059 (FB)(JO), 2012 WL 2885113, at *7 (E.D.N.Y. Feb. 7, 2012) (noting that a "straightforward fee petition" does not require complex legal analysis or multiple attorneys).

**(1) Reasonable Hourly Rates**

As discussed above, the hourly rates requested for counsel's work on the instant fee petition are excessive and shall be reduced accordingly to match the rates that the Court found appropriate for the fees in the underlying litigation. *See New York Ass'n for Retarded Children v. Cuomo*, Nos. 72 CV 356, 357 (RJD), 2019 WL 3288898, at *9 (E.D.N.Y. July 22, 2019) (holding that "[i]n general, hourly billing rates for fees on fees litigation should reflect the billing rates of the underlying fee litigation") (collecting cases).  Applied here, the appropriate hourly rates are (1) $450 for Mr. Shapiro; (2) $325 for Mr. Moccia; and (3) $250 for Ms. Bruhn, Ms. McCaffrey and Ms. O'Brien.

### (2) Reasonable Number of Hours Expended

Upon review, the Court finds that the number of hours plaintiffs billed in preparation of their fee application is well above the norm and replete with examples of top-heavy billing, duplication of efforts, vague entries as well as excessive communication and inefficiencies among attorneys on this matter.  DE 153-2, Ex. J; DE 153-16, Ex. K.  For example, two partners and a senior associate expended an exorbitant 104.5 hours on preparing a fees application, which is excessive given, as a general matter, a fee petition is a relatively straightforward, "ministerial" exercise. *Johnson v. City of New York*, No. 11-CV-06176 (ENV)(CLP), 2016 WL 590457, at *7 (E.D.N.Y. Feb. 11, 2016) (finding fee on fee application overstated the number of hours reasonably expended to advance the fee application "[e]specially given the quite ministerial nature of applications in the context of the overall request for fees").

The billing records indicate a number of overlapping and vague time entries, including repeated entries such as engaged in "Communication re fees request;" "Emails regarding fee application," "Emails regarding fees;" "Email Gibson Dunn team regarding fee application." *Id*.

Moreover, the time entries on 9/15/2022 reflect instances of duplication of efforts and/or overstaffing: (i) Ms. McCaffrey detailed "Confer with W. Moccia, S. O'Brien and A. Shapiro re: briefing for attorneys' fees; (ii) Mr. Moccia detailed "Videoconference with Gibson Dunn team regarding fees application; email Gibson Dunn team regarding fee application; (iii) Mr. O'Brien detailed "Attend zoom meeting with team to discuss fees motion; and (iv) Mr. Shapiro detailed "Attend Gibson Dunn team meeting re: fees application motion.  DE 153-2, Ex. J.

"And while matters where multiple attorneys used are not *per se* unreasonable, courts should consider the number of attorneys assigned to staff particular matters or events in awarding attorneys' fees." *Aptive Environmental, LLC v. Village of East Rockaway*, No. 19-CV-3365 (DRH)(SIL), 2022 WL 5434178, at *5 (E.D.N.Y. July 8, 2022), *adopted by* 2022 WL 4376618 (E.D.N.Y. Sept. 22, 2022) (*purgandum*).  In the instant matter, once defendant filed its opposition to the requested award, plaintiffs utilized five attorneys (including one partner and one senior associate) and billed 55.6 hours drafting a reply brief and supporting documents. Examination of the reply brief shows it is sixteen pages in length, reiterates many of the same arguments as in the initial papers, and the arguments made were fairly typical of an attorneys' fees motion, *viz.* (i) plaintiffs were the prevailing party; (ii) the fee amount was reasonable; (iii) the hours expended were reasonable; (iv) the hourly rates were reasonable; (v) no reduction below the lodestar was warranted; (vi) plaintiffs were entitled to fees on fees; and (vii) there was no dispute that the costs requested were reasonable. *See Struthers,* 2013 WL 5407221, at *8-9 (reducing fees because the fees requested for responding to motion papers were "excessive").

Again, the billing records detail many instances of vague and duplicative work among multiple attorneys.  Most notably, on 12/23/2022, Ms. McCaffrey and Mr. Moccia detailed entries, including "Review opposition to attorneys' fees," and "Review and analyze opposition to

fees motion."   DE 153-17, Ex. K.  On 12/26/2022, Mr. Shapiro billed for "Review fees opposition brief and communications re: reply."  On 12/27/2022, (i) Mr. Bruhn billed for "Review brief in opposition to application for attorneys' fees and costs; (ii) Mr. Moccia billed for "Email A. Shapiro regarding reply for fees,"; (iii) Mr. O'Brien billed for "Review opposition brief to fees motion,"; (iv) Mr. Shapiro billed for "Review opposition brief to fees application and communications re same." *Id.*  And on 12/28/2022, Mr. Bruhn, Ms. McCaffrey, Mr. Moccia, Mr. O'Brien and Mr. Shapiro billed in connection with the Gibson team meeting regarding "strategy for reply brief."  *Id.*  Such entries reflect too many instances of duplicative work in the billing records. *See Gil v. Frantzis*, No. 17-CV-1520 (ARR)(SJB), 2018 WL 4299987, at *3 (E.D.N.Y. Sept. 10, 2018).

In sum, for the reasons discussed above, the Court finds that an across-the-board reduction of 50% of the hours billed by plaintiffs' counsel is appropriate.

### (3)  Summary of Reasonable Attorneys' Fees for Fees Application

Applying the rates and reductions outlined above, the Court awards attorneys' fees for the fees application in the amount of $30,212.50 as follows:

### (a)  Fees From January 31, 2020 through November 15, 2022:

| Timekeeper | Reasonable Hours | Reasonable Rate | Reasonable Fees |
|---|---|---|---|
| Randy M. Mastro | 1.75 | $550 | $    962.50 |
| Akiva Shapiro | 8.85 | $450 | $ 3,982.50 |
| William J. Moccia | 30.20 | $325 | $ 9,815.00 |
| Erich A. Bruhn | 8.45 | $250 | $ 2,112.50 |
| Catherine H. McCaffrey | 7.35 | $250 | $ 1,837.50 |
| Seton H. O'Brian | 13.20 | $250 | $ 3,300.00 |
| **Subtotal**: | | | **$ 22,010.00** |

**(b) Fees From November 16, 2022 through January 25, 2023:**

| Timekeeper | Reasonable Hours | Reasonable Rate | Reasonable Fees |
|---|---|---|---|
| Akiva Shapiro | 3.15 | $450 | $ 1,417.50 |
| William J. Moccia | 8.30 | $325 | $ 2,697.50 |
| Erich A. Bruhn | 4.75 | $250 | $ 1,187.50 |
| Catherine H. McCaffrey | 4.75 | $250 | $ 1,187.50 |
| Seton H. O'Brian | 6.85 | $250 | $ 1,712.50 |
| **Subtotal**: | | | $ **8,202.50** |
| **TOTAL:** | | | **$30,125.00** |

### E.  Plaintiffs' Costs

Plaintiffs seeks costs of $7,251.66.  DE 153-2 ¶¶ 3-8, 12, Exs. B-G.  Defendant has not asserted an objection to plaintiffs' request for an award of $7,251.66 in costs.  DE 153-13.

As for costs for a prevailing plaintiff, the Second Circuit has held that a court will generally award, "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."  *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998).  "Identifiable, out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are generally taxable under § 1988 and are often distinguished from nonrecoverable routine office overhead, which must normally be absorbed within the attorney's hourly rate."  *Id.* (citation omitted); *see Pichardo v. El Mismo Rincon Latino Corp.*, No. 17 CV 7439 (FB)(SJB), 2018 WL 4101844, at *11 (E.D.N.Y. Aug. 7, 2018) *adopted by* 2018 WL 4100480 (E.D.N.Y. Aug. 28, 2018) (noting that "ordinarily, plaintiffs may recover costs relating to filing fees, process servers, postage, and photocopying") (*purgandum*); *HomeAway.com, Inc.*, 523 F. Supp. 3d at 589 (holding "[r]ecoverable disbursements include such items as legal research, photocopying, postage, transportation, and filing fees").  "The fee applicant bears the burden of

adequately documenting and itemizing the costs requested." *LeBlanc-Sternberg*, 143 F.3d at 763; *see Ganci v. U.S. Limousine Serv. Ltd.*, No. 10-CV-3027 (JFB)(AKT), 2015 WL 1529772, at *8 (E.D.N.Y. Apr. 2, 2015).

The Court has reviewed plaintiffs' requests for costs and has carefully examined the billing records.  DE 153-2 ¶¶ 3-8, 12, Exs. B-G.  These costs include expenses for conference calls, certified copies, court fees, document retrieval services, in-house duplication, messenger and courier services, travel, specialized legal research[4] and service of process.  *Id*.  These costs are documented in detailed invoice reports of costs and charges ("billing invoices").  *Id*.  Costs that plaintiffs do not seek to recover as part of the instant matter have been redacted.  *Id*.  The Court finds such documentation to be adequate.  Having reviewed the Shapiro Declaration, DE 153-2, and accompanying billing invoices, the Court determines these costs to be reasonable out-of-pocket expenses.  Accordingly, the Court awards $7,251.66 in costs.

## CONCLUSION

For the reasons set forth herein, the Court awards Gibson Dunn (1) $377,477.20 in attorney's fees and (2) $7,251.66 in costs for a total award of $384,728.86.

Dated:  September 21, 2023, 2023
       Central Islip, New York

                           /s/ Gary R. Brown_____
                           Gary R. Brown
                           United States District Judge

---

[4]Plaintiffs assert that the only legal research costs they are seeking relate to specialized research services; not costs related to standard online legal research (e.g. Westlaw).  DE 153-2 ¶ 12.